UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1:18CR123 |
| | : | |
| RONALD HERRERA CONTRERA, et. al, | : | |
| | : | |
| Defendant. | : | |

**MOTION TO CONTINUE MULTI-DEFENDANT MULTI-WEEK JURY TRIAL DUE TO THE RESURGENCE OF THE COVID-19 PANDEMIC FUELED BY THE HIGHLY INFECTIOUS DELTA AND VACCINE COMPROMISING LAMBDA VARIANT**

COMES NOW, the Defendant, Pablo Velasco Barrera, by counsel, and hereby requests this Honorable Court to continue the four-defendant eight to ten-week jury trial, commencing on September 13, 2021, due to the worsening outbreak of Covid-19 pandemic fueled by the highly infectious Delta variant and the recent vaccine compromising Lambda mutation which are causing increased hospitalizations and breakthrough infections among fully vaccinated individuals. Undersigned counsel has consulted with counsel for all three co-defendants and notwithstanding the defendants' positions on continuance have all expressed concern for their own health and the health of their families, as well as the concerns related to the defendants Sixth Amendment rights as outlined below. All counsel support a continuance for these reasons.[1]

At the time the Court scheduled the September jury trial, the local and national effects of the COVID-19 pandemic appeared to be improving or at least stabilizing largely in part due to increased vaccinations. However, in the intervening period, the COVID-19 public-health landscape in the nation and this District, unfortunately, has changed dramatically for the worse-- confirmed cases, infection rates, hospitalizations, and deaths are exponentially higher now. Although the court has taken swift action by requiring masks among all individuals regardless of

---

[1] Counsel for the defendants are aware that Elmer Zelaya Martinez is seeking deauthorization of the death penalty notice from the Department of Justice. Should the Court grant this motion, and Mr. Martinez not face the death penalty if convicted, the two cases can be rejoined to preserve judicial resources.

vaccination status and reenacting the 6-foot social distancing guidelines recommended by the CDC while in the courthouse, due to the nature of how these variants are transmitted between individuals when they are in close proximity for extended amounts of time, there is cause to take reasonable steps to ensure the health and safety of all individuals known and yet to be selected to be involved in this case.

Given this new landscape, the CDC has projected things are likely to get worse in the coming weeks before it will get better. Proceeding with a multi-defendant multi-month trial on September 13, 2021, creates a substantial, unnecessary health-and-safety risk of severe illness and death for many people, including this Court and its staff, the prospective jurors, attorneys, defendants, witnesses, and the families of all concerned. Witnesses travelling from outside the District both pose and face additional risks depending on timing and mode of travel. The sheer number of people that will need to be in the courtroom and the unavoidable proximity at least between counsel and their client(s) runs contrary to efforts to mitigate and contain the rapid spread of the Delta variant, as well as the Lambda variant approaching quickly on its heels.

In fact, with the Delta variant, the current risk is exponentially more than earlier this year when the Court continued the trial due to the original Covid-19 pandemic. The dangers that warranted suspension of jury trials then, are even stronger now in this case. The unrelenting surge in cases, length and complexity of this trial, and inevitable amount of person-to-person contact significantly heighten the risk that trial participants, and others who are in contact with them, regardless of vaccination status will unwilfully and unknowingly, acquire, then reproduce and distribute the covid-19 virus potentially suffering severe health complications, hospitalization and/or death just by contending the unwarranted situational circumstances imposed.

At least for the foreseeable future—at a minimum several weeks but perhaps several months as the colder weather sets in--it remains risky to convene a jury venire and seat a jury for

trial due to the extent of spread of the Delta variant in this District and in the areas from which the defendants and witnesses are traveling from and where the prospective jurors reside.

As of date, August 10, 2021, this District remains at a "Substantial" risk level, the second highest COVID-19 level designated but is quickly approaching "High" risk level for community transmission. [2]



The risk for unvaccinated people, is very high in Alexandria.

