IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00123-4-RDA |
| | ) | |
| RONALD HERRERA CONTRERAS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR INVESTIGATION INTO THE SEIZURE OF PRIVILEGED
MATERIALS AND DEFENDANT'S REQUEST FOR TRANSFER**

The government has lost count of the number of times Defendant Ronald Herrera Contreras

("Herrera") has asked the Court to order his transfer from the Northern Neck Regional Jail

("NNRJ") to the Alexandria Adult Detention Center ("ADC").  In his latest motion, filed on

August 12, 2021, he roots his request for transfer on the allegation that NNRJ personnel

confiscated attorney work-product sometime between June 18, 2021, and July 9, 2021.  Docket

Entry ("DE") 976.  Although Herrera does not claim that the missing papers were confiscated at

the government's request, he alludes to his plans to move to dismiss the charges pending against

him on Sixth Amendment grounds.  *Id*. at 3.  As a result, it bears noting that the government neither

seized nor requested the seizure of Herrera's attorney work-product, that the government has no

knowledge of jail personnel taking privileged documents from Herrera, and that the government

has never possessed such work-product.

Putting aside questions of why, if true, Herrera's claims of improper confiscation were not

brought to the Court's attention earlier, such claims are highly suspect.  Given his repeated

attempts to be moved to the ADC, Herrera has a motive to fabricate the seizure of legal paperwork.

Herrera has also recently demonstrated his willingness to lie to secure his transfer, claiming falsely

that he signed the declaration withdrawing his request to represent himself on the verbal condition that his attorneys would secure his transfer within fifteen days.  DE 964.  In the government's view, it is far more likely that Herrera discarded the missing documents than that NNRJ personnel took those documents from him.  Nonetheless, should the Court wish to have the United States Marshals Service ("USMS") investigate what happened to the papers that counsel for Herrera provided to him on June 18, 2021, the government has no objection.[1]  DE 964.

With respect to the requested transfer, however, the government takes the same position it has advanced in response to Herrera's previous transfer motions, namely, that deference should be given to the USMS's housing determinations.  The decision regarding where to house Herrera lies with the USMS, to which the Attorney General has delegated responsibility for the care and custody of federal pretrial inmates.  *See* 18 U.S.C. § 4086 ("[The USMS] shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending confinement to an institution."); *United States v. Peeples*, No. 17-CR-6032, 2017 WL 9517692, at *10 (W.D.N.Y. Dec. 4, 2017) ("[T]he decision as to where a federal defendant is housed pending trial is at the direction of the [USMS], based on the availability of space in various facilities as well as the background and security risk the defendant presents.").  Significantly, the Director of the USMS has broad authority for the "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence . . . ." 28 C.F.R. § 0.111(k).  "This open-ended authority recognizes the [USMS's] need to 'weigh concerns

---

[1] The morning after Herrera filed his motion for an investigation and transfer, undersigned counsel sent a copy of the motion to Supervisory Deputy Marshal Villiere Nazaire so that the USMS would be aware of Herrera's allegations against jail personnel.

of expense, administration, payment, access to the premises, and a veritable plethora of factors before arriving at the decision to engage' [a regional jail for the purpose of inmate confinement]." *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) (quoting *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995)).  It is also well established that "[c]ourts cannot substitute their judgment on institutional administration for the judgment of prison officials."  *Howard v. Williams*, Nos. 90-0125, 90-0147, 1991 WL 199872, at *1 (E.D. Va. June 4, 1991).

Based on information provided by the USMS to the United States Attorney's Office, there are currently approximately [203] prisoners in USMS custody with cases in the Alexandria Division.  The USMS must house, transport, and care for each of those prisoners taking a "plethora of factors" under consideration.  *Saunders*, 502 F. Supp at 496.  As it pertains to Herrera, one of those factors is the need to keep him separate from his three co-defendants, all of whom are currently detained at the ADC, in addition to a number of other inmates (for example, potential witnesses in Herrera's case and other members of MS-13).  The USMS must also take into consideration Herrera's history of violence and disruption during his detention in deciding where to house him.[2]  As a result, supplanting the USMS's judgment and ordering that Herrera be relocated to the ADC without further input from the USMS could undermine serious safety considerations.  *See United States v. Amawi*, No. 3:06CR719, 2008 WL 686871, at *4 n.2 (N.D. Ohio Mar. 11, 2008) ("The [USMS] is solely responsible for ensuring the safekeeping of a detained defendant.  It assesses what is needed to accomplish that objective.  I have neither the experience, expertise nor authority to substitute my judgment for its."); *cf. Garrett v. Angelone*, 940 F. Supp. 933, 942 (W.D. Va. 1996) ("In decisions concerning housing of specific prisoners, the courts must

---

[2]  Herrera's multiple disciplinary violations and violent behavior while in pretrial detention have been thoroughly recounted in prior briefings, including DE 682.

defer to the expertise and discretion of prison officials who are much better equipped to analyze prison security needs." (citing *Block v. Rutherford*, 468 U.S. 576 (1984))).

Taking into account these factors, the government asks that the Court consult directly with the USMS regarding the feasibility and safety of transferring Herrera from NNRJ to the ADC. Should the USMS determine that such a transfer would pose no security risk to Herrera, other inmates, and jail staff, the government has no objection to the requested transfer. However, should the USMS conclude otherwise, the government objects to the transfer.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:      _____/s/_____
Rebeca H. Bellows
Alexander E. Blanchard
Cristina C. Stam
Jacqueline R. Bechara
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3982
becky.bellows@usdoj.gov
alexander.blanchard@usdoj.gov
cristina.stam@usdoj.gov
jacqueline.bechara@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

_____/s/_____
Rebeca H. Bellows
Assistant United States Attorney
