IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:18-cr-00123-RDA-4 |
| ) | |
| RONALD HERRERA CONTRERAS, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR RECONSIDERATION OF
<u>ORDER DENYING DEFENDANT'S REQUEST TO PROCEED *PRO SE*</u>**

On July 22, 2021, following an *ex parte Faretta* inquiry with Defendant Ronald Herrera Contreras ("Herrera") that took place the day before, the Court issued a written order, *see* Docket Entry ("DE") 943, articulating its reasons for denying Herrera's previously filed motion to proceed *pro se*, *see* DE 870. In determining that Herrera's wish to waive his Sixth Amendment right to counsel was not knowing and intelligent, the Court focused primarily on Herrera's inability to represent himself well at trial, as revealed by Herrera's answers to the Court's questions during the aforementioned colloquy. Undoubtedly, serving as his own counsel at his upcoming trial would be foolish of Herrera, who is currently represented by two highly capable and experienced defense attorneys. As the Court's order notes, Herrera lacks any legal training or familiarity with the various aspects of a criminal trial, possesses at best a superficial understanding of the applicable Federal Rules, has not previously represented himself in any capacity, and lacks any formal education past ninth grade in El Salvador. *Id.* at 2–3. Herrera is thus ill-equipped to defend himself, particularly in a complex case like this one where the stakes for him are so high. However, the Supreme Court has held that a defendant's ability to represent himself effectively is irrelevant to his mental capacity to choose self-representation. *See Godinez v. Moran*, 509 U.S. 389, 399

(1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself."); *accord United States v. Ziegler*, 1 F.4th 219, 227 (4th Cir. 2021) ("All that is required is the competence to waive the right to counsel—not the competence to effectively represent oneself.").

Because, in denying Herrera's motion, the Court imposed a higher standard to waive the right to counsel than the Constitution requires, the government respectfully maintains that the Court committed an error of law that is subject to reversal on appeal. Yet that is precisely the sort of error that the Court has the authority to rectify. The government submits this motion for reconsideration to encourage the Court to do just that.

## **RELEVANT BACKGROUND**

Herrera is one of several defendants associated with the transnational street gang La Mara Salvatrucha (more commonly known as "MS-13") who stands accused of participating in the kidnapping and murder of two juveniles in 2016. *See* DE 162. The trial of him and three of his non-capital co-defendants is scheduled to begin on September 13, 2021.

Herrera has been in federal custody since July 2, 2018. DE 95. Since July 5, 2018, he has been represented by Lana M. Manitta, Esq. DE 99. On October 21, 2019, the clerk's office docketed a handwritten letter from Herrera in which he expressed his desire to proceed *pro se*. DE 275. During a hearing on November 15, 2019, the Court specifically asked Herrera whether he was satisfied with the representation provided by Ms. Manitta, or if he instead wished to serve as his own counsel. DEs 298, 467 at 2. Herrera answered that he was content with the services provided by Ms. Manitta and said that he did not want to represent himself. DE 467 at 2. On November 20, 2019, the Court appointed Jesse I. Winograd, Esq., to represent Herrera alongside Ms. Manitta. DE 376. *See United States v. Boone*, 245 F.3d 352, 361 (4th Cir. 2001) (providing

that defendants charged with death-eligible offenses are entitled to two attorneys, even if the government ultimately elects not to seek a sentence of death).

On January 2, 2020, the clerk's office docketed a handwritten letter from Herrera in which he claimed that "the attorney-[c]lient relationship [b]etween me and [Ms.] Manitta has deteriorated to [s]uch level that for my attorneys [it] is impossible [to] [c]ontinue representation in my name[.]" DE 390.[1] Consequently, Herrera asked the Court "[t]o withdraw [Ms.] Manitta [a]nd [a]ny other [a]ttorney in my case" and to allow him to represent himself. *Id.* On February 14, 2020, the Court issued an order denying Herrera's motion to withdraw counsel. DE 467 at 3. Regarding his request to proceed *pro se*, the Court observed that Herrera had not expressed any dissatisfaction with Mr. Winograd's representation, and accordingly denied Herrera's motion to represent himself as "not ripe for review." *Id.* In a handwritten letter dated February 23, 2020, Herrera stated his intention to appeal the Court's order and said that he would be filing "a new motion where I'll [e]xplain better why I don[']t want representation by my attorneys or [a]ny other attorney [a]nd [a]gain [c]ontinue [r]epresentation PRO-PER [sic] in this matter[.]" DE 513.[2]

