UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

v.                                        CRIMINAL NO. 1:18CR123

RONALD HERRERA CONTRERAS, et. al,

    Defendant.

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO CONTINUE MULTI-DEFENDANT MULTI-WEEK JURY TRIAL DUE TO THE RESURGENCE OF THE COVID-19 PANDEMIC FUELED BY THE HIGHLY INFECTIOUS DELTA AND VACCINE COMPROMISING LAMBDA VARIANT**

    **COMES NOW**, the Defendant, Pablo Velasco Barrera, by counsel, and hereby submits this Reply to the government's Response, as follows:

**INTRODUCTION**

    Defendants filed their *Motion to Continue* (Doc. 968) on August 11, 2021. The *Government's Response in Opposition to Defendants' Motion to Continue Jury Trial*, Doc. 975 (hereinafter, "*Response*") was filed on August 12, 2021.

    Defendants stand by the points, authorities and arguments set forth in their initial Motion (Doc. 968), and file this Reply only to note certain matters contained in the government's Response (Doc. 975), which counsel believe require further discussion.

    **THE DELTA VARIANT**

    Last week, the United States District Court for the Eastern District of Virginia recognized that "[n]otwithstanding a well-established COVID-19 vaccination effort … the COVID-19 Delta variant has caused a dramatic spike in COVID-19 cases and hospitalizations across the United States, Virginia, and this District." *In Re: Court Operations Under the Exigent Circumstances*

*Created by the Outbreak of Coronavirus Disease 2019 (Covid-19): Vaccination & Testing Policy*, Case No. 2:20mc7 (August 13, 2021).

The CDC deemed Delta a "Variant of Concern" on June 15, 2021. The CDC notes that:

> In late June, our 7-day moving average of reported cases was around 12,000. On July 27, the 7-day moving average of cases reached over 60,000. This case rate looked more like the rate of cases we had seen before the vaccine was widely available.
> [Delta Variant: What We Know About the Science | CDC](https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html)
> https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html

> We should think about the Delta variant as the 2020 version of Covid-19 on steroids.
>
> Andy Slavitt, former senior adviser to Joe Biden's Covid Response Team.[1]

At a July 22, 2021 Press Briefing, CDC Director Dr. Rochelle Walensky, stated that:

> The Delta variant is spreading with incredible efficiency and now represents more than 83 percent of the virus circulating in the United States. Compared to the virus we had circulating initially in the United States at the start of the pandemic, the Delta variant is more aggressive and much more transmissible than previously circulating strains. It is one of the most infectious respiratory viruses we know of and that I have seen in my 20-year career.[2]

A new study reported that "[o]n average, people infected with the [D]elta variant had about 1,000 times more copies of the virus in their respiratory tracts than those infected with the original

---

[1]   [Delta variant now makes up 83% of US coronavirus cases, CDC says - CNN](https://www.cnn.com/2021/07/20/health/us-coronavirus-tuesday/index.html)
https://www.cnn.com/2021/07/20/health/us-coronavirus-tuesday/index.html

[2]   [Press Briefing by White House COVID-19 Response Team and Public Health Officials | The White House](https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/22/press-briefing-by-white-house-covid-19-response-team-and-public-health-officials-46/)
https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/22/press-briefing-by-white-house-covid-19-response-team-and-public-health-officials-46/#:~:text=The%20Delta%20variant%20is%20spreading%20with%20incredible%20efficiency,and%20much%20more%20transmissible%20than%20previously%20circulating%20strains.

strain of the coronavirus."[3] According to Sandra Fryhofer, MD, Chair-elect of the AMA Board of Trustees who serves as the AMA's liaison to the Centers for Disease Control and Prevention's Advisory Committee on Immunization Practices (ACIP), "[e]xperts say Delta's a super spreader."

