1

 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3    --------------------------------x
                                      :
 4    UNITED STATES OF AMERICA,        : Criminal Action No.:
                                      : 1:18-cr-123
 5          versus                     :
                                      :
 6    ELMER ZELAYA MARTINEZ,           :
      RONALD HERRERA CONTRERAS,        : May 4, 2022
 7    HENRY ZELAYA MARTINEZ,           :
      PABLO MIGUEL VELASCO BARRERA,    : Volume 1 of 30
 8    DUGLAS RAMIREZ FERRERA,          :
                                      :
 9                     Defendants.     :
      --------------------------------x

10

11          TRANSCRIPT OF JURY PRETRIAL MOTIONS
          BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.
                UNITED STATES DISTRICT JUDGE
12

      APPEARANCES:
13

14     FOR THE GOVERNMENT:   REBECA BELLOWS, AUSA
                             ALEXANDER BLANCHARD, AUSA
15                           CRISTINA C. STAM, AUSA
                             United States Attorney's Office
16                           2100 Jamieson Avenue
                             Alexandria, VA 22314
17     FOR THE DEFENDANT:    ROBERT JENKINS, ESQ.
       (E. Martinez)         Bynum & Jenkins PLLC
18                           1010 Cameron Street
                             Alexandria, VA 22314
19
                             MANUEL LEIVA, ESQ.
20                           The Leiva Law Firm PLC
                             3955 Chain Bridge Rd
21                           2nd Floor
                             Fairfax, VA 22030
22
       FOR THE DEFENDANT:    LANA MANITTA, ESQ.
23     (Contreras)           The Law Office of Lana Manitta, PLLC
                             140B Purcellville Gateway Drive
24                           #511
                             Purcellville, VA 20132
25
                             JESSE WINOGRAD, ESQ.
                             The Law Office of Jesse Winograd PLLC

2

```
 1                        5335 Wisconsin Ave., N.W.
                          Suite 440 Box 4035
 2                        Washington, DC 20015

 3                        GREGORY E. STAMBAUGH, ESQ.
                          Brown & Stambaugh
 4                        9100 Church St
                          Suite 103
 5                        Manassas, VA 20110-5413

 6    FOR THE DEFENDANT:  DAVID KIYONAGA, ESQ.
      (H. Martinez)       510 King St
 7                        Suite 400
                          Alexandria, VA 22314
 8
                          CHARLES TWIST, ESQ.
 9                        Charles Russell Twist PLC
                          2111 Wilson Boulevard
10                        Suite 700
                          Arlington, VA 22201
11
      FOR THE DEFENDANT:  PAUL VANGELLOW, ESQ.
12    (Barrera)           Paul P. Vangellow, PC
                          6109A Arlington Blvd
13                        Falls Church, VA 22044

14                        ANDREW STEWART, ESQ.
                          Dennis Stewart & Krischer PLLC
15                        2007 15th Street N
                          Suite 201
16                        Arlington, VA 22201

17    FOR THE DEFENDANT:  PLEASANT BRODNAX, ESQ.
      (Ferrera)           Law Office of Pleasant S. Brodnax
18                        1701 Pennsylvania Avenue, NW
                          Suite 200
19                        Washington, DC 20006

20                        DARWYN EASLEY, ESQ.
                          Easley Law Firm
21                        10555 Main St
                          Suite 450
22                        Fairfax, VA 22030

23                        LAURA RHODES, ESQ.
                          Law Offices of Laura Rhodes LLC
24                        200-A Monroe St #305
                          Rockville, MD 20850
25
```

3

1    OFFICIAL COURT REPORTER:      TONIA M. HARRIS, RPR
                                   U.S. District Court
2                                  401 Courthouse Square
                                   Tenth Floor
3                                  Alexandria, VA 22314

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────United States v. Contreras, et al.─────

4

1                 **P R O C E E D I N G**

2  (Court proceedings commenced at 1:07 p.m.)

3           THE DEPUTY CLERK:  Criminal No. 2018-cr-123.  United

4  States of America versus Elmer Zelaya Martinez, Ronald Herrera

5  Contreras, Henry Zelaya Martinez, Pablo Miguel Velasco

6  Barrera, Duglas Ramirez Ferrera.

7           Will the interpreter please raise your right hand to

8  be sworn?

9           (Interpreter sworn.)

10          THE INTERPRETER:  I do.  Gloria McFadden.

11          THE COURT:  Would counsel please note your

12 appearances for the record?

13          MR. TWIST:  My client can't hear right now.

14          MR. KING:  My client can't hear.

15          (A pause in the proceedings.)

16          THE INTERPRETER:  Your Honor, a few minutes ago it

17 was working, but it is not working at this time.

18          (A pause in the proceedings.)

19          (Interpreter sworn.)

20          THE COURT:  Counsel, if you could -- again, we're

21 waiting for the new equipment.  If you can ask your clients

22 not to do anything with the devices once they get them

23 because, from what I understand, they work and then suddenly

24 when I come in they don't work.  So somebody is doing

25 something with them.  So let's try to work it out.

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

United States v. Contreras, et al.

5

1          (A pause in the proceedings.)

2          THE COURT:  I'm going to ask the interpreter to ask

3    if you can hear.

4          If you can hear, please raise your hand.

5          (All defendants raised their hands.)

6          THE COURT:  Let the record reflect that all four of

7    the defendants requiring assistance from the interpreter are

8    now able to hear the interpreter as she's repositioned herself

9    in the courtroom.  Again, gentlemen, if you cannot hear at any

10   time, simply raise your hand or nudge your lawyer and we will

11   do what we can to accommodate you.

12         Can everyone hear me?

13         Very good.  All right.  The interpreter has been

14   sworn, correct?

15         THE DEPUTY CLERK:  Yes.

16         THE COURT:  All right.  Counsel, if you could

17   identify yourselves for the record, please.

18         MS. BELLOWS:  Good afternoon, Your Honor.  Rebecca

19   Bellows, Alexander Blanchard, Cristina Stam and Jacqueline

20   Bechara.

21         THE COURT:  Very good.  Welcome back, Ms. Stam.

22         MS. STAM:  Thank you, Your Honor.

23         THE COURT:  Congratulations.

24         MR. STAMBAUGH:  Good morning, Your Honor.  Greg

25   Stambaugh for Ronald Herrera Contreras.

──────United States v. Contreras, et al.──────

6

1          MR. LEIVA:  Good afternoon, Your Honor.  Manuel

2    Leiva on behalf of Mr. Elmer Zelaya Martinez.

3          THE COURT:  Thank you, sir.  Good afternoon.

4          MR. VANGELLOW:  Good afternoon, Your Honor.  Paul

5    Vangellow and Andrew Stewart on behalf of Pablo Barrera.

6          THE COURT:  Good afternoon.

7          MR. TWIST:  Good afternoon, Your Honor.  Russell

8    Twist and David Kiyonaga for Mr. Zelaya Martinez.

9          THE COURT:  Good afternoon, sir.

10         MS. RHODES:  Good afternoon, Your Honor.  Laura

11   Rhodes on behalf of Mr. Duglas Ramirez Ferrera.

12         THE COURT:  Good afternoon, ma'am.

13         These matters -- and I'm going to speak slowly for

14   the benefit of the interpreter.  These matters come on this

15   afternoon for consideration of several issues.  We have issues

16   regarding motions and then we have issues regarding review of

17   the venire.

18         What I'm going to do, Counsel, is I'm going to go

19   over these motions in a particular order.  And then once we

20   finish the motions, we'll then move to the excusal process,

21   and then we should be able to complete our work for the day.

22         The first one we'll take up -- and I apologize if

23   they don't go in an order that you would prefer, but it's

24   basically the way it was presented to me -- Pablo Miguel

25   Velasco Barrera.  The second --

United States v. Contreras, et al.

7

1          MR. VANGELLOW:  I'm sorry, Your Honor, apparently

2     they are not hearing again.  I apologize.

3               (A pause in the proceedings.)

4          MR. VANGELLOW:  I'm wearing hearing aids, which are

5     electronically controlled by my phone.  I'm going to turn them

6     off to see if that makes a difference.

7          THE COURT:  Anything you can try, sir, we're willing

8     to do.

9               Anyone else have any devices they want to turn off

10    in the meantime?

11              Okay.  Gentlemen, if you can hear now, please raise

12    your hands.

13              (A pause in the proceedings.)

14         THE COURT:  I'm going to --

15         MS. RHODES:  In the last trial I did with the same

16    type of diversion, we had a set of maybe five of this part of

17    the device available, and during almost every day of the trial

18    somebodies would just go out and we would have to get a new

19    one -- another one, and then they weren't broken.  Just

20    somehow they would just stop.

21         THE COURT:  They're not making it 30 seconds today,

22    though, before something is wrong.

23         MS. RHODES:  So I'm just saying maybe have several

24    backups that might help.

25              (A pause in the proceedings.)

────────United States v. Contreras, et al.────────
8

```
 1              THE COURT:  Ma'am, if you stop --
 2              THE INTERPRETER:  I was going to ask for another
 3  mic.
 4              THE COURT:  Okay.  Gentlemen, if you can hear what
 5  the interpreter is saying, please raise your hands.
 6              MR. VANGELLOW:  Your Honor, apparently not on behalf
 7  of Mr. Barrera.
 8              THE COURT:  All right.  Let's try this.  Let's go
 9  old school.  Before we had these fancy devices, we just had an
10  interpreter who would stand close enough so that the
11  defendants could hear her speak without the benefit of these
12  devices.
13              Ma'am, are you comfortable removing your mask?
14              THE INTERPRETER:  Yes, Your Honor.
15              THE COURT:  You're comfortable removing your mask?
16              THE INTERPRETER:  Yes.
17              THE COURT:  Ma'am, if you could simply say,
18  "Gentleman can you hear me?"  in Spanish.  Let's see if we can
19  arrange it that way.
20              (Interpreter complied.)
21              THE INTERPRETER:  The response was "yes" from them,
22  Your Honor.
23              THE COURT:  Thank you, ma'am.  What we're going to
24  do today is we're going to try to make it easier for you.  And
25  I apologize that I'm looking around the screen, but we're
```

─────United States v. Contreras, et al.─────

9

1  going to go what I say "old school" and we're just going to

2  have you interpret as we go.  We'll all try to speak at a pace

3  that you can keep up and that way the defendants can have the

4  opportunity of hearing your translation.

5         THE INTERPRETER:  Very well, Your Honor.

6         THE COURT:  Counsel, if you could, again, identify

7  yourselves for the record in case that was not acknowledged.