An average of **19 cases per day** were reported in Alexandria, a **55 percent increase** from the average two weeks ago. Since the beginning of the pandemic, at least **1 in 13** residents have been infected, a total of **12,298 reported cases**. Right now, Alexandria is at a high risk for unvaccinated people.[3]

Currently, areas from which prospective jurors will be drawn, continue to show high COVID-19 risk levels. In the past seven days, Alexandria has seen a 14.6% increase in cases,

---

[2] Alexandria COVID-19 Dashboard at
https://www.alexandriava.gov/performance/info/dashboard.aspx?id=114883
[3] NY Times Covid Case and Risk Tracker at
https://www.nytimes.com/interactive/2021/us/alexandria-virginia-covid-cases.html

Loudoun 11.5%, Arlington, 27.33%, Fairfax 34.27%, Prince William 37.02%, Stafford 40.59%, and Fauquier 88.73%.[4]

Rates are trending upward and are higher than they were in Spring 2021 when jury trials resumed in this District. General Order No. 2021-02 resumed jury trial on March 1, 2021. At that time, the positivity rate for the Northern Regions had "declined to approximately 7.5%" and sufficiently sustained a downward trend.[5] As of early January 2021, the "Northern Region," as defined by the VDH, peaked at a positivity rate of nearly 16% (this region includes the Alexandria Division).[6]

In light of the accelerating nationwide spread of the Delta variant, as well as data suggesting that vaccinated individuals may be contributing to part of such spread, on July 27, 2021, the CDC issued updated guidance that fully vaccinated individuals living in "substantial" or "high" community transmission localities should once again wear mask "indoors in public."[7] In response General Order No. 2021-11, effective on August 3, 2021, reimposed a mandatory mask and six feet social distancing policy for all individuals regardless of vaccination status in the District.

According to the UVA COVID-19 Model Explorer, in Washington-Arlington-Alexandria, "cases are growing". [8] Model projections indicate that, along current trajectories,

---

[4] CDC Covid Tracker, by County, at https://covid.cdc.gov/covid-data-tracker/#county-view/ (last visited on 8/1/21).
[5] General order 2021-02
[6] Id.
[7] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html
[8] UVA COVID-19 Model – Coronavirus (updated July 29, 2021) https://www.vdh.virginia.gov/coronavirus/covid-19-data-insights/uva-covid-19-model/

cases could exceed last January's peak. "Based on local conditions and trends, the model forecasts



new confirmed cases will peak at 19,467 per week during the week ending September 5, 2021.

The Virginia Department of Health predicts a "surge."



The Delta variant is also causing significant increases in cases elsewhere in the country and the world, including El Salvador, the home of at least one witness. As of August 10, 2021, there are over 8700 active cases in the country, and the trend is approaching the same numbers as seen *last* August.[9]

The trial itself, multiple people giving hours of testimony and argument in a windowless indoor courtroom with no advance ventilation, creates a substantial risk of transmission. The CDC recognizes that a person contracts COVID-19 not only by exposure to respiratory droplets but also by "exposure to [the] virus in small droplets and particles that can linger in the air for minutes to hours"--i.e., airborne transmission.[10] These aerosolized droplets "may be able to infect people who are further than 6 feet away from the person who is infected or after that person has left the space."[11] This exact scenario, repeated at least eight hours a day for two months or more, makes it even more likely that a trial participant will contract and transmit COVID-19 during trial irrespective of any mask or social distancing requirements.

The length of this trial only increases the likelihood that at least one of the trial participants will contract COVID-19, which will essentially necessitate a mistrial. One of the CDC's guiding principles regarding COVID-19 transmission is that "[t]he more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."[12] Although this District has managed shorter jury trials with minimal witnesses and fewer defendants, this trial will be more complex and time-consuming. This trial is expected to last at least eight weeks, involves no less than eleven attorneys, and the parties will present *hundreds* of exhibits and

---

[9] https://www.worldometers.info/coronavirus/country/el-salvador/
[10] How Covid-19 Spreads, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html  (last visited Aug. 7, 2021).
[11] Id.
[12] Id.

6

dozens of witnesses. Most importantly, this jury trial will be held during the peak of the Delta variant surge.

Currently, there is no way to know if Court security staff and Marshals have received their COVID-19 vaccinations. Additionally, there will be four defendants, eight defense attorneys, interpreters, at least three Government attorneys, paralegals, and case agents present for this trial. It is not possible to know the vaccination status of all these individuals, or the vaccination status of the jurors and witnesses. Furthermore, based on information and belief, not all defendants are vaccinated or plan to get vaccinated before trial, creating an unreasonable risk for all the trial participants of contracting, carrying, and transmitting the virus to others.