On May 19, 2021, the clerk's office docketed a handwritten letter from Herrera, alleging ineffective assistance and enumerating five supposed failings of his counsel. DE 870. In light of these alleged issues with his attorneys, Herrera opined that it would be "pointless to keep trying to work with them." *Id.* He therefore asked the Court to "take in reconsideration the motion filed in the past to withdraw my attorneys from my [c]ase [a]nd represent myself[.]" *Id.* In a handwritten

---

[1] This letter, like the many others that Herrera has submitted to the Court, was written in English. It should be noted, though, that Herrera's native language is Spanish.

[2] Herrera did, in fact, appeal the Court's order denying him the ability to represent himself. DE 514. Upon the government's motion, the Fourth Circuit dismissed the appeal for lack of jurisdiction. DE 560.

letter to the Court dated June 16, 2021, Herrera insisted that nothing regarding his attorneys' performance "has [c]hanged [s]ince the last time I wrote you a letter[.]" DE 885. Herrera renewed his request for both of his counsel to be withdrawn. *Id.*

On July 16, 2021, the non-capital co-defendants, including Herrera, appeared for a hearing on the parties' pretrial motions. DE 934. At the hearing, Ms. Manitta and Mr. Winograd entered appearances on Herrera's behalf and advocated his position on the various motions being argued. *Id.* Toward the end of the hearing, the government flagged Herrera's outstanding request to represent himself. The Court then asked Herrera whether he wished to continue being represented by his attorneys. In response, Herrera averred that he did not need an attorney. As a result, the Court stated that a *Faretta* hearing would be necessary. *Id.*

That hearing took place on July 21, 2021. DE 942. At the outset, the Court asked government counsel to leave the courtroom so that it could conduct an *ex parte* colloquy with Herrera. Government counsel complied and, after the colloquy had ended, were invited to return. With government counsel now present, the Court announced that it had conducted a *Faretta* inquiry with Herrera and that his motion would be denied. *Id.* The next day, the Court issued a written order, explaining its reasons for denying Herrera's motion to proceed *pro se* and providing that Ms. Manitta and Mr. Winograd would continue to represent Herrera in this case. DE 943.

On August 3, 2021, Herrera signed a declaration in which he affirmed, under penalty of perjury, that he no longer wished to serve as his own counsel and wanted to continue being represented by Ms. Manitta and Mr. Winograd. DE 954-1. Ms. Manitta, who witnessed Herrera's execution of it, filed the declaration with the Court that same day. DE 954.

In a handwritten letter dated August 4, 2021, and docketed on August 10, 2021, Herrera asserted for the first time (and with no substantiation) that he had verbally conditioned signing the declaration on being moved from the Northern Neck Regional Jail ("Northern Neck"), where he

4

is presently detained, to the Alexandria Adult Detention Center within 15 days "due to multiple [i]ssues." DE 964. Herrera also wrote that "if my lawyer don[']t [g]et me transfer[red] then I wish to withdraw the waiver [of the right to represent himself embodied in the declaration]." *Id.*

On August 12, 2021, Herrera, through his counsel, filed a motion asking the Court (1) to order the United States Marshals Service to investigate the alleged seizure of his legal papers by Northern Neck officials, and (2) to transfer him to a different detention facility. DE 976. In the motion, Herrera implied that a motion to dismiss the indictment (as to him) might be forthcoming. *Id.* at 3.