With Delta becoming the dominant strain of the virus, "[w]e're seeing patients becoming sicker and their conditions are worsening much more quickly," according to AMA Chief Health and Science Officer Mira Irons, MD.[4] Although there is reason to be optimistic about the effectiveness of the current vaccines, "[w]e are still learning how effective the vaccines are against new variants of the virus …" CDC, *Key Things to Know About COVID-19 Vaccines*.[5]

Dr. Walensky said in July 2021 that "[t]he Delta variant is showing every day its willingness to outsmart us," and there is a very real possibility it could mutate into a vaccine-resistant strain. Dr. Walensky warned that "[t]he big concern is that the next variant that might emerge - just potentially a few mutations away - could evade our vaccine." [6]

On July 30, 2021, the CDC reported that "fully immunized people with … breakthrough infections of the Delta variant may spread the virus to others just as easily as unvaccinated people."[7]

---

[3] Why The Delta Variant Is So Contagious: A New Study Sheds Light : Goats and Soda : NPR https://www.npr.org/sections/goatsandsoda/2021/07/08/1013794996/why-the-delta-variant-is-so-contagious-a-new-study-sheds-light

[4] What doctors wish patients knew about the dangerous Delta variant | American Medical Association (ama-assn.org) https://www.ama-assn.org/delivering-care/public-health/what-doctors-wish-patients-knew-about-dangerous-delta-variant

[5] Key Things to Know About COVID-19 Vaccines (cdc.gov) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html?s_cid=10536:%2Bvaccine%20%2Bfor%20%2Bcovid%20%2B19:sem.b:p:RG:GM:gen:PTN:FY21

[6] The C.D.C. Just Updated Mask Guidelines For Fully Vaccinated People (msn.com) https://www.msn.com/en-us/health/medical/the-c-d-c-just-updated-mask-guidelines-for-fully-vaccinated-people/ar-BB1bYTGd?ocid=msedgntp

[7] Vaccinated People May Spread the Virus, Though Rarely, C.D.C. Reports (msn.com) https://www.msn.com/en-us/news/us/vaccinated-people-may-spread-the-virus-though-rarely-c-d-c-reports/ar-AAMKQgC?ocid=msedgntp

In fact, in the few short days since Defendants' initial Motion was filed, the Alexandria Dashboard has gone from the mid-range of "Substantial Transmission" to "High Transmission":



https://www.alexandriava.gov/performance/info/dashboard.aspx?id=114883

We believe that given the steep upward trend it is highly likely that the transmission rate will remain high at the time of the scheduled trial in September.  *See* Exhibit A.[8]

---

[8]   Just this week a fraud trial proceeding in another federal jurisdiction was put on an indefinite hold after the judge presiding over the trial and three of her staffers had to go into quarantine after the judge had been in contact with a COVID-positive law clerk.  *See* https://www.fd.org/news/mich-judge-quarantining-virus-halts-first-live-criminal-trial

In sum, the Delta variant is a game changer, and squarely implicates the most recent pronouncement from this Honorable Court:

> The safety of Court employees, judges, contractors, litigants, counsel, and members of the public that enter the Courthouses and Court facilities in this District is a critical priority. Cf. Federal Judiciary COVID-19 Recovery Guidelines, at 2 ("The health and welfare of each Judiciary employee, contractor, and member of the public that enters our facilities should be paramount in the decisions that are made as these [COVID-19 recovery] guidelines are implemented."). *In Re: Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (Covid-19): Vaccination & Testing Policy*, Case No. 2:20mc7 (August 13, 2021).

If such safety is indeed a "critical priority" and "paramount in the decisions that are made," a multi-defendant, multi-week criminal case with dozens of witnesses ought not to be commenced next month.

**LONG COVID**

Another important developing factor is the growing acknowledgement of the legitimacy of "long COVID," which "has moved from a curiosity, dismissed by many, to a recognized public-health problem." *The four most urgent questions about long COVID* (nature.com), https://www.nature.com/articles/d41586-021-01511-z. Back in December 2020, World Health Organization Director-General, Tedros Adhanom stated that [o]ver the past few months evidence has mounted about the serious long-term effects of COVID-19."

Long COVID symptoms include, but are not limited to fatigue, difficulty thinking and/or concentrating, shortness of breath, headache, dizziness, heart palpitations, joint or muscle pain, depression, anxiety, fever, and loss of taste and/or smell.