8         MS. BELLOWS:  Yes, Your Honor.  Rebecca Bellows,

9  Alexander Blanchard, Cristina Stam, and Jacqueline Bechara for

10 the United States.

11        THE INTERPRETER:  Repeat the last name, please.

12        MS. BELLOWS:  Bechara.

13        MR. STAMBAUGH:  Good afternoon, Your Honor.  Greg

14 Stambaugh for Ronald Herrera Contreras.

15        MR. LEIVA:  Good afternoon, again, Your Honor.

16 Manuel Leiva on behalf of Elmer Zelaya Martinez.

17        MR. VANGELLOW:  Paul Vangellow and Andrew Stewart on

18 behalf of Pablo Barrera.

19        MR. TWIST:  Russell Twist and David Kiyonaga on

20 behalf of Henry Zelaya Martinez.

21        THE INTERPRETER:  The interpreter did not hear the

22 name and request repetition.

23        THE COURT:  Could you state it, again, Mr. Twist,

24 who you represent.

25        THE INTERPRETER:  The second name.

───────United States v. Contreras, et al.───────
                                                    10
 1          THE COURT:  David Kiyonaga.

 2          THE INTERPRETER:  Thank you.

 3          THE COURT:  The names are right beside the

 4   defendant's name.  If you could look right beside the

 5   defendant's name, you can find the name of the lawyers.

 6          THE INTERPRETER:  Yes, of course.  Thank you, Your

 7   Honor.

 8          MS. RHODES:  Laura Kelsey Rhodes on behalf of

 9   Mr. Duglas Ramirez Ferrera.

10          Just for the record, my co-counsel, Mr. Easley, had

11   to have a medical appointment and he expects to be here

12   shortly.

13          THE COURT:  Yes.

14          Okay.  Counsel, what I'm going to do is first go

15   through the motions.  First, we'll take up Pablo Miguel

16   Velasco Barrera.  The second motion to strike the government's

17   expert designation.

18          You can argue from there, sir.

19          MR. VANGELLOW:  Your Honor, Paul Vangellow on behalf

20   of Mr. Barrera.  I'm prepared to submit on the papers that I

21   had presented to the Court.  I don't have anything more to add

22   to that unless you have anything that you would like me to

23   address in particular.

24          THE COURT:  I appreciate that, Counsel.

25          Ms. Bellows.

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
              EASTERN DISTRICT OF VIRGINIA

─────United States v. Contreras, et al.─────

11

1           MR. BLANCHARD:  Your Honor, very briefly.  Gang

2    experts have been permitted to testify in numerous MS-13 cases

3    in this court and throughout this circuit and the Fourth

4    Circuit has blessed that practice many times.  We cited some

5    of those opinions in our position paper.  The salient concern

6    expressed by Mr. Velasco Barrera is that the gang expert will

7    be nearly a conduit for testimonial hearsay that he heard over

8    the course of his years of investigating MS-13.

9           (Interpretation.)

10          MR. BLANCHARD:  I'd like to make just two points on

11   that front, Your Honor.  The first is that a lot of what the

12   gang expert will rely on is non-testimonial hearsay.

13          (Interpretation.)

14          MR. BLANCHARD:  And the second point is that,

15   whereas will be the case here, the expert is not directly

16   incorporating specific testimonial hearsay statements into his

17   testimony, the Fourth Circuit has said very clearly there's no

18   Crawford problem.

19          (Interpretation.)

20          MR. BLANCHARD:  Thank you, Your Honor.

21          THE COURT:  For the reasons outlined in the papers

22   filed by the government, and assuming the government provides

23   the appropriate foundation for the expert to testify, the

24   Court is going to deny Pablo Velasco Barrera's second motion

25   to strike the government's expert designation.

United States v. Contreras, et al.

12

1          Next.

2                    (Interpretation.)

3                    THE COURT:  Next is Elmer Zelaya Martinez motion to

4     exclude government's MS-13 expert witness.  Mr. Leiva.

5                    (Interpretation.)

6                    MR. LEIVA:  May it please the Court.  Your Honor, I

7     won't go through all the evidentiary rules that are noted in

8     our motion.  And I really want to get to the heart of the

9     issue of the government's use of a gang expert.

10                    THE COURT:  Just a second.

11                    (Interpretation.)

12                    MR. LEIVA:  The issues for the Court to consider is

13     whether or not the testimony of this gang expert is beyond the

14     layperson's understanding and whether a jury would not have

15     difficulty understanding some of the concepts that the

16     government is going to introduce about --

17                    (Interpretation.)

18                    MR. LEIVA:  The government is going to have numerous

19     cooperating witnesses, Your Honor, both racketeering witnesses

20     and coconspirators.

21                    (Interpretation.)

22                    MR. LEIVA:  All who are self-identified MS-13

23     members.

24                    (Interpretation.)

25                    MR. LEIVA:  So then the question is:  What does an

─────────United States v. Contreras, et al.─────────
13

1   expert have to add to the testimony if the cooperating

2   witnesses will not do themselves when they are put up on

3   direct by the government?

4           (Interpretation.)

5           MR. LEIVA:  The cooperators are usually in a

6   position to talk about what the rules of the gang are, the

7   symbols of the gain, the terminology of the gang.

8           (Interpretation.)

9           MR. LEIVA:  The concern that we have, Your Honor,

10  other than what we've raised in our pleading is, of course,

11  that the government is going to use this expert to bolster the

12  testimony of the cooperating codefendants and the racketeering

13  witnesses.

14          THE COURT:  One question.  And, again, I don't know

15  generally -- specifically what the government's theory of the

16  case is, and I don't know specifically what your theory of the

17  case is.  But isn't it quite possible -- and I don't know what

18  they're going to offer these witnesses for.  I'm assuming,

19  based upon my experience, that they are going to offer them --

20  with regard to information relating to the allegations in the

21  indictment, what happened on the day in question.  I don't

22  know if they're going to offer them for the purpose that the

23  alleged gang expert is going to offer them for.

24          (Interpretation.)

25          MR. LEIVA:  My experience has been, Your Honor, is

——————United States v. Contreras, et al.——————
                                                    14

1    that the government will elicit that information from the

2    racketeering witnesses and some of the coconspirators.

3              (Interpretation.)

4              MR. LEIVA:  The government will ask them the

5    hierarchy of MS-13, the colors worn by MS-13, what the rules

6    are of the MS-13.

7              (Interpretation.)

8              THE COURT:  But under traditional circumstances,

9    isn't your side and the government entitled to corroborate

10   information that is provided by a witness if it gets to be

11   multiple or duplicative or something like that that's a

12   different inquiry.  But aren't you allowed in the context of

13   litigation to corroborate the testimony of someone whose

14   credibility might be questioned?

15             (Interpretation.)

16             MR. LEIVA:  Yes, Your Honor.  In this case, the

17   government from my count is going to have at least six

18   witnesses who are MS-13 members who are going to be

19   testifying.

20             (Interpretation.)

21             MR. LEIVA:  And this MS-13 expert, unlike other

22   expert, which testified more scientific information or

23   technical information.  Basically, what this expert is going

24   to say is, "I interviewed MS-13 members, I've watched MS-13

25   members, this is -- this is how I gathered my information."

———United States v. Contreras, et al.———

15

1            (Interpretation.)

2            MR. LEIVA:  So there's nothing technical or

3    scientific about his testimony.

4            (Interpretation.)

5            MR. LEIVA:  And if I could give the Court a very

6    simple example of how the government used these experts and

7    whether they really help the jurors understand.

8            (Interpretation.)

9            MR. LEIVA:  For example, they will ask the experts

10   whether one of the rules of MS-13 is whether members of MS-13

11   can cooperate with law enforcement.

12           (Interpretation.)

13           MR. LEIVA:  I don't think it's far-fetched for me to

14   present to the Court that I don't know of any criminal

15   enterprise or people that are involved in criminal activity

16   that don't frown upon their coconspirators, codefendants

17   cooperating with the police.

18           (Interpretation.)

19           MR. LEIVA:  So does a jury really need someone to

20   come in as an expert to say that people involved in criminal

21   activity frown upon those that are involved with them to

22   cooperate with law enforcement.  That's something that I think

23   is not outside the realm of a layperson's knowledge.  It is

24   something that a juror can understand and comprehend.

25           (Interpretation.)

─────United States v. Contreras, et al.─────

16

1        MR. LEIVA:  And also, a jury, I think, Your Honor,

2    will be able to comprehend that certain criminal organizations

3    or gangs, they have their symbols, they wear certain clothing,

4    they have certain colors that they wear.  So this --

5            (Interpretation.)

6        MR. LEIVA:  So this expert can't add to anything as

7    far as helping the members of the jury or Your Honor

8    understanding MS-13.

9            (Interpretation.)

10       MR. LEIVA:  But a second concern we also have, Your

11   Honor, is that Sergeant Guzman, as far as I can tell, has not

12   investigated any of the MS-13 cliques here in this area.

13           (Interpretation.)

14       THE COURT:  But doesn't that --

15           (Interpretation.)

16       THE COURT:  Doesn't that go to his ability to

17   qualify as an expert witness rather than a motion to exclude

18   him at this point?  In other words, if the government fails to

19   ask the appropriate questions and fails to get the appropriate

20   answers, doesn't that resolve your inquiry rather than a

21   motion in limine?

22           (Interpretation.)

23       MR. LEIVA:  It could, Your Honor, which is why I

24   requested a hearing.  I can tell the Court that up until about

25   a month ago, the government relayed to us that they were going

United States v. Contreras, et al.

17

1  to rely on a local detective who's testified numerous times in

2  this courthouse as far as the gang activity in this area.

3  They then chose to go a different route and are bringing in

4  somebody in from Houston, and that expert designation that we

5  were sent or an additional expert designation that we were

6  sent via email --

7              (Interpretation.)

8              THE COURT:  And you would agree that conducting a

9  Daubert hearing is within the discretion of the Court?

10             MR. LEIVA:  Correct, Your Honor.

11             THE INTERPRETER:  May I request repetition?

12             THE COURT:  A Daubert hearing.  D-a-u-b-e-r-t.

13             (Interpretation.)

14             THE COURT:  And that the expert witness doesn't need

15  the reliability or credibility standard based upon the inquiry

16  that would be made as you're conducting your voir dire of that

17  witness, then it would be within the discretion of the Court

18  to preclude that testimony.

19             (Interpretation.)

20             MR. LEIVA:  That is correct, Your Honor.  If I could

21  read just this one passage that the government provided as

22  part of a supplementation to this expert designation.