Although there is no current court order suspending jury trial, As the Court knows, Chief Judge Davis has previously suspended jury trials several times in light of challenges that these facts impose, including most recently in General Order 2021-01. In this order, suspending jury trials through March 1, 2021, Chief Judge Davis noted that concerns include the need to "ensure the safety of jurors, trial participants, to include defendants in misdemeanor and felony cases, and members of the public, while at the same time ensuring that every defendant has a fair trial or proceeding, with a focused jury/factfinder, and with witnesses that can be seen and heard by the factfinder notwithstanding physical or procedural pandemic modifications."[13] In earlier orders, Chief Judge Davis elaborated, expressing in March 2020 his "grave concerns" about jurors' ability to "provide their full and complete attention" given the pandemic,[14] and stating in June of 2020 that a further extension of criminal jury trials was necessary to protect the rights of accused defendants and the safety concerns of defense counsel, and to ensure "a fair trial with *a focused jury* that can operate without fear."[15]

---

[13] General Order No. 2021-01 at 9 (Jan. 8, 2021).
[14] General Order No. 2020-06 at 4 (Mar. 23, 2020).
[15] General Order No. 2020-19 at 13-16 (June 30, 2020).

7

These concerns have resurfaced with the raging Delta variant, unexpected vaccine breakthrough infections, and persistent anti-vax attitudes. Notwithstanding the Court's precautions with masks and social distancing, the external influence of the risks presented by the COVID-19 pandemic will materially distract the jury should the trial proceed on September 13 during the height of the current Delta variant surge. Jurors, particularly unvaccinated or immune-compromised individuals, may be reluctant to serve, given concern about being in large groups inside a windowless courtroom for three weeks. These jurors may appear and serve if selected. Still, it stands to reason that they will be inordinately distracted as trial proceeds and rushed during deliberations, to the likely prejudice of the defendants.

Proceeding to trial on September 13, 2021, is likely to prejudice their right to trial by an impartial jury and freedom from coercive verdicts. Under the Sixth Amendment, the Supreme Court has recognized that "a defendant has a right to a tribunal both impartial and mentally competent to afford a hearing." *Tanner v. United States*, 483 U.S. 107, 126 (1987); *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912). Moreover, "[i]t is clearly established under Supreme Court precedent that an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury." *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014) (citing *Parker v. Gladden,* 385 U.S. 363, 364-66 (1966)).

Additionally, proceeding to trial on September 13 is likely to prejudice the defendants' right to a jury selected from a fair cross-section of the community. The Sixth Amendment to the U.S. Constitution guarantees each criminal defendant the right to a trial "by an impartial jury." U.S. Const. Amend. VI. The Supreme Court has held that impartiality requires not only that the jurors chosen are unbiased, but also that the petit jury be selected from a representative cross-section of the community. *See Holland v. Illinois*, 493 U.S. 474, 480 (1990). The Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§ 1861-67, governs the manner of selecting federal grand and petit jurors in federal court. The JSSA implements "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand

8

and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes." *Id*. § 1861.

Despite the Court's best efforts, jury summonses issued during a raging Delta variant are unlikely to produce a lawful cross-section of the community. Indeed, they are likely to induce underrepresentation of several groups. The modified jury questionnaire is designed to identify and "avoid requiring those individuals whose jury service may be deferred to a later date to visit the Courthouses in our District for an in-person *voir dire* proceeding." General Order No. 2020-20 at 6. Those individuals include "those individuals in a 'higher risk' category for contracting COVID-19, individuals who are currently sick or have been directed to quarantine and may not be recovered or released from such restrictions before the report date, individuals employed in certain healthcare positions, and individuals with children requiring their direct supervision and who lack other childcare options." *Id.* at 6 n.2. Because these groups necessarily include a higher proportion of minorities and those with childcare responsibilities, a jury pool that has screened for these groups before *voir dire* will necessarily underrepresent people of color and women.

According to the CDC, nationally, all people of color are more likely to be infected with the coronavirus than white, non-Hispanic persons; African Americans and Hispanic or Latino individuals are especially highly represented among cases overall.[16]

Given that a higher proportion of these communities are becoming infected, it is all but certain that they will be underrepresented in the jury pool. "[A] jury selection system yielding a significant underrepresentation of a minority group in jury venires can violate the 'fair cross-section' requirement of the Sixth Amendment." *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990). The defendants' rights will be violated if a fair cross-section of a community is not represented on the jury. These concerns are exacerbated in a case like this one that will require

---

[16] CDC, "Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity," (updated July 16, 2021) , at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html

prospective jurors who must commit to coming to court for two months or more, plus the additional time for jury deliberations which ought to proceed for as long as necessary, and not under fear or threat of contracting or carrying illness.