## APPLICABLE LAW

While the Sixth Amendment secures a criminal defendant's right to the assistance of counsel before he may be convicted and punished, it also guarantees to a criminal defendant the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 836 (1975); *Ziegler*, 1 F.4th at 226. As the Supreme Court has explained, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta*, 422 U.S. at 817. The defendant's right to serve as his own counsel does not give way because a court believes that proceeding *pro se* would be unwise, as it usually is for defendants who are untrained in the law. *See id.* at 834 ("[A]lthough [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (internal quotation marks omitted)); *Imani v. Pollard*, 826 F.3d 939, 945 n.1 (7th Cir. 2016) ("A court may not deny a defendant his right to represent himself because the choice is rash, hasty, or foolish. In the end, the choice is the defendant's, no matter how foolish it is.").

To invoke the right to self-representation, a defendant's waiver of the right to counsel must be "(1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." *United*

*States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013).[3] Neither the Supreme Court nor the Fourth Circuit has "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *accord United States v. Williams*, 629 F. App'x 547, 551 (4th Cir. 2015). The defendant must only "be made aware of the dangers and disadvantages of self-representation" such that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (internal quotation marks omitted). District courts typically accomplish this by asking the defendant pointed questions during a *Faretta* hearing. *See* Fed. Judicial Ctr., *Benchbook for U.S. District Court Judges* § 1.02(c)(6th ed.) (listing sample questions for *Faretta* inquiry).

Importantly, the Supreme Court has rejected "the notion that competence . . . to waive the right to counsel must be measured by a standard that is higher than (or even different from)" the measure of competency to stand trial—*i.e.*, "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396, 398 (internal quotation marks omitted). Thus, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* at 399.

In *Indiana v. Edwards*, 554 U.S. 164 (2008), the Supreme Court found that a court could constitutionally choose to deny the right to self-representation to those "competent enough to stand

---

[3] Here, where Herrera's trial is approximately one month off, timeliness can be presumed. *See United States v. Lawrence*, 605 F.2d 1321, 1324–25 (4th Cir. 1979) (holding that where represented defendant first asserts right to self-representation only after jury had been selected though not sworn, decision to allow *pro se* representation rests in sound discretion of trial court); *see also United States v. Hilton*, 701 F.3d 959, 965 (4th Cir. 2012) (holding that defendant's request to proceed *pro se* during jury selection process was properly denied as untimely and improperly motivated by desire to delay proceedings).

6

trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. Thus, "after *Edwards*, at least one relevant consideration for a district court in determining whether or not to force counsel on a mentally ill defendant is whether a defendant who is otherwise able to satisfy the competence standard may nevertheless be 'unable to carry out the basic tasks needed to present his own defense without the help of counsel.'" *Bernard*, 708 F.3d at 589 (quoting *Edwards*, 544 U.S. at 175–76). In this context, *Edwards* refers to the defendant's "mental capacities," not the wisdom of the manner in which the defendant chooses to use his capabilities. 554 U.S. at 177–78. A defendant's lack of competence in legal affairs has no bearing on his ability to knowingly and intelligently waive the right to counsel. *See Faretta*, 422 U.S. at 835 ("[The] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation.").

To be sure, the right to represent oneself in a criminal case is not absolute. *See United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000). If a defendant engages in deliberate obstruction or unruly behavior, the trial judge may terminate self-representation. *See Faretta*, 422 U.S. at 834 n.46 (noting that the right to self-representation does not include the right to "engage[] in serious and obstructionist misconduct," to "abuse the dignity of the courtroom," or to fail to comply with the "relevant rules of procedural and substantive law"); *United States v. Bush*, 404 F.3d 263, 272 (4th Cir. 2005) (holding that the defendant's motion to proceed *pro se* was properly denied because the defendant's request, made one week before his trial was scheduled to begin, constituted an effort to delay and manipulate the trial proceedings).

## **DISCUSSION**

With all due respect accorded, the government believes that the decision to deny Herrera's motion to represent himself constitutes reversible error, insofar as the Court employed a higher standard than the law dictates when it comes to evaluating whether a waiver of the right to counsel

7

is knowing and intelligent. But the Court can expunge that error by reexamining Herrera's motion under the appropriate legal standard, and in so doing can protect the record in this case. Additionally, if, as the government fears might be the case, Herrera aims to maintain the status quo to preserve perceived tactical advantage, the Court can—and should—make a record that he is intentionally courting error or waiving his right to self-representation.