The Department of Justice has recently conceded that "[s]ome people continue to experience symptoms that can last weeks or months after first developing COVID-19. This can

happen to anyone who has had COVID-19, even if the initial illness was mild. People with this condition are sometimes called "long-haulers" - and the condition they have is known as "long COVID." Department of Justice Press Release, July 26, 2021.[9]

On that date, the Civil Rights Division of the Department of Justice and the Office for Civil Rights of the Department of Health and Human Services joined together to provide guidance explaining that "long COVID" can be a disability under the ADA, the Rehabilitation Act of 1973 and the Patient Protection and Affordable Care Act. "Long COVID is a physical or mental impairment", and a mental impairment includes "any mental or psychological disorder, such as an emotional or mental illness". *Id*.

At this early stage, "[t]he syndrome is poorly understood, but studies suggest that between 10 and 30 percent of adults who catch the virus may experience long Covid, including those who experienced only mild illness or no symptoms at all." *Can the Vaccinated Develop Long Covid After a Breakthrough Infection?* - The New York Times (nytimes.com) https://www.nytimes.com/2021/08/16/well/live/can-the-vaccinated-develop-long-covid-after-a-breakthrough-infection.html?referringSource=articleShare

The growing understanding of long COVID and the symptoms which can linger for months is yet another factor weighing in favor of continuance.

**SPEEDY TRIAL VS. COVID-19 PANDEMIC CONCERNS**

The government's *Response* alleges that the defense has "conspicuously whistle[d] past one such [Sixth Amendment] privilege - the right to a speedy trial - entirely" (Doc. 975, at 1). To be clear, Defendants' had no intention to "whistle past" what is so undisputed and well-accepted

---

[9] DOJ and HHS Issue Guidance on 'Long COVID' and Disability Rights Under the ADA, Section 504, and Section 1557 | OPA | Department of Justice https://www.justice.gov/opa/pr/doj-and-hhs-issue-guidance-long-covid-and-disability-rights-under-ada-section-504-and-section

as to a proper subject of judicial notice[10] - that scores of courts throughout the nation have found COVID-19 concerns trump the right of the public and the defendant to a speedy trial.

The notion that vaccine availability has changed this analysis is without merit, as proven by cases just within the past week. *See, e.g.*, *United States v. Cabrera-Gallegos*, No. 1:19-CR-00108-, 2021 U.S. Dist. LEXIS 154071, at *5 (E.D. Cal. Aug. 16, 2021) (government stipulated that based upon COVID concerns "the ends of justice served by continuing the case as requested outweigh the interest of the public and the defendant in a [speedy] trial …"); *United States v. Turnbull*, No. 3:20-cr-0046, 2021 U.S. Dist. LEXIS 155771, at *1 (D.V.I. Aug. 18, 2021) ("COVID-19 continues to present an unpredictable threat to public health and safety, as shown in the recent surge in COVID-19 cases both in the continental United States and the Virgin Islands. As such, the Court finds that extending the period within which Defendant Turnbull may be tried under the Speedy Trial Act is necessary for the protection and well-being of the Defendant, the jury, the prosecutors, the witnesses, the Court's personnel, and the general public at large."); *United States v. McKinney*, No. 2:20-cr-103-RAH, 2021 U.S. Dist. LEXIS 152724, at *2 (M.D. Ala. Aug. 13, 2021) ("Recently in the Middle District of Alabama, there has been a significant spike in COVID-19 cases, primarily due to the Delta variant. Thus, a continuance is necessary for the health and safety of the jurors and court personnel. A continuance reduces COVID-19's rapidly

---

[10] Numerous courts throughout the country have taken judicial notice of a variety of facts concerning COVID and the pandemic. *See, e.g.*, *Am. Coll. of Obstetricians & Gynecologists v. United States FDA*, Civil Action No. TDC-20-1320, 2020 U.S. Dist. LEXIS 122017, at *14 n.1 (D. Md. July 13, 2020)("the parties agreed that the Court may take judicial notice of updated facts relating to the state of the COVID-19 pandemic as of the date of the issuance of this opinion."); *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2020 U.S. Dist. LEXIS 111188, at *18 (S.D.N.Y. June 24, 2020) ("Since the onset of the pandemic, courts in this circuit have routinely taken judicial notice of the likely risks and severity of COVID-19 and the potential efficacy of mitigation measures."); *United States v. Gamboa*, No. 09-1741 JAP, 2020 U.S. Dist. LEXIS 102156, at *11 (D.N.M. June 11, 2020) ("Even if the Defendant had not introduced this evidence into this proceeding, the Court certainly could and does take judicial notice of the pandemic and the effect it has had not only on the prison population, but on the community at large."); *Hines v. N.Y. State DOL Staff*, No. 1:20-CV-517 (DNH/ATB), 2020 U.S. Dist. LEXIS 88932, at *8 n.7 (N.D.N.Y. May 18, 2020) ("The court may take judicial notice of facts regarding the COVID-19 pandemic that are generally known within the court's jurisdiction").