23             They wrote and I quote:  "MS cliques, while

24  generally following the same rules and regulations, often have

25  additional unique rules or regulations."

─────United States v. Contreras, et al.─────

18

1              (Interpretation.)

2              MR. LEIVA:  So, Your Honor, of course, the concern

3     is -- well, let me step back.

4              I think there's, at times, a misunderstanding of

5     MS-13.  MS-13 is more of an "umbrella," let's say for lack of

6     a better term, organization.  But within that umbrella, there

7     are cliques.  And the cliques, as the -- as the government has

8     conceded here, often have unique rules or regulations.  Which

9     is why, in most of the cases I've been involved in, there's

10    been a local law enforcement officer who's qualified as an

11    MS-13 expert.

12             (Interpretation.)

13             THE COURT:  Which, based upon your own standard or

14    statement of the law, you provide a foundational basis for

15    providing good questions to the proposed expert during voir

16    dire.

17             (Interpretation.)

18             MR. LEIVA:  Yes, Your Honor.  But, again, when the

19    government puts someone up as an expert, and in this case it

20    is our contention that they would do so to provide some

21    semblance of reliability to the five or six admitted MS-13

22    members who are going to be testifying.  So, in other words,

23    being used purely to bolster their testimony, not to provide

24    the jury with information that they otherwise wouldn't be able

25    to understand or comprehend.  This is not complicated stuff.

United States v. Contreras, et al.

19

1          (Interpretation.)

2          MR. LEIVA:  So in closing, Your Honor, I think the

3  question the Court needs to ask:  What is the expert going to

4  add to the case that the cooperators are not going to be able

5  to provide or to provide to the Court or to the jury?  And

6  what is it about the testimony that the government believes an

7  expert can provide that the jury needs assistance with or that

8  a juror won't be able to understand without an expert?

9          (Interpretation.)

10         MR. LEIVA:  Thank you, Your Honor.

11         THE COURT:  The Court relying on Rule 702 of the

12  Federal Rules of Evidence, which requires the Court to assess

13  the reliability of expert testimony based on scientific,

14  technical, or other specialized knowledge before admitting the

15  alleged or proffered expert to testify governs the standard

16  that the Court will use to assess whether or not the

17  information provided by the expert who meets the standard of

18  Rule 702 and will deny the motion in limine, obviously, with

19  leave for counsel to raise the objection in the context of the

20  proffered expert and when that expert proposes to testify.

21         MR. LEIVA:  Thank you, sir.

22         THE COURT:  Yes.

23         (Interpretation.)

24         THE COURT:  Thank you.

25         The next motion on the Court's docket is the

─────United States v. Contreras, et al.─────
                                                           20

1   government's motion in limine to preclude references to the

2   penalties the defendant is facing if convicted.

3                (Interpretation.)

4                MR. BLANCHARD:  Your Honor, this is a fairly

5   standard motion based on longstanding Supreme Court and Fourth

6   Circuit precedent.  And at least, thus far, I don't believe

7   any of the defendants have lodged an objection.  Just to be

8   clear what we're asking for, we're asking for the attorneys to

9   be barred from -- I'm sorry.

10               (Interpretation.)

11               THE COURT:  Mr. Blanchard, I know this is difficult,

12  but people like me and Mr. Stambaugh, who are older, realized

13  this is a trip down memory lane.  This is the way we used to

14  do it all the time.

15               MR. BLANCHARD:  I'll try to remember, Your Honor.

16               (Interpretation.)

17               MR. BLANCHARD:  So we're asking for the Court to

18  preclude defense counsel from referring to the potential

19  penalties that the defendants face if they're convicted.

20               (Interpretation.)

21               MR. BLANCHARD:  And similarly, if any of the

22  defendants are to testify in their own defense, we would ask

23  the Court to preclude them from referring to any penalties

24  that they might face if the jury were to convict them.

25               (Interpretation.)

United States v. Contreras, et al.

21

1          MR. BLANCHARD:  Thank you.

2          MS. RHODES:  Your Honor, can I respond?

3          THE COURT:  You can stand there if you'd like.

4          MS. RHODES:  So this issue, I believe -- correct --

5    this issue arose out of the discussion in an email we were

6    having with the government.

7          THE COURT:  Just a moment.

8          (Interpretation.)

9          MS. RHODES:  So I'm reviewing what the government's

10   motion says and I think that it's essentially barking up the

11   wrong tree.

12         (Interpretation.)

13         MS. RHODES:  So, it refers to the defendant's

14   sentencing exposure and says it's irrelevant.  And we don't --

15         (Interpretation.)

16         MS. RHODES:  We don't dispute that.

17         (Interpretation.)

18         THE COURT:  Let me ask a simple question and it sort

19   of put it in context for me.

20         Whenever I consider the term "relevance" --

21         (Interpretation.)

22         THE COURT:  -- I ask myself, what does it intend to

23   prove or disprove?

24         (Interpretation.)

25         THE COURT:  And in the context of this case, what

United States v. Contreras, et al.

22

1    does any sentencing, which the jury has no involvement in --

2              (Interpretation.)

3              THE COURT:  -- intend to prove or disprove anything

4    about the case?

5              (Interpretation.)

6              MS. RHODES:  The issue that we had been discussing

7    is whether the defense can cross-examine a cooperating witness

8    about whether they were facing the death penalty at the time

9    they negotiated a deal or began to negotiate the deal, whether

10   or not it was still in effect against them or possibly at the

11   time they signed the plea agreement.

12             (Interpretation.)

13             THE COURT:  That's a different question than the one

14   regarding reference to sentencing.

15             (Interpretation.)

16             MS. RHODES:  So what our conversation had been on

17   email was about defense counsel's use of the fact that a

18   witness was facing the death penalty at the time they began

19   cooperation.  And our position is that at that stage is quite

20   relevant to their willingness to come in and what motivation

21   it provides.

22             (Interpretation.)

23             THE COURT:  That's an entirely different question in

24   kind from the question that's provided the format for the

25   Court's consideration.  Whether you can ask that question or

1    not seems to me to be something, based upon the stage we're at

2    right now, the Court is going to have to resolve in the

3    context of the trial.

4              (Interpretation.)

5              MS. RHODES:  Very well.  I do want to add one other

6    aspect to this, though.  In a previous trial last fall that

7    went on for several months with Judge Bredar in Baltimore,

8    this issue arose.

9              (Interpretation.)

10             MS. RHODES:  And Judge Bredar allowed the defense to

11   inquire of cooperators who had been in -- in the -- a point in

12   negotiations that I described, as long as the defense agreed

13   that the instruction could be given that none of the

14   defendants were then facing the death penalty.

15             (Interpretation.)

16             THE COURT:  But, again, I've read the case

17   specifically that you're speaking about, but my concern is

18   that if we get into that too extensively it could cause the

19   jury to be confused.  Because at one point, Mr. Zelaya

20   Martinez was indeed facing capital punishment and the jury

21   doesn't need to get caught up in that because, as I understand

22   it now, all of the defendants currently before the Court are

23   similarly situated and those circumstances differentiate them

24   from each other.

25             (Interpretation.)

United States v. Contreras, et al.

24

1          MS. RHODES:  The Court is obviously correct.  But
2    not all are in the same situation, but it would be the
3    cooperators' position that we'll be asking about.
4          (Interpretation.)
5          THE COURT:  Well, my inclination, at this stage,
6    accepting the fact that this sort of changes the analysis of
7    what the motion was all about, is I am going to preclude any
8    references to any sentencing aspects regarding any of the
9    defendants or any of the witnesses.  However, I will allow, to
10   the extent appropriate, appropriate cross-examination on what
11   benefits people might have gotten for their testimony, which
12   is recognized even by the government as appropriate
13   cross-examination or inquiry.
14         (Interpretation.)
15         MS. RHODES:  Very well.  And does that mean, for
16   example, we could ask a question about your -- the time you're
17   facing now has been substantially reduced.
18         THE COURT:  I don't know what the answers to those
19   questions might be.  And I'm not going to allow lay witnesses
20   or anybody, expert witnesses for that matter, to testify to
21   the extent of the application of any Rule 35.  That's just
22   going to provide additional confusion for the fact finder.
23   Those things are traditionally recognized by case law, left
24   within the pure discretion of the trial court.
25         MS. RHODES:  Very well.

United States v. Contreras, et al.

25

1          (Interpretation.)

2          THE COURT:  Thank you, Counsel.

3          Mr. Leiva I see you getting up and down over there.

4          MR. LEIVA:  Yes, Your Honor.  I'll go after

5   Mr. Blanchard.  Your Honor, I think we may have the same

6   concerns.

7          (Interpretation.)

8          MR. BLANCHARD:  So, Your Honor, this goes to a point

9   you made with Ms. Rhodes.  The one and only footnote in our

10  motion explicitly says, "The government does not seek to

11  preclude questions posed to cooperating witnesses regarding

12  the sentences they receive."

13         (Interpretation.)

14         THE COURT:  And correct me if I'm wrong, please.

15  Each one of those defendants, this Court sentenced, correct?

16  Except maybe one.

17         (Interpretation.)

18         MR. BLANCHARD:  This Court but not Your Honor,

19  necessarily.

20         THE COURT:  Yes, sir.

21         (Interpretation.)

22         MR. BLANCHARD:  But that remains our position and

23  the motion is really just about references to the defendant's

24  sentencing exposure.

25         THE COURT:  Yeah, okay.

United States v. Contreras, et al.

26

1          (Interpretation.)

2          THE COURT:  The Court concurs.

3          Mr. Leiva.

4          MR. LEIVA:  Yes, Your Honor.  Well, I just caught

5   the last part.  You said, "The court concurs."

6          My concern was that Ms. Rhodes was not answering the

7   question that you posed to her and that wasn't the motion that

8   was before the Court by the commonwealth.  She went somewhere

9   else with that, Your Honor.

10          THE COURT:  And I agree she went beyond the context

11   of the motion, but I gave her some latitude on that, and I'll

12   hear from you on that.

13          THE INTERPRETER:  May the interpreter render between

14   each person, Your Honor?  Otherwise, the --

15          THE COURT:  That's fine.  Yes, ma'am.

16          THE INTERPRETER:  Perfect.  The defendants will know

17   who's speaking.

18          (Interpretation.)

19          MR. LEIVA:  So, yes, Your Honor, the government is

20   correct that most courts agree that it is not relevant what

21   possible sentence our clients may receive, and that was their

22   motion not to preclude us from cross-examining any cooperating

23   codefendants or even racketeering witnesses on what they

24   received -- what sentence they received, or what sentence they

25   may have received.