Given the significant evidence and the tensions inherent between holding in-person jury trials and following public health guidance, the National Association of Criminal Defense Lawyers ("NACDL") has issued a report and statement of principles concluding that "courts cannot ensure that juries reflect a fair cross section of the community given varying rates of infection, mortality, and fear in subsets of our society defined by race, socio-economic status, and perhaps even political affiliation."[17] NACDL has also said that "resuming criminal jury trials – particularly in areas of significant community-based transmission – would not only be reckless and irresponsible, but would also undermine the truth-seeking purpose of trials given the well documented and understandable fear, panic, and uncertainty on the part of jurors, witnesses, court staff, deputies, judges, prosecutors, and defense counsel." *Id*. Chief Judge Davis relied on this NACDL report when issuing General Order 2020-19 extending the suspension of criminal jury trials, and this recent outbreak is similar. Plexiglass barriers, face coverings, sanitizing, and social distancing rules are insufficient to prevent an under-representative pool or warrant a departure from NACDL's conclusion, which the Court has previously agreed.

As such, proceeding to trial on September 13 will result in a jury pool that unfairly and unreasonably underrepresents "distinctive" groups in the community because of systematic exclusion of those groups in the jury selection process. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). Their exclusion does not "manifestly and primarily" advance any "significant state interest." *Id.* at 367-68. Thus, this Court should grant a continuance to avoid a violation of the

---

[17] National Association of Criminal Defense Lawyers, *Criminal Court Reopening and Public Health in the COVID-19 Era* at 8 (June 2020), https://nacdl.org/getattachment/56802001-1bb9-4edd-814d-c8d5c41346f3/criminal-court-reopening-and-public-health-in-the-covid-19-era.pdf.

defendants' Sixth Amendment right to an impartial jury and to be free of coercive verdicts and outcomes.

In addition to the concerns about the jury pool, Defendants are concerned with the tension between the mask mandate and their ability to effectively confront witnesses who could not be *forced* to *remove* their masks, even if the Court chooses to offer the *option* of removal. The demeanor and facial expressions of the witness will not be visible to counsel, the court, or the jury, and the ability to hear witnesses—many of whom will be testifying in Spanish—will be greatly diminished as well. The ability to see and hear counsel and interpreters will likewise be diminished if masks are worn, as they must and absolutely should be.

In conclusion, failure to continue the trial, in this case, will likely make its completion impossible due to public health risks and concerns. We are in the midst of a grave public health emergency requiring people to take extreme measures to limit contact with one another. Although jury trials have resumed in this District, public gatherings, including lengthy jury trials, continue to pose a significant health risk. "Notably, the difficult question that presents itself to the Court is not merely whether it is "possible" to conduct a criminal jury trial, but rather, whether a fair trial that provides a criminal defendant all the necessary constitutional protections can be conducted based on the current state of the pandemic, with relevant considerations including not only the makeup of the jury, but the jury's ability, without COVID-19 related concerns, to focus on the evidence, see and hear the witnesses, and observe the defendant throughout the proceedings."[18]

WHEREFORE, Pablo Velasco Barrera, through counsel, respectfully requests this Honorable Court to grant the continuance to protect the health and safety of the trial participants, avoid unnecessary public health risk, and ensure a fair jury trial.

---

[18] General Order No. 2021-01, p. 11

Respectfully Submitted,

PABLO VELASCO BARRERA
By Counsel

_____/s/_____
PAUL P. VANGELLOW, ESQ.
VSB#23488
Paul P. Vangellow, P.C.
6109A Arlington Blvd.
Falls Church, VA  22044
(703) 241-0506
fx: (703) 241-0886
pvangellow@gmail.com
Counsel for Pablo Velasco Barrera


_____/s/_____
Harry A. Dennis, Esq.
Virginia State Bar No. 40888
Dennis, Stewart, & Krischer, PLLC
2045 N 15th St. Ste. 200
Arlington, VA 22201
Phone: 703-248-0626 Fax: 703-524-5283
Email: hdennis@dskvalaw.com
Counsel for Pablo Velasco Barrera


**CERTIFICATE OF ELECTRONIC FILING**

I HEREBY CERTIFY THAT on this the 11th day of August 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing (NEF) to all counsel of record.

_____/s/_____
PAUL P. VANGELLOW, ESQ. VSB#23488
Paul P. Vangellow, P.C.
6109A Arlington Blvd.
Falls Church, VA  22044
(703) 241-0506
fx: (703) 241-0886
pvangellow@gmail.com
Counsel for Pablo Velasco Barrera