### A. In assessing Herrera's competence to waive his right to counsel, the Court applied an incorrect legal standard.

As delineated above, the Sixth Amendment protects a criminal defendant's right to forego the assistance of counsel and represent himself. Doing so might be profoundly unwise, but if the decision to proceed *pro se* is made clearly, knowingly, intelligently, and voluntarily, it must be honored. Here, at the time the Court issued its written order denying Herrera's motion, there was essentially no doubt that Herrera's wish to represent himself was unequivocal; the Court's order says nothing to the contrary, and the numerous letters that Herrera had previously submitted on the topic included clear invocations of his right to self-representation. Likewise, there is nothing in the record suggesting that Herrera's repeated attempts to represent himself have been made involuntarily. The central question, therefore, is whether Herrera's desire to proceed *pro se* is knowing and intelligent, or, said differently, whether he is competent to waive his right to the assistance of counsel.

In its order, the Court stated that it "conducted an extensive colloquy with [Herrera] to determine whether he is knowingly, intelligently, and voluntarily waiving his right to counsel, *and most importantly, whether he is ultimately capable of representing himself*." DE 943 at 2 (emphasis added). In so doing, the Court identified Herrera's ability to represent himself as the most essential factor in the Court's analysis, and went on to buttress its promotion of that criterion by noting that Herrera has never before represented himself and that Herrera does not "understand

8

the jury selection process, what constitutes admissible evidence at trial, or how to make certain evidentiary or procedural objections." *Id.*; *see also id.* at 3 (finding that Herrera "has not met the applicable standards to establish that he is *capable of representing himself at trial*" (emphasis added)); *id.* ("Among other deficiencies in his answers, [Herrera] could not state with certainty when he reviewed the Federal Rules of Criminal Procedure and professed no familiarity with integral parts of the Federal Rules of Evidence."); *id.* (citing Herrera's "lack of experience in criminal matters"). By focusing on Herrera's capability to defend himself, rather than on his capacity to elect to do so, the Court's order applies an incorrect legal standard.

In *Godinez*, the Supreme Court held that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." 509 U.S. at 399. The Court went on to say that "a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Id.* at 400. In other words, a defendant's lack of legal acumen simply has no bearing on his ability to knowingly and intelligently waive the right to counsel. *See Faretta*, 422 U.S. at 835 ("[The] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation."); *United States v. Gewin*, 471 F.3d 197, 198–200 (D.C. Cir. 2006) ("A defendant's technical legal knowledge is . . . not relevant to an assessment of his knowing exercise of the right to defend himself." (internal quotation marks omitted)); 3B Peter J. Henning, *Federal Practice and Procedure* § 733 (4th ed. Apr. 2021) ("A defendant's knowledge of the law and courtroom procedures is irrelevant in assessing the right to self-representation."). For this reason, "a district court cannot deny a defendant's right to self-representation merely

9

because the defendant lacks technical legal knowledge." *Bush*, 404 F.3d at 271 (internal quotation marks omitted).[4]

When a trial court rejects a defendant's request to proceed *pro se* on the basis of his inexperience or lack of fluency in the law, it commits reversible error. *See, e.g.*, *Freeman v. Pierce*, 878 F.3d 580, 590 (7th Cir. 2017) ("The trial court's denial of [the defendant's] unequivocal motion to proceed *pro se* on the basis that he lacked the necessary experience and abilities to represent himself was contrary to, and an unreasonable application of *Faretta*."); *Jones v. Norman*, 633 F.3d 661, 667 (8th Cir. 2011) ("[U]nder the guise of inquiring about the validity of [the defendant's] waiver, the trial court improperly considered factors related to [the defendant's] ability to represent himself. Instead of using concerns about [the defendant's] background and knowledge as a reason to more thoroughly warn [him] about the dangers of self-representation and probe more deeply to make sure he understood those warnings, the trial court used the concerns as a basis to deny [his] request to represent himself. This was constitutional error."); *Hirschfield v. Payne*, 420 F.3d 922, 928 (9th Cir. 2005) ("The denial of a request for self-representation on the