evolving threat to the health and safety of all trial participants and, thus, 'outweigh[s] the best interest of the public and defendant in a speedy trial.' ").

These are among the most recent cases, but nothing new. More than a year ago, in May 2020, a district court noted "[a]lmost every court faced with the question of whether general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time has arrived at the same answer: yes." *United States v. Smith*, No. 2:19-cr-00213, 2020 U.S. Dist. LEXIS 88158, at *5 (E.D. Cal. May 19, 2020). More recently, another district court cited this observation and stated that it "agrees with those holdings." *United States v. Tapp*, No. 19-35, 2020 U.S. Dist. LEXIS 206019, at *4 (E.D. La. Nov. 4, 2020). Numerous district courts have concurred. *See, e.g.*, *United States v. Vidrio*, No. 1:19-CR-00090, 2020 U.S. Dist. LEXIS 160514, at *5 (E.D. Cal. Sep. 2, 2020) (parties agreed and stipulated that "the ends of justice served by continuing the case as requested outweigh the interest of the public and the defendants in a trial within the original date prescribed by the Speedy Trial Act."); *United States v. Burks*, No. 2:19cr344-MHT, 2020 U.S. Dist. LEXIS 109098, at *2-3 (M.D. Ala. June 22, 2020) ("… the ends of justice served by granting a continuance outweigh the interest of the public and Burks in a speedy trial ..."); *United States v. Cardenas-Avila*, No. 2:19-CR-420 TS, 2020 U.S. Dist. LEXIS 108095, at *4-5 (D. Utah June 19, 2020) ("The need to protect the health of the public in the midst of a deadly pandemic outweighs the rights of Defendant and the public to a speedy trial."); *United States v. Briggs*, No. 20-410, 2020 U.S. Dist. LEXIS 101294, at *9 (E.D. Pa. June 10, 2020) (" … the ends of justice served by granting a continuance in this case outweigh the best interest of the public and Briggs in a speedy trial …"); *United States v. Kemprud*, No. 2:19-CR-00218-MCE, 2020 U.S. Dist. LEXIS 95833, at *4-5 (E.D. Cal. June 1, 2020) (" … given the effect of the public health recommendations on the ability of judges, counsel, court staff, the press, or members of the general public to be present