—————United States v. Contreras, et al.—————
27

1        So Ms. Rhodes brought that issue before the Court

2   when it was never in play by the government, Your Honor.  So I

3   just want to be clear that that is not what they're seeking,

4   and I concur with them in that footnote that that is still

5   fair game for us.

6             THE COURT:  I think the record is clean.

7             (Interpretation.)

8             THE COURT:  Thank you.

9             The last -- or the next motion is the government's

10  motion in limine to prevent victim witness attendance --

11  victim witness to attend the trial in its entirety.

12            (Interpretation.)

13            THE COURT:  And, Mr. Blanchard, when you make your

14  argument before the Court, if you could provide some degree of

15  limitation as to who qualifies as a victim witness.

16            (Interpretation.)

17            MR. BLANCHARD:  So here, Your Honor, we're talking

18  about direct relations:  Parents, siblings, people who are

19  related to the victims.

20            (Interpretation.)

21            MR. BLANCHARD:  And under the exception carved out

22  in Rule 615(d), we believe that these victims' family members,

23  who have essentially stepped into the place of the victims who

24  are deceased, have a right under the Crime Victims' Right Act

25  to be present throughout the duration of the trial if they so

─────────United States v. Contreras, et al.─────────
28

1    choose.

2             (Interpretation.)

3             THE COURT:  I'm assuming, Mr. Blanchard, and again

4    correct me if I'm wrong on this, that these particular

5    individuals who fit into the category of victim witnesses that

6    you talked about, are not going to be what I will term

7    "traditional fact witnesses."  They're just going to be

8    individuals who are going to talk about the individuals who

9    are the alleged victims of the circumstances?

10            (Interpretation.)

11            MR. BLANCHARD:  I think that's generally right, Your

12   Honor, but I'm not sure that that applies with respect to some

13   of the testimony that we expect they'll provide.

14            (Interpretation.)

15            MR. BLANCHARD:  Which relates to the date on which

16   they disappeared and the circumstances surrounding when they

17   were last seen.

18            (Interpretation.)

19            MR. BLANCHARD:  As to those events, I think they are

20   fact witnesses.

21            (Interpretation.)

22            MR. BLANCHARD:  Thank you, Your Honor.

23            MS. RHODES:  May I be heard?  I would just ask that

24   these people that we're talking about, the victim witnesses,

25   not be allowed to listen to opening statements since they'll

─────────United States v. Contreras, et al.─────────

29

1  be testifying.

2          (Interpretation.)

3          MR. BLANCHARD:  Your Honor, the government does not

4  agree with that.  Under the Crime Victims' Rights Act they

5  have a right to be here throughout the entirety of the

6  proceedings and Courts have held that even can include voir

7  dire.

8          (Interpretation.)

9          THE COURT:  The purpose of the rule on witnesses,

10  which is the act that have been used to describe the

11  circumstances we're talking about --

12          (Interpretation.)

13          THE COURT:  -- is to preclude witnesses from

14  tailoring their testimony to what they hear in court.

15          (Interpretation.)

16          THE COURT:  And so, if they're able to hear opening

17  statements and/or hear the testimony of other individuals,

18  there is the distinct possibility, not saying it's going to

19  necessarily happen, that their testimony could indeed be

20  tailored to -- to be inconsistent with the government's theory

21  of the case.

22          (Interpretation.)

23          MR. BLANCHARD:  Two points, Your Honor.  Your

24  concerns are certainly valid.  However, first, the CVRA trumps

25  the rule on witnesses Courts have held.  So that's the first

———United States v. Contreras, et al.———
30

1    point.  The second point is that -- well, let me hold on.

2              (Interpretation.)

3              MR. BLANCHARD:  The second point is that based on

4    the nature of the testimony that these victim witnesses will

5    be providing and where they are likely to testify in the order

6    of witnesses, we do not think that their testimony is of the

7    sort that is susceptible, whether they're listening to other

8    witnesses or opening statements to being changed or conformed.

9    As I mentioned, they're testifying to very narrow facts

10   regarding dates and such.

11             (Interpretation.)

12             MR. BLANCHARD:  So while their testimony is

13   important this case doesn't rise and fall on their testimony.

14   And so, any potential prejudice to the defendants is, the

15   government would submit, nonexistent but certainly not

16   material.

17             (Interpretation.)

18             THE COURT:  I don't think that necessarily the Crime

19   Victims' Rights Act necessarily trumps the Sixth Amendment,

20   which is the issue that's raised in the context on the rule of

21   witnesses.

22             Who is going to do the opening statement?

23             MR. BLANCHARD:  I am, Your Honor.

24             (Interpretation.)

25             THE COURT:  What I'm going to ask is that you

United States v. Contreras, et al.

31

1  fashion your opening statement, that it not provide the degree

2  of particularity that is going to make reference to the

3  individuals who are going to be sitting in the courtroom.  I

4  think you understand what I'm saying.

5          In other words, I don't want you to say Ms. Jones is

6  going to testify X, Y, Z; Mr. Smith is going to testify 1, 2,

7  3 as opposed to a witness who is likely to testify to the

8  following.

9          MR. BLANCHARD:  I understand, Your Honor.

10          (Interpretation.)

11          THE COURT:  Ma'am, would you like a break or a drink

12  of water or something?

13          THE INTERPRETER:  Some water would be nice, Your

14  Honor.

15          THE COURT:  Okay.  We're not going to leave the

16  courtroom, but we're going to let you have a little bit of a

17  break.  You've been working hard, so we'll have you take a

18  little break.

19          (A pause in the proceedings.)

20          MR. VANGELLOW:  Your Honor, I'm sorry, if I may.

21          THE COURT:  Yes, sir.

22          MR. VANGELLOW:  Given the fact that Mr. Blanchard's

23  opening statement has come into play here, if you will, he has

24  proposed a very expansive PowerPoint presentation in his

25  opening statement with videos, pictures, so on and so forth,

─────────────── United States v. Contreras, et al. ───────────────

32

1    and it may affect how you decide to rule on what he can and

2    cannot do in his opening statement, even though it was

3    addressed for a different issue.

4              So I don't know if it's appropriate to bring it up

5    at this point in time or as part of the -- and this was also

6    brought up in exchanges of emails amongst counsel for the

7    government and for the defense with regard to how far he could

8    go in his opening statement.  Several of us have objected to

9    what he proposes to do.  But, again, to the extent that it

10   would affect what you've just considered, it might be

11   appropriate to bring it up now, with all due respect.

12             THE COURT:  Suffice it to say, Mr. Blanchard has --

13   I'm sorry.

14             (Interpretation.)

15             THE COURT:  Suffice it to say that Mr. Blanchard has

16   been before this particular Court many times and I think he's

17   very adept at understanding what the significance of what he

18   can and cannot do and understood clearly what the Court said

19   when it proposed its resolution for the issue before the

20   Court.

21             MR. VANGELLOW:  Very well, Your Honor.

22             (Interpretation.)

23             THE COURT:  Very good.  There was something that I

24   saw coming through the court regarding the use of production

25   tapes and the like and the use of them in opening statements.

United States v. Contreras, et al.

33

1   Did something like that come up?

2          (Interpretation.)

3          MR. BLANCHARD:  Yes, Your Honor.  We filed a motion

4   in limine in light of objections that were conveyed via email

5   by defense counsel yesterday and today.

6          (Interpretation.)

7          MR. BLANCHARD:  And, Your Honor, the motion relates

8   to the government's request to be able to use a PowerPoint

9   presentation during its opening statement and for that slide

10  deck to include some of the exhibits that have been marked and

11  provided to defense counsel and the government expects to

12  tender at trial.

13         (Interpretation.)

14         MR. BLANCHARD:  This is not an uncommon practice for

15  the government, and as we put in our motion, we have a good

16  faith basis to believe that all of the evidence that's cited

17  or shown in the PowerPoint presentation is admissible and will

18  be admitted when it's formally offered during the trial.

19         (Interpretation.)

20         THE COURT:  And for purposes of anticipating some of

21  the concerns that the other side may have, the Court will note

22  that in its instruction the Court will specifically say that

23  opening statements and closing arguments are not evidence.

24         So does that alleviate some of your concern, sir?

25         (Interpretation.)

─────United States v. Contreras, et al.─────

34

1          MR. TWIST:  May I be heard?

2          THE COURT:  Yes, sir.

3          MR. TWIST:  Russell Twist, Your Honor.

4          Reading from the government's pleading, page 2, "The

5    government's opening statement should be, quote, an objective

6    summary of evidence.'"  And it --

7          THE COURT:  You can stay standing there.  She needs

8    to catch up with you.  You can stand.  She just needs to catch

9    up with you.

10          (Interpretation.)

11          MR. TWIST:  And the citation for that is *Frazier v.*

12    *Cupp*, 394 U.S. 731, 736, 1969.  And I would --

13          THE COURT:  Let her speak the cite --

14          (Interpretation.)

15          MR. TWIST:  So I would suggest that it's one thing

16    to say, "there will be photographs," and another to show

17    photographs at this point.  Because at this point in the trial

18    it's only to orient the jurors or the Court.  It's totally a

19    road map of where their prosecution expects it will try to go.

20    But if they start putting in pictures and recordings and

21    things like that, those are not summaries.  Those are the

22    evidence that they intend to use.  So we would object to that,

23    Judge.

24          (Interpretation.)

25          THE COURT:  But, Counsel, isn't the rule that in

—————United States v. Contreras, et al.—————

35

1   opening statement all counsel are entitled to suggest evidence

2   that they believe they would have a good faith basis for

3   believing that they would be admissible?

4           (Interpretation.)

5           MR. TWIST:  Your Honor, yes, but -- and the but is

6   the Supreme Court's decision in *Cupp*.  The government can

7   summarize their evidence, but the Court is very clear an

8   objective summary of evidence.  There's a difference between

9   saying you will hear from witnesses who will say without --

10  well, pictures of evidence.  Now, you'll be able to see a

11  picture of A, B, C.  That's a summary.  But what's different

12  is, here is a picture.  For one thing, were we to have an

13  objection, then we're objecting to evidence in an opening

14  statement, which really is disruptive, and lawyers try not to

15  interrupt the evidence of lawyers, so.

16          (Interpretation.)

17          MR. TWIST:  So, for example, as I understand it,

18  that would look like a closing statement, and if there's no

19  distinction between a closing statement and an opening

20  argument, I don't think that meets the Supreme Court standard.

21          (Interpretation.)