---

[4] In its order, the Court observes that Herrera "has not 'demonstrated that he [is] capable of representing himself by presenting an opening statement, questioning witnesses, raising objections, and presenting a closing argument.'" DE 942 at 2 (alteration in original) (quoting *United States v. Parker*, 576 F. App'x 157, 164 (4th Cir. 2014)). In *Parker*, the district court allowed the defendant to represent himself at trial. *Id.* at 158. On appeal, he argued that the district court had failed to conduct a constitutionally sufficient inquiry into his desire to serve as his own counsel. *Id.* In affirming the judgment below, the Fourth Circuit concluded that the defendant's choice to proceed *pro se*, made in the face of multiple warnings regarding the perils of doing so, was knowing and intelligent. *Id.* at 164. Explaining that finding, the court pointed out that the defendant "demonstrated that he was capable of representing himself by presenting an opening statement, questioning witnesses, raising objections, and presenting a closing argument." *Id.* The Fourth Circuit cited these capabilities not to suggest that they are prerequisites to self-representation for criminal defendants, but merely to support its rejection of the defendant's argument that the district court had failed to ensure that he comprehended what representing himself entailed. Accordingly, the government does not believe that *Parker* sets forth what a criminal defendant must be capable of to effectuate a "'competent' and 'understanding'" waiver of his right to counsel. DE 943 at 2.

ground that the defendant lacks sufficient knowledge of legal procedure is not only erroneous, but directly contrary to Supreme Court precedent."); *see also Bush*, 404 F.3d at 271 (holding that "[t]he district court erred to the extent it relied on [the defendant's] lack of legal knowledge and history of mental illness" in denying his request to represent himself, but affirming on other grounds). In that circumstance, the only remedy is reversal and remand for a new trial. *See McKastle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) ("[D]enial [of the right to self-representation] is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."). To avoid that outcome here, the government—fully aware of the unorthodox nature of its request—respectfully asks the Court to reconsider its order and ask not whether Herrera is capable of representing himself, but whether he has the capacity to choose self-representation "with [his] eyes open." *Faretta*, 422 U.S. at 835. To the extent that doing so requires the Court to hold another *Faretta* hearing, and in the event that Herrera has not already been so apprised, the government requests that the Court inform Herrera of two specific disadvantages of self-representation unique to his case: first, he will not receive copies of discovery materials covered by the Court's protective order[5]; and second, it is possible that his trial would be severed from that of his co-defendants, in which case his trial would necessarily be delayed.

**B.     The Court has the authority to reconsider its order denying Herrera's motion to represent himself.**

The Court has discretion to grant the relief that the government seeks. While no provision of the Federal Rules of Criminal Procedure explicitly governs a motion for reconsideration, a

---

[5] Under the terms of the protective order governing discovery in this case, the defendants are prohibited from retaining any materials marked "Protected Information" and from reviewing such materials without supervision from counsel. DE 88 at ¶ 5. As a result, if Herrera is to represent himself, he will have neither unfettered access to discovery materials nor the right to reproduce or retain "Protected Information." Indeed, if he wishes to review the discovery, he will require the assistance of standby counsel.

11

district court has the inherent power to reconsider its own rulings in a criminal case. The Federal Rules of Criminal Procedure "are to be interpreted to provide for the just determination of every criminal proceeding," Fed. R. Crim. P. 2, and "[a] judge may regulate practice in any manner consistent with federal law," Fed. R. Crim. P. 57(b); *see also* Fed. R. Crim. P. 57, advisory committee note to 1995 amendment ("[Rule 57(b)] provides flexibility to the court in regulating practice when there is no controlling law. Specifically, it permits the court to regulate practice in any manner consistent with Acts of Congress, with rules adopted under 28 U.S.C. § 2072, and with the district's local rules."); *United States v. Breit*, 754 F.2d 526, 530 (4th Cir. 1985) ("[D]espite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders.").