8

in the courtroom in light of the recent outbreak of COVID-19 and the well-documented concerns surrounding this virus, the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial ..."); *United States v. Miller*, No. 2:20-00022, 2020 U.S. Dist. LEXIS 100195, at *2 (S.D.W. Va. June 8, 2020) (" … due to the current danger to the public health caused by COVID-19, the ends of justice served by ordering the continuance outweigh the interests of the public and the defendant's right to a speedy trial …"); *United States v. Flynn*, No. 2:20cr34-MHT (WO), 2020 U.S. Dist. LEXIS 86669, at *2 (M.D. Ala. May 18, 2020) (" … the ends of justice served by granting a continuance outweigh the interest of the public and defendant Flynn in a speedy trial."); *United States v. Guadron-Diaz*, No. CR19-0230 EMC, 2020 U.S. Dist. LEXIS 65773, at *3 (N.D. Cal. Apr. 10, 2020) ("The nation's public health interest in stemming the spread of COVID-19 outweighs the interest of the public and the defendant in a speedy trial."); *United States v. Gonzalez*, 2020 U.S. Dist. LEXIS 63367, at *18 (S.D.N.Y. Apr. 9, 2020) ("… the ends of justice served by [granting a continuance] outweigh the best interest of the public and defendants in a speedy trial given the impact of the ongoing COVID-19 pandemic on the Court's operations, its interference with the attorney-client relationship, and public safety.") *United States v. Dickerson*, No. 1:20-00011, 2020 U.S. Dist. LEXIS 53130, at *2 (S.D.W.Va. Mar. 25, 2020) (" … due to the current danger to the public health caused by COVID-19, the ends of justice served by ordering the continuance outweigh the best interest of the defendant and the public in a speedy trial"); *United States v. Kemprud*, No. 2:19-CR-00218-MCE, 2020 U.S. Dist. LEXIS 95833, at *4-5 (E.D.Cal. June 1, 2020) ("… given the effect of the public health recommendations on the ability of judges, counsel, court staff, the press, or members of the general public to be present in the courtroom in light of the recent outbreak of COVID-19 and the well-documented concerns surrounding this virus, the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial. Failure to exclude time under these circumstances would result in a miscarriage of justice"). *See also United States v. Reyes-Canales*, No. JKB-17-589, 2020 U.S. Dist. LEXIS 71876, at *7 (D.Md. Apr. 23, 2020) (" … holding a jury trial with over forty-five witnesses, as well as interpreters, attorneys, and Court staff, in the midst of a pandemic would be a gross miscarriage of justice."); *United States v. Gonzalez-Tello*, No. 3:20-cr-00007-SA-RP-1, 2020 U.S. Dist. LEXIS 43873, at *4-5 (N.D. Miss. Mar. 13, 2020) (" … the public health concerns associated with the COVID-19 pandemic warrants the continuance of the trial of this cause. … The Court's continuance of this matter is driven by public health concerns, including the safety of jurors, counsel, court personnel, and the defendant himself …"); *In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019*, No. 2:20mc7, 2020 U.S. Dist. LEXIS 94647, at *16 n.10 (E.D.Va. May 26, 2020) ("Based on the Court's inability to safely conduct jury trials at this time … [t]he Court makes such 'ends of justice' findings after balancing the factors discussed in 18 U.S.C. § 3161(h) (7) (B), and finds that the exclusion of such time is necessary to avoid a miscarriage of justice, to allow lawyers and litigants the time necessary for effective preparation, and to balance the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional and statutory responsibility to continue federal court operations during the COVID-19 pandemic ...").

In the Eastern District of California, the government routinely **stipulates** that "an ends-of-justice delay is particularly apt" due to COVID. Among other matters, "conducting a jury trial … would involve bringing many people into one courtroom. Conducting such a jury trial would expose the defendant, the defendant's family, jurors, numerous taxpayer witnesses, counsel, and

others to an increased risk of contracting COVID-19." *See, e.g.*, *United States v. Lara*, No. 2:15-CR-00039-MCE, 2020 U.S. Dist. LEXIS 186325, at *6 (E.D. Cal. Oct. 6, 2020).

In sum, district courts consistently recognize that when the conflicting interests are balanced and weighed, "[i]t is simply not worth the risk to hold a trial under the circumstances." *United States v. Young*, No. 19-cr-00496-CMA, 2020 U.S. Dist. LEXIS 122356, at *4 (D. Colo. July 13, 2020). *See also United States v. Smith*, No. 2:19-cr-00213-JAM, 2020 U.S. Dist. LEXIS 190656, at *23 (E.D. Cal. Oct. 14, 2020) ("The Court cannot hold a jury trial at the present time without putting the public, the parties, court staff and the attorneys at substantial risk.")

To whatever extent the persuasive value of some of these cases may appear to be reduced because they were decided prior to the widespread availability of vaccines, we simply note that the recent Delta variant has in many ways thrust us back to pre-vaccine times and concerns. *See*, discussion, *supra*.

## THE GOVERNMENT MISCONSTRUES THE ESSENCE OF THE "FAIR CROSS SECTION" CONCERNS EXPRESSED IN THE MOTION TO CONTINUE

The government complains that "[b]efore the Court has even assembled the venire, the defendants argue that jury summonses issued now are 'unlikely to produce a lawful cross-section of the community.' DE 968 at 9." Doc. 975, at 5. The government's criticism unfairly conflates the question **it** chooses to raise, *to wit*: whether a legal basis **now** exists to strike the venire, with the relevant question raised **by the defense**, *to wit*: whether COVID's likely impact on fair cross section is a relevant factor in this Court's discretionary analysis of whether the defendants' rights, judicial economy, and the health and safety concerns of all trial participants, weigh in favor of a continuance.