22          THE COURT:  I was always taught that in the context

23  of presentation of evidence, its opening statement, and that

24  is what you believe the evidence will be, and closing argument

25  is what you believe the evidence was.  And a lot of times

──────United States v. Contreras, et al.──────

36

1  there's a disconnect between the presentation of the evidence

2  and what was promised in opening statement.  And good lawyers

3  make the point of suggesting to the jury that the government

4  promised something they didn't deliver.

5          (Interpretation.)

6          MR. TWIST:  Your Honor, yes.  But, Judge, it's one

7  thing to say, "I suggest that you will see photos that will

8  show" and it's something else to say, "here is a photo, here

9  is a recording."  That's not a summary.  That's the evidence.

10  So it's one thing to say, "here is what you will see," and

11  something else that say, "here it is."

12          (Interpretation.)

13          THE COURT:  Thank you.

14          MR. BLANCHARD:  So the defense wants us to say to

15  the jury "this is what you'll see, but we're not going to show

16  any of it to you now."

17          (Interpretation.)

18          MR. BLANCHARD:  The purpose of the opening statement

19  is to preview the evidence that the government expects will be

20  introduced and that will go towards the defendant's guilt for

21  the jury's benefit.

22          And in the course of previewing the evidence in this

23  case the government simply wishes to use audio-visual aids to

24  allow the jury to better understand the road map, so to speak.

25          (Interpretation.)

———United States v. Contreras, et al.———
37

1        MR. BLANCHARD:  Two other points, Your Honor.
2   First, as Your Honor rightly pointed out, the jury will be
3   instructed that nothing I say during my opening statement will
4   be evidence.
5        (Interpretation.)
6        MR. BLANCHARD:  And the second point is that what
7   the government intends to do here is summarize the evidence.
8   As Your Honor knows from the exhibit list that we submitted,
9   which runs to 30 pages, there is an enormous amount of
10  evidence that we plan to offer in this case.
11       THE INTERPRETER:  The interpreter requests
12  repetition of the number of pages.
13       MR. BLANCHARD:  30.
14       (Interpretation.)
15       MR. BLANCHARD:  Of this --
16       THE COURT:  Let me interrupt.  And I'm assuming that
17  there's not going to be an effort of publishing anything to
18  the jury during opening statements.
19       (Interpretation.)
20       MR. BLANCHARD:  Well, maybe we have different
21  definitions of "publish," Your Honor.  We certainly were
22  intending to show them these select exhibits.  So if, for
23  example, the exhibit is a picture of a victim then that
24  picture is up there on the screen.  And likewise, if it's a
25  seven-second recording of the defendant's post-arrest

United States v. Contreras, et al.

38

1    interview, we play it for the jury to see with synchronized

2    text.

3              (Interpretation.)

4              THE COURT:  I think my definition of "publishing" is

5    a little bit more nuanced than yours.  Whenever I think of the

6    term "publishing" it's something that's been admitted into

7    evidence and that you're giving the jury or the fact finder

8    the opportunity to evaluate at that particular time.  That's

9    what I'm talking about.

10             MR. BLANCHARD:  Okay.

11             (Interpretation.)

12             MR. BLANCHARD:  So in that respect then, no, I don't

13   think there's a concern, Your Honor.  We're not going to be --

14   I'm certainly not going to be vouching for this evidence and

15   we're not going to be asking the jury in opening to evaluate

16   it in any way, other than to just take it in as a preview of

17   the evidence to come during the trial.

18             (Interpretation.)

19             THE COURT:  I think you understand the parameters

20   and my concern.  The Court is going to allow you to use your

21   production process, whatever you want to call it, for your

22   presentation in opening statement, but I hope you understand

23   the limitations and the terminology that you're expected to

24   use as an officer of the Court as to the significance of this

25   information.

———————United States v. Contreras, et al.———————

1        In other words, that you're making it clear that

2  this is not evidence.  I'm not expecting you to say that, but

3  that you not suggest, in any way, that this is evidence.  You

4  can say something like, "this is evidence that we hope to

5  prove during the course of our presentation of our case," but

6  I don't want there to be any confusion that what you're

7  presenting in opening statement as the outline or summary of

8  your case is in any way considered evidence that's been

9  considered by the Court and it's admissible for their

10  consideration.

11        MR. BLANCHARD:  Understood, Your Honor.

12        (Interpretation.)

13        THE COURT:  Counsel, this is without prejudice to

14  you raising any objection as you think is appropriate if

15  Mr. Blanchard does go outside of what you think is the

16  appropriate parameters of the Court's determination.

17        (Interpretation.)

18        MR. TWIST:  Thank you, Judge.  But for the record we

19  would note our objection to this approach.

20        THE COURT:  Yes, sir.

21        (Interpretation.)

22        THE COURT:  Mr. Leiva.

23        MR. LEIVA:  Your Honor -- yes, Your Honor, I

24  apologize.  I thought that Your Honor would look to every team

25  to respond to some of the concerns that was raised by

United States v. Contreras, et al.

40

1    Mr. Twist.

2           THE COURT:  We'll consider the motion for

3    reconsideration.

4           MR. LEIVA:  Yes, Your Honor.  I'm going to be a

5    little bit more specific, just to give the Court an example of

6    what the government proposed they are going to show the jury

7    during opening statement.

8           (Interpretation.)

9           MR. LEIVA:  And I do appreciate Your Honor, and I

10   acknowledge the Court will instruct the jury, or the jury will

11   be told that opening statement is not evidence.  But there are

12   instances, Your Honor, with certain things that are said in

13   opening -- or presented during opening statements are so

14   highly prejudicial, Your Honor.  Especially at that stage

15   where it has yet to be determined whether that piece of

16   evidence would even be admissible, and I'll give the Court an

17   example.

18          (Interpretation.)

19          MR. LEIVA:  The government is proposing showing the

20   video -- a video.  It's several seconds long.  It's a black

21   screen and you barely can hear voices in that video.  And the

22   government is going to argue with an opening statement that

23   that is a video where the audio was captured of someone being

24   stabbed.  You can't make out who is in the video.

25          (Interpretation.)

United States v. Contreras, et al.

41

1          THE COURT:  First of all, I'm not going to let the

2    government argue anything in opening statement.

3                  (Interpretation.)

4          MR. LEIVA:  So with that particular video, again,

5    it's a black screen so you can't see what's going on.  You can

6    barely make out any audio and then they are going to present

7    the jury with opening statement.  My understanding is with a

8    transcript -- an interpretation of what their interpreter

9    believed what was said.  So they are, in essence, creating

10   evidence, which they don't want to use during opening

11   statement, and that particular video, or its translation, may

12   not even come into evidence, Your Honor.

13                 (Interpretation.)

14         MR. LEIVA:  And that is one bell that once it's rung

15   it can't be unrung.  Once the government says, "here is a

16   video and you hear someone being killed."

17                 (Interpretation.)

18         MR. LEIVA:  Now, here is the difference.  If they

19   display the video, but they are taking the one extra step

20   which is "here is a video, and now here is the translation of

21   what we believe is being said during that small video clip

22   where you can't see any of the participants, and you can

23   barely make out what's being said."

24         THE COURT:  Separate question.

25                 (Interpretation.)

United States v. Contreras, et al.

42

1    MR. LEIVA:  Yes, Your Honor.  So that is the type of

2  highly prejudicial evidence that we are concerned about coming

3  in at opening statement.

4    (Interpretation.)

5    MR. LEIVA:  Whereas, a piece of evidence on its face

6  you can't really make it out, what it is.

7    (Interpretation.)

8    MR. LEIVA:  And for reference, that's Government's

9  Exhibit 41-4B and 41-4C.

10    (Interpretation.)

11    THE COURT:  Which raises a separate issue of

12  credibility, reliability, and admissibility, which is a

13  separate thing from dealing with whether or not reference can

14  be made to a particular exhibit that may come into evidence in

15  opening statement.

16    (Interpretation.)

17    MR. LEIVA:  Correct, Your Honor.  But, again, it's

18  the reaction that a video that's played in opening statement

19  will, I have to assume, most lay people haven't heard

20  something like that, and it will draw a reaction early on in

21  the case, Your Honor.  Where, again, they may have some

22  pictures or some stills that, on its face, the jury will be

23  able to see what it is, but in this one, again, they are going

24  to interpret for the jury what it is.  And, again, in addition

25  to that, submit what they believe is being said on that short

─────United States v. Contreras, et al.─────
43

 1   video where you can barely make out what the audio is.  So

 2   it's going to be a point of contention.  They have other stuff

 3   they can show, so I would just ask the Court to consider just

 4   the prejudicial nature of that particular exhibit that they

 5   want to introduce in opening statement, Your Honor, and ask

 6   them to withhold that until the proper foundation can be laid.

 7              (Interpretation.)

 8              MR. LEIVA:  Thank you, Your Honor.

 9              THE COURT:  The Court adheres to its previous

10   determination regarding the appropriateness of the proposed

11   opening statement by the government.  The Court believes that

12   in most instances opening statements are very fluid and have

13   to be evaluated on their circumstances as they are presented.

14   I note your exception.

15              (Interpretation.)

16              THE COURT:  Thank you, ma'am.

17              All right.  I believe that's all the motions that I

18   have unless somebody has something else they want to bring up.

19              (Interpretation.)

20              THE COURT:  Mr. Stambaugh.

21              MR. STAMBAUGH:  Your Honor, just for the record,

22   I'm -- for Ronald Herrera Contreras, we would join the

23   objections that have already been made.

24              THE COURT:  Yes, sir.  And is that true for all

25   counsel?

United States v. Contreras, et al.

44

1    (Interpretation.)

2    MR. VANGELLOW:  Yes, sir, Your Honor.  On behalf of

3    Mr. Barrera.

4    (Interpretation.)

5    MS. RHODES:  Yes, Your Honor, on behalf of

6    Mr. Ramirez Ferrera.  And I would also ask that the Court

7    consider, or allow, our objections and motions of the

8    codefendants in a variety of issues that --

9    THE COURT:  So you want to incorporate, by

10   reference, all of the objections made by all of the other

11   codefendants?

12   (Interpretation.)

13   THE COURT:  Mr. Twist, same thing?

14   MS. RHODES:  And also, Your Honor, we would adopt

15   the motions in limine as well.

16   THE COURT:  Okay.

17   (Interpretation.)

18   MR. TWIST:  Your Honor, we would join.

19   THE COURT:  State your name, sir, and your client.

20   MR. TWIST:  Russell Twist.

21   THE COURT:  For?

22   MR. TWIST:  Henry Zelaya Martinez, Your Honor.

23   THE COURT:  Yes, sir.  Thank you.

24   (Interpretation.)