While parties do not have license to seek reconsideration of a court's order on the basis of either mere disagreement with it or arguments that could have been raised prior to the order's issuance, neither of those circumstances applies here, where the government has not previously raised the arguments it now asserts in support of its contention that there is an error of law that needs to be remedied. Indeed, because the Court conducted its *Faretta* inquiry *ex parte*, the government could not have any earlier made the points it now advances.[6]

### C. The Court should ascertain whether Herrera is inviting error on the issue of self-representation and, if he is, make findings to support that conclusion.

To date, Herrera has not disclosed his position on the instant motion, notwithstanding that a draft of it was first shared with his counsel over three weeks ago. There might well be an

---

[6] There is precedent for considering a request in the same posture as the instant motion. *See, e.g.*, Order, *United States v. Carlos Powell*, No. 2:12-cr-20052 (E.D. Mich. Apr. 23, 2014), DE 286 (denying the government's motion for reconsideration of an order denying the defendant's request to represent himself, but on the merits, not because the motion was improper).

innocuous reason for his reticence, including what the government understands are difficulties his counsel have encountered in arranging remote meetings with him. But there equally might be a problematic explanation—namely, that Herrera either outright opposes reconsideration of his motion or is refusing to engage with his counsel on the topic of self-representation because he thinks that either strategy will serve him well on appeal, should he be convicted at his upcoming trial. In any event, to protect the record, the Court should determine whether Herrera is inviting error, *see United States v. Day*, 700 F.3d 713, 727 n.1 (4th Cir. 2012) ("[A] defendant in a criminal case cannot complain of error which he himself has invited." (internal quotation marks omitted)), or effectuating a waiver of his right to self-representation, *see United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)). If the Court concludes that Herrera is inviting error or waiving his right to self-representation, it should make factual findings to support its assessment.

\* \* \*

To be clear, the government has no vested interest in whether Herrera serves as his own counsel (though the government recognizes the challenges that self-representation could present in a lengthy, multi-defendant trial). The government merely wishes to ensure, in the interest of avoiding Herrera being tried twice, that the correct legal standard is applied to his request to so serve.[7] While the declaration that Herrera signed on August 3, 2021, appeared to moot this issue, Herrera's more recent letter to the Court and his attorneys' motion seeking an investigation into

---

[7] The government realizes that, when it comes to obstreperous defendants' requests to represent themselves, protecting the record is easier said than done. *Cf. United States v. Adonis Marquis Perry*, No. 2:18-cr-113-RBS (E.D. Va. June 22, 2021), DE 199 (denying, after a *Faretta* inquiry, the defendant's second request to proceed *pro se*, docketed the day before his trial was to begin, and ruling that his court-appointed counsel—the sixth and seventh attorneys tapped to represent him in the case—would continue representing him).

13

the supposed seizure of his legal papers and a transfer to a different detention facility have resurrected it, leaving the government with what it believes is no other option than to file this motion.

## CONCLUSION

For the reasons stated, the government respectfully asks the Court to grant this motion for reconsideration, reassess Herrera's motion to represent himself under the legal standard set forth in *Godinez* and its progeny, and, if necessary, expeditiously conduct an additional hearing to ensure that Herrera is fully aware of the dangers and disadvantages of self-representation, including those mentioned above.[8]

                                                Respectfully submitted,

                                                Raj Parekh
                                                Acting United States Attorney

By:        /s/
        Rebeca H. Bellows
        Alexander E. Blanchard
        Cristina C. Stam
        Jacqueline R. Bechara
        Assistant United States Attorneys
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Tel: (703) 299-3700
        Fax: (703) 299-3982
        becky.bellows@usdoj.gov
        alexander.blanchard@usdoj.gov
        cristina.stam@usdoj.gov
        jacqueline.bechara@usdoj.gov

---

[8] The Chief of the Criminal Division of the United States Attorney's Office reviewed this memorandum and approved its filing.

## CERTIFICATE OF SERVICE

I certify that on August 20, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                                           /s/
                                           Alexander E. Blanchard
                                           Assistant United States Attorney