Defendants have not invented this very valid concern with the pandemic's impact on fair cross section requirements – Courts throughout the country have raised this issue from the

11

inception. Chief Judges in the vast majority of federal Districts have expressly recognized "the Court's reduced ability to obtain an adequate spectrum of jurors" as a result of COVID-19. *See* Exhibit B. In addition to that "adequate spectrum" language, a number of Chief United States District Judges have specifically expressed the concern raised by the defense concerning the pandemic's lasting impact on "fair cross section" requirements.

This District's Chief Judge was among the early leaders of this growing concern, noting in June 2020 that "under current conditions, continuances were necessary to "ensure … the full panoply of trial rights, to include [among others] the right to an in-person live trial … **where the jury represents a fair cross-section of the community**") (Chief Judge Mark S. Davis).[11] *In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019* (COVID-19), No. 2:20mc7, 2020 U.S. Dist. LEXIS 115032, at *2 (E.D. Va. June 30, 2020).

On September 11, 2020, the Chief Judge for the Western District of Tennessee found that:

> While some citizens are likely willing to serve, other citizens, particularly those in recognized high-risk categories, may be unwilling to appear for jury selection, even with the Phase I safety precautions and procedures adopted by the Court. The CDC has specifically noted that COVID-19 has had a disproportionate impact on African-American and Latino citizens of Shelby County, Tennessee. Given the serious health risks COVID-19 poses as well as the apparent disparate impact of COVID-19 on racial and ethnic groups, **the Court has concerns that any jury pool summoned for jury duty at this time may not be fully representative of the citizens of the Western District of Tennessee**.

---

[11] Importantly, this finding was made by Chief Judge Davis "after countless consultations with various stakeholders, including judges from each Division of this Court, lawyers from the U.S. Attorney's Office, Federal Public Defender's Office, and this Court's Criminal Justice Act panel (CJA panel), representatives from the Virginia Department of Health, the General Services Administration (GSA), and the U.S. Marshals Service, as well as court unit executives and other individuals responsible for operations in our Courthouses." *Id*.

> *In Re: Continued Court Operations Under The Exigent Circumstances Resulting From Covid-19 Outbreak*, Administrative Order No. 2020-34 (Chief Judge S. Thomas Anderson), September 11, 2020

Other Chief Judges have expressed similar views. *See, e.g.*, Western District of Missouri, *General Order, April 20, 2020* (Chief Judge Beth Phillips) ("Moreover, prospective jurors may be reluctant to jeopardize their health and appear under these circumstances, **which will hamper the Court's ability to ensure that a fair cross section of the community is summoned**. These realities negatively impact the fair administration of justice and the rights of defendants"); Western District of Pennsylvania, *Administrative Order Misc. No. 2:20-mc-394-MRH*, April 16, 2020 (Chief Judge Mark R. Hornak) ("the fragility of the current employment situation of many of those who would be summoned in the near term for jury service would increase the likely severe hardship on those so summoned, **impacting the ability to generate representative jury pools** of those that could actually serve without such significant hardship"). *See also*, *United States v. Rodriguez*, No. CR20-0107-JCC, 2020 U.S. Dist. LEXIS 171110, at *2 (W.D. Wash. Sep. 18, 2020) ("The COVID-19 pandemic has also rendered the Court unable to obtain an adequate spectrum of jurors **that would represent a fair cross section of the community**, which would likely make proceeding on the current case schedule in this matter impossible or would result in a miscarriage of justice."); *United States v. Burks*, No. 2:19cr344-MHT, 2020 U.S. Dist. LEXIS 109098, at *2-3 (M.D. Ala. June 22, 2020) ("… The Court concludes that … convening a jury venire during the outbreak **could make it impossible to obtain a jury representative of the community as a whole**."); *United States v. Davis*, No. 20-mj-00140-KMT, 2020 U.S. Dist. LEXIS 182504, at *6 (D. Colo. Sep. 18, 2020) ("The court will experience difficulty, due to various public health directives and general health concerns, **obtaining an adequate cross-section of the community for jury selection**."); *United States v. Young,* No. 19-cr-00496-CMA, 2020 U.S. Dist. LEXIS