25   MR. LEIVA:  Yes, Your Honor.  Manuel Leiva on behalf

──────United States v. Contreras, et al.──────

45

1  of Elmer Zelaya Martinez.  We also move to adopt.

2          Your Honor, I also had -- I guess the government had

3  filed a motion in limine to keep out my Rule 35 expert.  Your

4  Honor did suggest, in passing, what the Court's position was

5  going to be on that.  Just for the record, Your Honor, are you

6  making that ruling on the papers or do you want to hear

7  argument on it?

8          THE COURT:  I can make -- I'm sorry.

9          (Interpretation.)

10          THE COURT:  I can make that ruling on the papers.  I

11  believe the Fourth Circuit is very clear in its perspective of

12  it.  There's only one case that I think is out there.  It was

13  a Second Circuit case which had very nuanced facts which

14  allowed that type of information to be provided.  So I believe

15  the Fourth Circuit is consistent with what the government

16  suggested for the resolution of that particular motion.

17          (Interpretation.)

18          MR. LEIVA:  Thank you, sir.

19          And one other thing, I think we all filed to be able

20  to bring in electronic equipment to trial.  I was wondering if

21  we could get your Court's decision on that.

22          THE COURT:  Everyone is going to be allowed to bring

23  things to allow them to present their case.  Off the record.

24          (Discussion off the record.)

25          MR. LEIVA:  Thank you, sir.

———————United States v. Contreras, et al.———————
46

1           THE COURT:  My JA has handed the order up just now,

2    so the Court has entered the order.  So you're good.

3           (Interpretation.)

4           MR. VANGELLOW:  Paul Vangellow on behalf of Pablo

5    Barrera.  We adopt and join the motions.

6           THE COURT:  Yes, sir.

7           (Interpretation.)

8           THE COURT:  Okay.  I think that now takes us to

9    the -- I guess not, Mr. Blanchard is on his feet.

10          MR. BLANCHARD:  Dangerous to get up before a judge.

11          Your Honor asked about other motions, and as far as

12   recently filed motions are concerned, I believe there's still

13   one outstanding, which is the government's motion in limine

14   regarding the questioning of government witnesses.

15          (Interpretation.)

16          THE COURT:  Is that the one we got at 1 o'clock in

17   the morning?

18          MR. BLANCHARD:  No.  I believe that was the one

19   regarding the opening statement, Your Honor, but --

20          (Interpretation.)

21          MR. BLANCHARD:  This motion concerns defense

22   questioning of witnesses regarding their location or

23   residence, and with respect to individuals who may be in the

24   witness security program, security measures relating to their

25   protected custody.

United States v. Contreras, et al.

1          (Interpretation.)

2          MR. BLANCHARD:  I don't believe any objections have

3    thus far been filed.

4          THE COURT:  I didn't see any.

5          (Interpretation.)

6          MR. BLANCHARD:  Thank you, Your Honor.

7          THE COURT:  Yes, sir.

8          (Interpretation.)

9          THE COURT:  You need another break?

10         THE INTERPRETER:  I'm good.

11         THE COURT:  Okay, ma'am.  I thank you for the job

12   that you're doing this morning -- or this afternoon.  You've

13   been working hard.  I appreciate you.

14         All right.  Next, we're moving into the issue of

15   excusals.  And I want to make clear -- and I appreciate

16   counsel's hard work on this.

17         (Interpretation.)

18         THE COURT:  And as we all agree, jural excusal is

19   left in the discretion -- sound discretion of the trial court.

20         (Interpretation.)

21         THE COURT:  As a subset of this opportunity for the

22   Court to excuse jurors --

23         (Interpretation.)

24         THE COURT:  -- and the answers provided by members

25   of the venire.

United States v. Contreras, et al.

48

1           (Interpretation.)

2           THE COURT:  -- a subset of exercise in this excusal

3  discretion --

4           (Interpretation.)

5           THE COURT:  -- has allowed the Court to evaluate

6  some individuals who can be excused for cause.

7           (Interpretation.)

8           THE COURT:  The Court has decided or discerned that

9  the responses from the potential venire --

10          (Interpretation.)

11          THE COURT:  -- fall into five categories.

12          (Interpretation.)

13          THE COURT:  Individuals who, all parties agree, meet

14  the standard to stay in the venire --

15          (Interpretation.)

16          THE COURT:  Second, all parties agree that certain

17  individuals should be excused.

18          (Interpretation.)

19          THE COURT:  The government's suggestions for strikes

20  for cause in the excusal process.

21          (Interpretation.)

22          THE COURT:  In sum, for Mr. Zelaya Martinez

23  suggesting that they should be excused for cause.

24          (Interpretation.)

25          THE COURT:  What the Court would like to do is

─────United States v. Contreras, et al.─────

49

1   identify, I believe, the 67 individuals.  And we did have some

2   updates, so your numbers might not be quite like ours.  We

3   were getting them this afternoon.

4                (Interpretation.)

5                THE COURT:  We got some information at 2:30 this

6   afternoon --

7                (Interpretation.)

8                THE COURT:  -- that juror number 295 --

9                (Interpretation.)

10               THE COURT:  -- tested positive for COVID.

11               (Interpretation.)

12               THE COURT:  So that juror will be excused, which

13  might not comport with what your current numbers are.

14               (Interpretation.)

15               THE COURT:  At this point, the Court is going to

16  identify the, approximately, 67 potential jurors who the

17  parties have expressed no reservations about.

18               (Interpretation.)

19               THE COURT:  And here they are in order.

20               (Interpretation.)

21               THE COURT:  And I'm going to refer to these jurors

22  by number throughout the course of the litigation.

23               (Interpretation.)

24               THE COURT:  No. 4, No. 5, No. 15, No. 17, No. 23,

25  No. 26, No. 44, No. 49, No. 56, No. 60, No. 66.  Today we

———United States v. Contreras, et al.———
50

1  received something from No. 68 which didn't indicate any

2  concerns whatsoever.

3           (Interpretation.)

4           THE COURT:  No. 80, No. 88, No. 89, No. 91, No. 101,

5  No. 102, No. 104, No. 108, No. 121.  Today we received

6  information from No. 123, which also was consistent without

7  proposing any issues whatsoever.

8           (Interpretation.)

9           THE COURT:  No. 125, No. 133, No. 136, No. 143,

10  No. 150, No. 151, No. 153, No. 156, No. 160, No. 163, No. 164,

11  No. 165, No. 168, No. 169, No. 174, No. 178, No. 180, No. 182,

12  No. 184, No. 186, No. 188, No. 189, No. 192.

13           (Interpretation.)

14           THE COURT:  This is a little bit unusual, but I'm

15  going to tell you that I'm going to excuse this person anyway,

16  No. 205.

17           (Interpretation.)

18           THE COURT:  And the reason why I'm excusing No. 205

19  is she expressed a reservation about anyone who had been

20  nominated by President Trump.

21           (Interpretation.)

22           THE COURT:  We may have had some difficulty with

23  President Trump, but he did have some fine nominees.  No. 212.

24           (Interpretation.)

25           THE COURT:  No. 221.

United States v. Contreras, et al.

51

1          (Interpretation.)

2          THE COURT:  No. 228.

3          (Interpretation.)

4          THE COURT:  No. 237, No. 238, No. 239, No. 244,

5    No. 247, No. 248, No. 255, No. 262, No. 265, No. 266, No. 267,

6    No. 270, No. 271, No. 279, No. 283, No. 291.

7          (Interpretation.)

8          THE COURT:  No. 293 and No. 300.

9          All right.  We just got another one.  No. 220.

10         (Interpretation.)

11         THE COURT:  All right.  That gives us approximately

12   67 or 68 people that can participate in the venire.

13   Mr. Zelaya requested that ten others be excused.  And the

14   government requested that 15 others be excused.  What I'm

15   inclined to do, Counsel -- I want you to listen closely to

16   this as I say this.  Is to excuse all of those that Mr. Zelaya

17   requested to be excused and all of those that the government

18   requested to be excused.

19         (Interpretation.)

20         THE COURT:  There were -- out of the 300 that we

21   sent out, there were approximately 104 that all requested to

22   be excused.

23         (Interpretation.)

24         THE COURT:  The Court is going to excuse all 104 of

25   those -- or approximately 104.

EASTERN DISTRICT OF VIRGINIA

—————United States v. Contreras, et al.—————

52

```
 1              (Interpretation.)

 2              THE COURT:  There was a lesser category of

 3  individuals who the Court chose to excuse --

 4              (Interpretation.)

 5              THE COURT:  -- based upon certain answers provided

 6  in the questionnaires.

 7              (Interpretation.)

 8              THE COURT:  The Court proposes that we work with the

 9  67 that the Court previously articulated as our venire.

10              (Interpretation.)

11              THE COURT:  Does any counsel have any objection to

12  that?

13              MS. BELLOWS:  I'm fine, Your Honor, but I believe

14  that leaves us with -- if everyone exercises their strikes,

15  because I believe the Court gave the defense 30 and the

16  government 18.

17              THE COURT:  10 and 6.

18              MS. BELLOWS:  What was that?

19              THE COURT:  10 and 6.

20              (Interpretation.)

21              THE COURT:  As I understand, Ms. Bellows -- oh, I'm

22  sorry.

23              (Interpretation.)

24              THE COURT:  As I understand it, and correct me if

25  I'm wrong, and I missed something, no one has requested
```

1   additional strikes.

2           (Interpretation.)

3           MS. BELLOWS:  Your Honor, actually there were

4   motions on this, and it was a long time ago.  So in February

5   of -- February 24th of 2020, so over two years ago, the Court

6   granted the defense motion to enlarge the number of peremptory

7   strikes and granted the government 18 strikes and the

8   defendant, collectively, 30 strikes.

9           (Interpretation.)

10           THE COURT:  Okay.

11           (Interpretation.)

12           THE COURT:  So theoretically --

13           (Interpretation.)

14           THE COURT:  So if everyone exercises every

15   peremptory strike that they have, we're at 48.  30 plus 18,

16   correct?

17           MS. BELLOWS:  Correct.

18           (Interpretation.)

19           THE COURT:  So we would have to then lose 19 for

20   cause?

21           (Interpretation.)

22           MS. BELLOWS:  No.  I think that that would leave us

23   with -- yeah, that would leave us with 19 to pick the jury and

24   the alternates, and I didn't know how many alternates the

25   Court was going to --

United States v. Contreras, et al.

54

1        THE COURT:  I was looking at -- I'm sorry.

2        (Interpretation.)

3        THE COURT:  I was thinking about 16.

4        (Interpretation.)