122356, at *5-6 (D. Colo. July 13, 2020) ("… **it is highly likely that, even if a jury is eventually selected, it would not reflect an adequate cross-section of society** because any individual who is at a heightened risk of harm from the virus—or anyone who might live with or frequently associate with such a person—would likely be excused for cause."). *See also Can You Get A Fair Jury Trial During The Pandemic?*[12] Law 360, a LexisNexis Company, August 30, 2020; *Criminal Court Reopening and Public Health in the COVID-19 Era, NACDL Statement of Principles and Report,* June 2020, at 9-10 ("**The ability of an accused person to secure an impartial jury gleaned from a fair cross-section of the community during the pandemic is also sharply curtailed**. Vulnerable subsets – whether based on medical or economic conditions – are particularly likely to be underrepresented in jury pools. This includes elderly persons, immunocompromised persons, and most troubling racial and ethnic minorities.") (all emphasis added). The courts "will be clearly struggling to get anything like a representative cross-section of the community on juries."[13]

**THE GOVERNMENT'S DISMISSAL OF DEFENDANTS' CONCERN THAT JURORS WILL BE UNDULY DISTRACTED LACKS SUPPORT AND IS CONTRARY TO CHIEF JUDGE DAVIS' PRIOR FINDINGS, AND THE GOVERNMENT'S OWN POSITION IN PRIOR CASES.**

The government's claim that Defendants' fears about juror distraction are "baseless" (Doc. 975, at 10) fails to provide supporting authority and completely ignores the informed opinions of Chief Judge Davis. *See, e.g.*, General Order No. 2020-06 at 4 (Mar. 23, 2020) (expressing his "grave concerns" about jurors' ability to "provide their full and complete attention" given the pandemic) and General Order No. 2020-19 at 13-16 (June 30, 2020) (finding that a further

---

[12] https://www.law360.com/articles/1305161

[13] Harrison, Thomas F., *Not Afraid of the Virus and Reporting for (Jury) Duty*, Courthouse News Service, July 10, 2020 (Quoting Valerie Hans "one of the country's leading experts on the jury system") https://www.courthousenews.com/not-afraid-of-the-virus-and-reporting-for-jury-duty/

14

extension of criminal jury trials was necessary to ensure "a fair trial with a focused jury that can operate without fear.").

It is also curious that the government now dismisses these concerns as "baseless" when it has **specifically relied** upon Chief Judge Davis' language in seeking its own COVID-based continuances. *See*, *e.g.*, *United States v. McGregor*, 19-cr-00034 (E.D.Va.), Doc. 59, at 5 (4/29/20) (urging that "The Court also expressed 'grave concerns' about the jurors' ability to 'provide their full and complete attention' given the pandemic."); *United States v. Perwaiz*, No. 1 9-cr-189 (E.D.Va.), Doc. 59, at 3 (7/10/20) (same).

## THE GOVERNMENT'S RELIANCE UPON THE SOLE TWO COVID-RELATED CASES IT CITED IS MISPLACED

Throughout its *Response*, the government fails to cite a single appellate case related to pandemic issues and only cites two District Court pandemic cases - *United States v. Tagliaferro*, No. 19-cr-472, 2021 WL 1225990, an out of jurisdiction opinion from March 2021, and *United States v. Kristopher Lee Dallmann*, *et al*., No. 1:19-cr-253-TSE (E.D. Va. Aug. 11, 2021), Dkt. No. 631, a recent opinion from this District.

Properly viewed, these cases lose whatever persuasive authority they may have had at first glance. This is primarily true because neither opinion confronted or evaluated the Delta variant, or the current state of pandemic affairs. The lone local case, *Dallman*, relies upon only three cases in the District, **each of which were tried well *prior* to the Delta variant**. *See*, *United States v. Hewlett,* No. 1:20-cr-64 (E.D. Va.) (tried October 2020); *United States v. McGregor*, No. 2: I 9-cr-34 (E.D.Va.) (tried September 2020); *United States v. Perwaiz*, No. 2:l 9-cr-189 (E.D. Va.) (tried October 2020). Furthermore, none of these cases involved the type of multi-defendant and weeks long trial contemplated here.