5        MS. BELLOWS:  Total?

6        THE COURT:  Total, yes.

7        (Interpretation.)

8        MS. BELLOWS:  Okay.  I think that will be fine with

9   the government, Your Honor.

10       THE COURT:  And Ms. Bellows -- and again, I don't

11   know what people are going to do in the context of exercising

12   their strikes, but it's been my experience that many times the

13   government doesn't exercise anywhere near the number of

14   strikes they're entitled to, and sometimes the defense doesn't

15   exercise strikes either.

16       MS. BELLOWS:  Right.

17       (Interpretation.)

18       MS. BELLOWS:  I agree, Your Honor.  And I do just

19   want to make sure that this Court does not allow back

20   striking.

21       THE COURT:  No, no back striking.

22       (Interpretation.)

23       MR. VANGELLOW:  Thank you, Your Honor.  If I

24   understood you correctly, you've identified a lesser group.

25   Would that be a backup group for --

United States v. Contreras, et al.

55

1           THE COURT:  It is a lesser group.  And when I say a

2    "lesser group," there are people that don't -- are not as

3    sterile, for lack of a better way of putting it, as others.

4    Some just don't want to be here.  One person had a -- was it a

5    gentleman, his wife is going to have a baby on July the 28th.

6    I hope we're not doing this on July 28th.  But again, I'm just

7    trying to anticipate any problem that we may have.  And

8    getting rid of those people who are in that sort of void, for

9    lack of a better way of putting it.

10          MR. VANGELLOW:  So they're out of the mix then?

11          THE COURT:  Out of the mix, yes.

12          MR. VANGELLOW:  Okay.  Thank you.

13          THE COURT:  Thank you.

14          Is there --

15          (Interpretation.)

16          THE COURT:  Does any counsel for any of the

17   defendants have any problem with us summoning the 67 or so

18   that I previously articulated?

19          (Interpretation.)

20          MR. VANGELLOW:  Not on behalf of Mr. Barrera, Your

21   Honor.

22          (Interpretation.)

23          MR. TWIST:  Russell Twist, Your Honor.  Not on

24   behalf of Mr. Zelaya Martinez.

25          (Interpretation.)

1          THE COURT:  Okay.  Thank you.

2          MR. STAMBAUGH:  For Mr. Herrera, we don't object.

3          THE COURT:  Thank you, sir.

4          (Interpretation.)

5          MR. LEIVA:  No objection for Elmer Zelaya Martinez,

6    Your Honor.

7          THE COURT:  Thank you, Mr. Leiva.

8          (Interpretation.)

9          THE COURT:  Anybody else?

10         MS. RHODES:  No objection, Your Honor, for

11   Mr. Ramirez.  And I do have a question about procedures for

12   next week.

13         THE COURT:  All right.  Let me --

14         (Interpretation.)

15         THE COURT:  Let me finish cleaning this up before we

16   move onto something else.  Okay?

17         (Interpretation.)

18         Counsel, what we're going to do is the -- I believe

19   the number is 67.  The 67 people that I identified on the

20   record, we'll send an order so you'll be able to reference who

21   we're talking about as far as those 67 are concerned.

22         (Interpretation.)

23         MS. RHODES:  I want to know what the procedure is

24   going to be as far as the jurors being brought in and any

25   further questions.

1          (Interpretation.)

2          THE COURT:  Well, the Court sent out a voir dire

3    that the Court was going to conduct months ago.  Counsel had

4    an opportunity to comment.  So the Court will conduct the voir

5    dire.  If there are any -- I'm sorry.

6          (Interpretation.)

7          THE COURT:  If there is any follow-up that needs to

8    be done, we can conduct that in due course.

9          (Interpretation.)

10          THE COURT:  I will tell you that the use of this

11    questionnaire has streamlined the process considerably.

12          (Interpretation.)

13          THE COURT:  During the height of the pandemic, which

14    I actually was able to conduct two or three jury trials, we

15    were able to get voir dire done by mid-afternoon.

16          (Interpretation.)

17          THE COURT:  That was doing it in two groups.

18          (Interpretation.)

19          THE COURT:  We have done some configuring here in

20    the courtroom and figured out, what it looks like --

21          (Interpretation.)

22          THE COURT:  -- we will be able to see all members of

23    the venire --

24          (Interpretation.)

25          THE COURT:  -- in the gallery.  So we can do them

———United States v. Contreras, et al.———
                                                                58

 1   all at one time.  Obviously, things are subject to change if

 2   we have another spike with the pandemic and if the general

 3   orders change.

 4              (Interpretation.)

 5              THE COURT:  We will have the jury actually in the

 6   box.  That is what we are proposing to do.

 7              (Interpretation.)

 8              THE COURT:  And just so you all can manage your

 9   schedules, there are a couple of variables that I need to talk

10   about.

11              (Interpretation.)

12              THE COURT:  Let me address my variables before

13   you -- go ahead.

14              (Interpretation.)

15              MR. LEIVA:  Your Honor, it sounds like we're going

16   to be here for a little longer.  My client, for the last 20

17   minutes, has told me he needs to take a break and use the

18   restroom, and I think he's at that point where --

19              THE COURT:  Okay.

20              The marshals -- is there a facility right there?

21              THE MARSHALS:  Yes, Your Honor.

22              THE COURT:  Okay.  We will not empty the courtroom.

23   We will just allow Mr. Zelaya Martinez to be able to use the

24   facilities.

25              MR. LEIVA:  Thank you, Your Honor.  I kept telling

─────United States v. Contreras, et al.─────

59

1   him that we were close, but --

2            THE COURT:  We're close, but we'll provide an

3   accommodation.

4            (Interpretation.)

5            (A pause in the proceedings.)

6            THE COURT:  Let the record reflect that Mr. Zelaya

7   Martinez is back in the courtroom after the accommodation.

8            (Interpretation.)

9            THE COURT:  All right.  Counsel, for your

10  information, we are, obviously, going to start May 9th, this

11  Monday.  I have just gotten information from Judge O'Grady's

12  courtroom --

13           (Interpretation.)

14           THE COURT:  -- that closing arguments in the case

15  upstairs started at 1:30.

16           (Interpretation.)

17           THE COURT:  The government has requested two hours

18  for closing arguments in their case.

19           (Interpretation.)

20           THE COURT:  So they should be rounding it up here

21  soon.  I don't know how long the defendants are going to

22  require for their closing.

23           (Interpretation.)

24           THE COURT:  So that case should, reasonably, be

25  before the jury some time tomorrow.

———United States v. Contreras, et al.———

60

1          (Interpretation.)

2          THE COURT:  So there's a very good chance that all

3  lawyers associated with this matter will be available on

4  Monday.

5          (Interpretation.)

6          THE COURT:  If by chance the case is not resolved on

7  Monday, we will --

8          (Interpretation.)

9          THE COURT:  -- we will start on May 11.  That's

10 Wednesday.  And whether it's May 9th or May 11th, the start

11 time will be 9 o'clock.

12          (Interpretation.)

13          THE COURT:  The Court will take a recess from May

14 26th through the Memorial Day holiday.

15          (Interpretation.)

16          THE COURT:  And we will resume the day after the

17 Memorial Day holiday.

18          (Interpretation.)

19          THE COURT:  The plan will be, with a little bit of

20 latitude --

21          (Interpretation.)

22          THE COURT:  -- for us to conclude our days somewhere

23 around 4 o'clock.

24          (Interpretation.)

25          THE COURT:  And as I've stated before, the reason

—————United States v. Contreras, et al.—————

61

1  for that is that some members of the jury have childcare and

2  daycare responsibilities --

3            (Interpretation.)

4            THE COURT:  -- that expire around 6 o'clock.

5            (Interpretation.)

6            THE COURT:  There will be periodic breaks in the

7  schedule to allow, particularly defense counsel --

8            (Interpretation.)

9            THE COURT:  -- to take care of other matters that

10  they may have before various courts in the Commonwealth.

11            (Interpretation.)

12            THE COURT:  For seating requirements, the Court

13  respectfully requests --

14            (Interpretation.)

15            THE COURT:  -- and to allow all defendants to be in

16  the well of the courtroom, that only one lawyer be sitting

17  right beside the defendant, but the Court will give you leeway

18  to consult with your co-counsel.  Quite frankly, there's just

19  not enough room to get 15 lawyers in the well.

20            (Interpretation.)

21            THE COURT:  The way we're going to do examinations

22  is we're going to do a reverse draft.  For those of you who

23  know sports will understand this.  If you're questioning first

24  with a witness, you're second, then you're third, then you're

25  fourth, and then your fifth.  So two becomes three, three

——United States v. Contreras, et al.——
62

1   becomes four, four becomes five.  The reason why we're doing

2   that is because I want to allow all counsel to have the

3   benefit of asking questions either first or last.  So there's

4   going to be a rotational process.

5          Ms. Armentrout is going to keep track of it to make

6   sure that you know when it's your turn.  Obviously, there's

7   going to be some -- yes, ma'am.

8          (Interpretation.)

9          MS. RHODES:  Your Honor, all defense agree that we

10  prefer one person to take the lead on a particular witness.

11  Would that be accommodated?

12         (Interpretation.)

13         THE COURT:  That process works if everyone agrees

14  all the time.  And unless you can assure me or guarantee me

15  that that's going to work all the time, I would prefer to stay

16  with my process.

17         (Interpretation.)

18         MS. RHODES:  Very well.

19         (Interpretation.)

20         THE COURT:  All right.  Thank you, Counsel, for your

21  work on this as we perfect this matter for trial.  As I've

22  said at the beginning, we can only make this work if we're all

23  pointed in the right direction.  Okay.  So we have to make

24  sure that we're working together to make this thing work for

25  everybody and that everybody has a fair opportunity to

——————United States v. Contreras, et al.——————

63

1  represent their interest in the case.

2          Again, we will start on May 9th at 9 o'clock.  I'm

3  giving the jurors off on May 10th, because, due to the length

4  of this trial, I want them to be able to tell their bosses and

5  the like that they're going to be out of pocket for six weeks.

6  I think that's only fair to them.  So we will not have court

7  under any circumstances on May 10th.

8          What I will suggest, from the lawyers' standpoint,

9  depending on how well voir dire goes, be prepared, obviously,

10 for voir dire and potentially opening statements.  Don't worry

11 about any witnesses for the first day that we start.  Okay.

12          (Interpretation.)

13          MR. VANGELLOW:  Paul Vangellow on behalf of

14 Mr. Barrera.  There are some open items, Judge, and with

15 regard to when to address those.  They're not necessarily

16 reducible right at the moment to a motion in limine, but if

17 those -- honestly there's a handful of items.  I know the

18 government has raised the issue of whether or not we --

19          (Interpretation.)