The same is true of *Tagliaferro*, which similarly **preceded** the Delta variant, and which went to trial as a single defendant case lasting only seven trial days. Importantly, it is our understanding that *Tagliaferro* was only permitted to go to trial when it did because it did not involve more than two defendants – a limit instituted by the Chief Judge of that District taking account of the size of the courtrooms and the need to satisfy its social distancing requirements during the pandemic.

**THE GOVERNMENT OMITS ANY MENTION OF DEVELOPMENTS IN CO-DEFENDANT ELMER ZELAYA MARTINEZ'S CASE, BUT THOSE DEVELOPMENTS ARE POTENTIALLY RELEVANT TO THE NON-CAPITAL TRIAL**

Attorneys for co-defendant Elmer Zelaya Martinez have informed undersigned counsel that they submitted a request for deauthorization of the death penalty to the DOJ on August 6, 2021.[14] It is likewise our understanding that if the decision to seek the death penalty against co-defendant Elmer Zelaya Martinez is rescinded, his counsel would have no objection to trying his case jointly with the non-capital defendants so long as they could work out scheduling concerns regarding their other cases and be given the opportunity to weigh in on motions *in limine*. This would be consistent with this Court's previously stated preference to try all of the defendants together in a single trial so long as no defendant was facing the death penalty.

---

[14] The government seems to imply in its *Response* that there was something untoward about the undersigned counsel learning about the existence of the filing of the deauthorization submission. *See Response* at 11 n.12, *citing*, Justice Manual § 9-10.160(B). The Justice Manual, of course, sets out limitations on what *the government's counsel* may do but creates no limitations on defense counsel. *See* Justice Manual 9-10.050. There is absolutely nothing improper with our learning of the existence of such submission from counsel for Elmer Zelaya Martinez. They have not provided us with a copy of the submission, nor informed us of the specific contents of the submission. They have merely informed us that it was filed, and that it contained new information that was not previously considered by the government during the prior authorization process. It therefore appears that the submission met the requirements for seeking reconsideration of the prior decision to seek the death penalty. *See* Justice Manual § 9-10.160(A). Moreover, "This confidentiality requirement does not extend to … the disclosure of scheduling matters or the level at which the decision is pending within the Department during the review process." Justice Manual 9-10.050. Thus, while we are unaware of the specific *contents* of the submission, there is nothing wrong with the undersigned nor this Court being aware of the *existence* of the submission.

From the government's *Response* to the undersigned's motion for continuance, it appears that the consideration of co-defendant's deauthorization submission remains pending. While it is true that it is unclear how long this process will take, if a continuance is granted for the present non-capital trial it appears there remains a possibility that the cases could be tried jointly.

## CONCLUSION

WHEREFORE, Pablo Velasco Barrera, through counsel, respectfully requests this Honorable Court to grant the continuance motion to protect the health and safety of the trial participants, avoid unnecessary public health risk, and ensure a fair jury trial.

Respectfully submitted,

PABLO VELASCO BARRERA
By Counsel


_____/s/_____
PAUL P. VANGELLOW, ESQ.
VSB#23488
Paul P. Vangellow, P.C.
6109A Arlington Blvd.
Falls Church, VA 22044
(703) 241-0506
fx: (703) 241-0886
pvangellow@gmail.com
Counsel for Pablo Velasco Barrera


_____/s/_____
Harry A. Dennis, Esq.
Virginia State Bar No. 40888
Dennis, Stewart, & Krischer, PLLC
2045 N 15th St. Ste. 200
Arlington, VA 22201
Phone: 703-248-0626 Fax: 703-524-5283
Email: hdennis@dskvalaw.com
Counsel for Pablo Velasco Barrera

17

**CERTIFICATE OF ELECTRONIC FILING**

      I HEREBY CERTIFY THAT on this the 23rd day of August 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing (NEF) to all counsel of record.

      _____/s/_____
PAUL P. VANGELLOW, ESQ. VSB#23488
Paul P. Vangellow, P.C.
6109A Arlington Blvd.
Falls Church, VA 22044
(703) 241-0506
fx: (703) 241-0886
pvangellow@gmail.com
Counsel for Pablo Velasco Barrera