20          MR. VANGELLOW:  There have been notices filed with

21 respect to RICO evidence, opposing notices regarding the same.

22 I know --

23          (Interpretation.)

24          MR. VANGELLOW:  -- there's been an issue raised with

25 respect to reference on cross-examination to polygraph

─────────── United States v. Contreras, et al. ───────────

64

1   examination.

2           (Interpretation.)

3           THE COURT:  Let me tell you this --

4           (Interpretation.)

5           THE COURT:  Mr. Vangellow, let me tell you this,

6   we're going to do a triage of the file because things come in

7   all the time.  We're trying, as best we can, to keep up with

8   the things that are filed.  So what we're going to do, over

9   the next couple of days, is triage the entire case file and

10  figure out what we need to provide a ruling on.

11          (Interpretation.)

12          MR. VANGELLOW:  Very well.  Your Honor, there is one

13  critical issue, not only with respect to my client, but with

14  respect to the other defendants as well.  And it relates to

15  the very clear parameters of your order respecting certain

16  evidence of the decedents in this case, and hopefully not

17  incur in this Court's wrath, but it's important for my client

18  to understand exactly the scope of your ruling with respect to

19  what we would submit to the Court is evidence of, for example,

20  Sergio Triminio's status as a coconspirator in the events that

21  led to the death of Edvin Mendez.

22          Also, evidence that he engaged in two different

23  conspiracies to commit murder.  I think those are --

24  understanding -- if I do understand correctly the scope of

25  your order that addressed those preliminarily in the context

———United States v. Contreras, et al.———

65

 1   of either Rule 404(b) or 404 evidence generally.  The

 2   government has raised a couple of notices saying that they're

 3   -- I'm sorry --

 4              (Interpretation.)

 5              MR. VANGELLOW:  I'm more than happy to wait for the

 6   Court's triage, as you expressed it, and see whether it

 7   addresses some of these open items or I can raise them.

 8              THE COURT:  Let's --

 9              (Interpretation.)

10              THE COURT:  Let us do our triage as best we can.

11   Every time we think we're caught up with everything that's

12   been filed somebody files something else.  As you can tell, we

13   do a lot of research to make sure that we can get these

14   matters resolved as proficiently and correctly as possible.

15   So we're working hard over here.

16              MR. VANGELLOW:  I know you are, Judge.

17              (Interpretation.)

18              MR. VANGELLOW:  Can I add -- I'm sorry, can I assume

19   that exceptions will be noted automatically?

20              THE COURT:  Anything that the Court -- I'm sorry.

21              (Interpretation.)

22              THE COURT:  Anything that the Court rules against,

23   either your clients or the government, particularly in your

24   case, the exception is noted.  As I understand the case law,

25   you don't have to note exceptions anymore.  You just have to

———United States v. Contreras, et al.———

66

1  make sure that when the matter comes up, you preserve your

2  objection.  I think that's the way we're doing things now.

3          (Interpretation.)

4          MR. VANGELLOW:  And finally, Judge, I think the case

5  is recently where opposing counsel has noted an objection

6  without giving a basis for it and by the time that counsel

7  walked up to the bench to get it resolved, perhaps, they came

8  up with a reason for it.  I don't know how this Court works in

9  terms of noting objections and the grounds for objections at

10 the time it is made.

11         THE COURT:  And the Court -- I'm sorry.

12         (Interpretation.)

13         THE COURT:  In the Court's view, there are 13

14 general objections which resolve pretty much anything that is

15 deemed in controversy.  Obviously --

16         (Interpretation.)

17         THE COURT:  Obviously, if you want to propose a

18 Federal Rules of Evidence objection, which is more particular,

19 the Court expects that they not be speaking objections, that

20 the basis for the objection is cited, the rule is cited, and

21 then let the Court resolve what needs to be resolved.

22         MR. VANGELLOW:  Thank you, Your Honor.

23         (Interpretation.)

24         THE COURT:  And finally, each one of the defendants

25 has either two or three lawyers, and the rule that this Court

—————United States v. Contreras, et al.—————

67

1  is going to impose is that the lawyer responsible for the

2  examination is the lawyer that is in the position to make the

3  objection.  So, in other words, I don't want any team

4  objections.  Whomever is responsible for the witness is

5  responsible for the objection.  Obviously, I'm not going to

6  get in the way of you consulting with your counsel or your

7  co-counsel, but one person responsible for the witness is the

8  person who needs to be objecting.  Same thing on the

9  government's side.

10            (Interpretation.)

11            THE COURT:  And the signal for wanting to make sure

12  that there's nothing else to be resolved with your co-counsel,

13  if you could simply say "Court's indulgence," you'll get that

14  all the time.

15            (Interpretation.)

16            MR. TWIST:  Russell Twist, Your Honor.  In regard to

17  clothing for the defendants, how does this Court want us to

18  proceed to get clothing to the --

19            THE COURT:  Work with the United States Marshals

20  Service.

21            (Interpretation.)

22            THE COURT:  And I would suggest that you probably

23  want to bring in any clothing that you want for your clients

24  to wear no later than Friday.  In other words, try not to

25  bring them in Monday morning.

────────United States v. Contreras, et al.────────

68

1          (Interpretation.)

2          THE COURT:  Yes, Ms. Rhodes.  Go ahead.

3          MS. RHODES:  In light of the fact that Mr. Brodnax

4   and counsel is still in trial today, and maybe part of

5   tomorrow at least, I would ask that we be able to start

6   openings on Wednesday morning.  I have not had a chance to

7   even speak with Mr. Brodnax or Easley.  So I think that will

8   be very helpful.

9          (Interpretation.)

10          THE COURT:  I appreciate your concern, ma'am, but I

11   believe this Court has granted a whole lot of accommodation to

12   everything else that's going on in this courthouse so we're

13   going to stick to our schedule.

14          (Interpretation.)

15          THE COURT:  All right.

16          MS. BELLOWS:  Your Honor, just two things.  The

17   first is, I think as the Court is aware, in the past I've

18   prepared a spreadsheet that I've sent to defense counsel with

19   what I thought were pending motions and resolved motions.  I

20   only see a couple that I believe are pending and I was

21   wondering if the Court would like for us to -- for the

22   government to send it to the defense and see if there's

23   anything else to add and then when we're done with that send

24   it to chambers.

25          THE COURT:  Mr. Golden, yes.

United States v. Contreras, et al.

69

1            (Interpretation.)

2            THE COURT:  That is acceptable.  Thank you.

3            MS. BELLOWS:  Thank you, Your Honor.  And then the

4    second thing is, as the Court is aware under the scheduling

5    order, there were certain requirements the government had to

6    file Jencks, and Bruton, and produce disclosures.  And all of

7    that.  Yesterday was the deadline for -- sorry.

8            (Interpretation.)

9            THE COURT:  She lost you at "Jencks."

10           MS. BELLOWS:  Okay.  That pursuant to the Court's

11   scheduling order, we have had a lot of deadlines for the

12   government to produce Jencks.  That's J-e-n-c-k-s.  And

13   Giglio, G-i-g-i- -- oh, no, I said Bruton.  Sorry.  But also

14   Giglio, G-i-g-l-i-o and Bruton materials.

15           (Interpretation.)

16           MS. BELLOWS:  Yesterday was the deadline for the

17   defense to produce Rule 26.2 statements.  And I -- no one in

18   the government received any such statements.  And I just want

19   to confirm with the parties here and before the Court that

20   there are no such statements as opposed to that that deadline

21   was just forgotten.

22           (Interpretation.)

23           THE COURT:  Mr. Leiva, any 26.2 materials?

24           MR. LEIVA:  No, Your Honor.

25           THE COURT:  Mr. Stambaugh?

United States v. Contreras, et al.

70

1          MR. STAMBAUGH:  No, Your Honor.

2          MR. VANGELLOW:  No, Your Honor.

3          (Interpretation.)

4          MR. TWIST:  No, Your Honor.

5          MS. RHODES:  No, Your Honor.

6          (Interpretation.)

7          THE COURT:  Very good.  The record is clean.

8          All right.  Counsel, thank you for your

9    participation today.

10         Let me go around the room.

11         MR. STAMBAUGH:  One housekeeping -- do you know when

12   the determination will be made whether or not it's going to be

13   the 9th or the 11th in terms of the start.

14         (Interpretation.)

15         THE COURT:  That's one thing I --

16         (Interpretation.)

17         THE COURT:  That's one thing that I don't have any

18   control over.  That's Judge O'Grady.  But I will tell you

19   this, Judge O'Grady and I talk on the phone more than we need

20   to about how we can both conduct our trials proficiently and

21   efficiently.

22         (Interpretation.)

23         THE COURT:  And the courthouse is a gossip chamber,

24   and I'm sure when that case resolves, everybody will know.

25         (Interpretation.)

─────United States v. Contreras, et al.─────

71

1          THE COURT:  Mr. Contreras?  Present?

2          DEFENDANT CONTRERAS:  Yes.

3          THE COURT:  Okay.  Your lawyer is present.  Mr.

4    Stambaugh did a good job.

5          Mr. Martinez, are you satisfied with the services of

6    your counsel?  Mr. Elmer Zelaya Martinez.

7          DEFENDANT E. MARTINEZ:  Yes, sir.

8          THE COURT:  Thank you, sir.

9          Mr. Henry Zelaya Martinez, are you satisfied with

10   the services of your lawyer?

11         DEFENDANT H. MARTINEZ:  Yes.

12         THE COURT:  Mr. Pablo Miguel Velasco Barrera, are

13   you satisfied with the services of your lawyer?

14         DEFENDANT BARRERA:  Yes.

15         THE COURT:  Thank you, sir.

16         Mr. Duglas Ramirez Ferrera, are you satisfied with

17   the services of your counsel?

18         DEFENDANT FERRERA:  Yes.

19         THE COURT:  Very good.  Thank you, gentlemen.  We'll

20   see you on Monday morning, 9 o'clock.

21

22              **(Proceedings adjourned at 3:34 p.m.)**

23

24

25

CERTIFICATE OF REPORTER

        I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Jury Pretrial Motions in the case of the **UNITED STATES OF AMERICA versus RONALD HERRERA CONTRERAS**, et al. Criminal Action No.: 1:18-cr-123, in said court on the 4th day of May, 2022.

        I further certify that the foregoing 72 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

        In witness whereof, I have hereto subscribed my name, this May 18, 2023.


_____
Tonia M. Harris, RPR
Official Court Reporter

72