UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

----------------------------------x

UNITED STATES OF AMERICA, : Criminal Action No.: 1:18-cr-123

versus

ELMER ZELAYA MARTINEZ,
RONALD HERRERA CONTRERAS, : May 9, 2022
HENRY ZELAYA MARTINEZ,
PABLO MIGUEL VELASCO BARRERA, : VOIR DIRE
DUGLAS RAMIREZ FERRERA,

Defendants.

----------------------------------x

TRANSCRIPT OF JURY TRIAL - VOIR DIRE
BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
REBECA BELLOWS, AUSA
ALEXANDER BLANCHARD, AUSA
CRISTINA C. STAM, AUSA
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

FOR THE DEFENDANT: (E. Martinez)
ROBERT JENKINS, ESQ.
Bynum & Jenkins PLLC
1010 Cameron Street
Alexandria, VA 22314

MANUEL LEIVA, ESQ.
The Leiva Law Firm PLC
3955 Chain Bridge Rd
2nd Floor
Fairfax, VA 22030

FOR THE DEFENDANT: (Contreras)
LANA MANITTA, ESQ.
The Law Office of Lana Manitta, PLLC
140B Purcellville Gateway Drive
#511
Purcellville, VA 20132

JESSE WINOGRAD, ESQ.
The Law Office of Jesse Winograd PLLC

5335 Wisconsin Ave., N.W.
Suite 440 Box 4035
Washington, DC 20015

GREGORY E. STAMBAUGH, ESQ.
Brown & Stambaugh
9100 Church St
Suite 103
Manassas, VA 20110-5413

FOR THE DEFENDANT: (H. Martinez)

DAVID KIYONAGA, ESQ.
510 King St
Suite 400
Alexandria, VA 22314

CHARLES TWIST, ESQ.
Charles Russell Twist PLC
2111 Wilson Boulevard
Suite 700
Arlington, VA 22201

FOR THE DEFENDANT: (Barrera)

PAUL VANGELLOW, ESQ.
Paul P. Vangellow, PC
6109A Arlington Blvd
Falls Church, VA 22044

ANDREW STEWART, ESQ.
Dennis Stewart & Krischer PLLC
2007 15th Street N
Suite 201
Arlington, VA 22201

FOR THE DEFENDANT: (Ferrera)

PLEASANT BRODNAX, ESQ.
Law Office of Pleasant S. Brodnax
1701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

DARWYN EASLEY, ESQ.
Easley Law Firm
10555 Main St
Suite 450
Fairfax, VA 22030

LAURA RHODES, ESQ.
Law Offices of Laura Rhodes LLC
200-A Monroe St #305
Rockville, MD 20850

OFFICIAL COURT REPORTER: TONIA M. HARRIS, RPR
U.S. District Court
401 Courthouse Square
Tenth Floor
Alexandria, VA 22314



Tonia M. Harris OCR-USDC/EDVA (703)646-1438

(Previous testimony was held, but not included herein. *Voir dire can be inserted in the 5/9/22, Volume 2, transcript at page 18, line 2.*)

(Jury venire present.)

THE DEPUTY CLERK: United States of America versus Elmer Zelaya Martinez, Ronald Herrera Contreras, Henry Zelaya Martinez, Pablo Miguel Velasco Barrera, Duglas Ramirez Ferrera. This case comes on for trial by jury.

Counsel, please note your appearances for the record.

MS. BELLOWS: Good morning, again, Your Honor. Rebeca Bellows, Alexander Blanchard, Cristina Stam, Detective Ray Betts, and LaToya Horsford on behalf of the United States.

THE COURT: Good morning.

MS. BELLOWS: Good morning.

MR. LEIVA: Good morning, Your Honor. Manuel Leiva and Robert Jenkins on behalf of Elmer Zelaya Martinez.

THE COURT: Good morning, sir.

MS. MANITTA: Good morning, Your Honor. Lana Manitta and Jesse Winograd on behalf of Ronald Herrera Contreras.

THE COURT: Good morning, ma'am.

MS. RHODES: Good morning, Your Honor. Laura Kelsey Rhodes on behalf of Duglas Ramirez Ferrera, along with Mr. Pleasant Brodnax and Darwyn Easley.

THE COURT: Good morning, gentlemen. Good morning, ma'am.

MR. VANGELLOW: Good morning, Your Honor. Paul Vangellow, Andrew Stewart, and Addi Gamliel on behalf of Mr. Pablo Miguel Velasco Berrera.

THE COURT: Good morning, sir.

MR. KIYONAGA: Good morning, Your Honor. David Kiyonaga and Russell Twist on behalf of Henry Zelaya Martinez.

THE COURT: Good morning, sir.

Good morning, ladies and gentlemen of the venire. It's okay to say good morning back.

THE JURY VENIRE: Good morning.

THE COURT: I see one gentleman here hasn't given up the idea that we're still the Washington Redskins and not the Washington --

(Venire laughter.)

THE COURT: I compliment you on that, sir. As a long suffering fan of that franchise, I'm glad to see that there's still people who would keep hope alive and one day they would be a competitive football team.

My name is Rossie Alston, Jr. and I'll be the judge presiding over this case. As you might have heard from my deputy clerk, the style of the case is United States of America versus Elmer Zelaya Martinez, Ronald Herrera Contreras, Henry Zelaya Martinez, Pablo Miguel Velasco

Berrera, and Duglas Ramirez Ferrera.

Those are the five individuals who are before this Court. You've also heard the lawyers introduce themselves to you as we started the process. And I would like to acquaint everybody with some of the other participants in the courtroom.

The young lady in the very front with the green outfit is Ms. Tonia Harris, she's the court reporter, and she's responsible for making sure that everything that we say is transcribed or preserved. The lady right in front of me is my courtroom deputy, Ms. Trish Armentrout, she's the courtroom deputy. She's responsible for making sure that all of the paperwork and the administrative matters are taken care of. You also met Ms. Tinsley, my courtroom security officer and she is your liaison between you and the Court. A very valued part of our team. The young lady with the darker hair, over to my left, is Ms. Meggie Holson, she is my judicial assistant. She has been with me for 17 years and claims that she is my third daughter. She also is a very important part of the court.

The two gentlemen sitting over to the left, the one with the darker hair is Mr. Marlan Golden, he's my senior law clerk. He's a young lawyer. And Blake Delaplane, my other law clerk, is seated beside him. They are responsible for helping me make sure that I do the things the right way.

When you become a judge, they tell you that the most important thing that you can do is to hire a law clerk who is a whole lot smarter than you are, and I've managed to accomplish that during my 22 years on the bench. So I'm very thankful for those gentlemen too.

The two young ladies over to my far left are court translators or court interpreters. Some of the individuals before the court do not enjoy English as a first language and so what they will be doing is simultaneously saying to them, through the headphones that they're wearing what we're saying in our native language, English. Once again, very important participants and advocates in this court.

First and most importantly, I want to thank you for taking this opportunity to serve as jurors. Nothing you do as an American citizen is any more important than jury service. Together, with voting, it is one of the two cardinal duties each of us has as an American citizen and it is important that you satisfy and fulfill those duties. I know there's inconvenience associated with jury duty and it's not easy. But it is a vitally important role that you'll be playing.

As we go through the process, we're going to thin out the courtroom considerably so we won't be on top of one another. So rest assured that we're going to take all the steps necessary to ensure your safety.

We're going to proceed as follows: Before the trial

begins, there will be jury selection. After jury selection concludes, the trial will begin with opening statements and then you will hear testimony from witnesses.

We lawyers have a fancy term for selecting a jury. It's called "voir dire." It's a French term that essentially translates "searching for truth." In this regard, I'm going to give you a brief description of the case and the deputy clerk, Ms. Armentrout, will once again call the roll and then I'm going to ask you as a group a number of questions. If you have an affirmative answer, I'll ask that you raise your hands. If you have a negative answer, you don't need to raise your hand. If you have an affirmative answer, then when you're recognized please stand, give your number, and then I will have you answer the question and ask, if necessary, any follow-up questions. These will be easy to answer questions and you may answer these questions from where you are now sitting. Again, when you're called you may stand, give your juror number, and your answer to the question.

Now, once I finish a number of those general questions, I will then ask a more specific question. You may be asked to come forward one at a time so that you may give your answer in the relative privacy here at the bench, including counsel. And I do that to preserve your privacy as to any information you may have to disclose. And I also do it to avoid any information that you have that may disqualify

you from -- from other jurors. And I'll tell you about that when that comes.

This case is brought by the United States Government against Elmer Zelaya Martinez, Mr. Ronald Herrera Contreras, Mr. Henry Zelaya Martinez, Mr. Pablo Miguel Velasco Barrera, and Mr. Duglas Ramirez Ferrera. The government has alleged the defendants committed the following offenses: conspiracy to commit kidnapping and murder in aid of racketeering activity, conspiracy to kidnap, murder in aid of racketeering activity, and kidnapping resulting in death. Each defendant is charged with two counts of these offenses. Each defendant denies these allegations and unequivocally maintains his innocence.

Ms. Armentrout will now begin the voir dire process by calling the roll. When your number is called, please stand and remain standing until the next juror number is called. For instance, if we call number one, number one would please stand, be recognized, and then sit down. We'll call number two and we'll proceed in that order. And when we do that, of course, is to ensure that all the people who are supposed to be here are in fact here and make to us lawyers and judges to match a juror number to a face. I encourage counsel to take copious notes as we begin this process with each juror.

Ladies and gentlemen, as you noticed we're a little bit crowded here and the lawyers mean no disrespect when they

have their backs to you. We're trying to work within the confined space that we have. So please do not suggest that the lawyers are being disrespectful if they have their backs to you or if they're turning and taking notes. They are doing the best that they can. All of these lawyers are well-respected by the Court and I appreciate what they do, and they're just doing the best job they can under these circumstances.

Ms. Armentrout, will you please call the roll using numbers.

THE DEPUTY CLERK: Yes, Your Honor.

Juror No. 1.

Can you say "present" or "here."

THE COURT: Say "present" or "here."

THE DEPUTY CLERK: For the record.

THE JUROR: Present.

THE COURT: Thank you.

THE DEPUTY CLERK: Juror No. 2.

THE COURT: Say "present," sir.

THE JUROR: Present.

THE COURT: Thank you.

THE DEPUTY CLERK: Juror No. 3.

THE JUROR: Present.

THE COURT: Thank you. Juror No. 4.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 5.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 6.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 7.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 8.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 9.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 10.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 11.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 12.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 13.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 14.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 15.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 16.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 17.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 18.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 19.

THE JUROR: Here.

THE DEPUTY CLERK: Juror No. 20.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 21.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 22.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 23.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 24.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 25.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 26.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 27.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 28.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 29.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 30.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 31.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 32.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 33.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 34.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 35.
THE JUROR: Hola. Here.
THE DEPUTY CLERK: Juror No. 36.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 37.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 38.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 39.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 40.
THE JUROR: Present.
THE DEPUTY CLERK: Juror No. 41.
THE JUROR: Here.
THE DEPUTY CLERK: Juror No. 42.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 43.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 44.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 45.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 46.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 47.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 48.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 49.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 50.

THE JUROR: Here.

THE DEPUTY CLERK: Juror No. 51.

THE JUROR: Here, ma'am.

THE DEPUTY CLERK: Juror No. 52.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 53.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 54.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 55.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 56.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 57.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 58.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 60.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 61.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 62.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 63.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 64.

THE JUROR: Present.

THE DEPUTY CLERK: Juror No. 65.

THE JUROR: Present.

THE DEPUTY CLERK: And Juror No. 66.

THE JUROR: Present.

THE DEPUTY CLERK: Ladies and gentlemen of the jury, would you please stand, raise your right hands, and respond after the oath.

(Jury panel sworn.)

THE DEPUTY CLERK: Please be seated.

THE COURT: All members of the venire accepted the oath. Do we all agree?

MS. BELLOWS: Yes, Your Honor.

(All lawyers responded in the affirmative.)

THE COURT: Ladies and gentlemen of the jury venire, I want to tell you a few little things that are going to happen as the case goes on. So again, please do not in any way think that the lawyers are disrespecting you. A lot of the lawyers are seated over here to the left and because of the limited space we have, there's no use of movement as we go through the process. So all the individuals who are before the Court can have the opportunity of their full representation. So please don't get distracted by any movements that you may see. We're just trying to do the best we can under the circumstances.

I'm going to ask you some questions and most of you are going to agree, form the answers to the questions, and please remember that you can simply answer "yes," but most of the questions are going to be fine. If you have a "no" response, simply raise your hand and we'll proceed as we need to.

Again, thank you for being here. I appreciate, as all the people who a part of this litigation, the time and

attention that you took in answering the questionnaire that was sent out to you. We sent out over 300 questionnaires trying to find the appropriate people to sit on this case. And this group was brought before the Court, as those who did their due diligence and answered the questions as best as they could and thus putting us in a position to actually start this process this morning. So let me thank you for your candor and for your time and attention to answering the questions that were sent out.

The first question: Is English your first language, if so answer, "yes."

(All jurors responded in the affirmative.)

THE COURT: Does anyone have a negative answer?

Okay. If you could stand if you have a negative answer and provide your number. Not your name, your number. And I'm going to ask you a follow-up question.

Do you have any problems or difficulties reading, speaking, or understanding English? Those people who stood.

THE JURORS: No.

THE COURT: Ma'am, yes.

THE JUROR: Yes.

THE COURT: What's your juror number?

THE JUROR: 1.

THE COURT: Okay. What is your first language, ma'am?

THE JUROR: Dari.

THE COURT: Say it again.

THE JUROR: Dari. It's Farsi.

THE COURT: Okay. It's an Arabic language?

THE JUROR: No, it's Farsi.

THE COURT: Farsi, okay.

Are you having any difficulty understanding me and the questions that I have asked up to this point?

THE JUROR: No.

THE COURT: Are you comfortable right now having this conversation with the Court?

THE JUROR: Yes. But I have a question to ask the Court.

THE COURT: Okay. I may stop you after as you ask the question, but feel free to go ahead.

THE JUROR: I'm not sure if this is the right time to ask, but I just want --

THE COURT: Stop. All right. Let's bring her forward. Counsel, does everyone want to come up or are you comfortable with just some of the lawyers coming up.

Ms. Manitta, why don't you take the lead on this.

(Side bar.)

THE COURT: All right. The interpreters are going to be over translating the device and tell the defendants what's going on up here.

Ma'am, come on up. Come on up, ma'am.

You're Juror No. 1. You said that you wanted to say something. What did you want to say?

THE JUROR: I just want to be -- I want to ask -- I don't know if this is the right time to ask, but I want to be excused because I have minor kids.

THE COURT: We all have circumstances that we're confronted with that interfere with our personal lives. And I would venture to say that 95 percent of the people in here have children. I have grandchildren. My children are older. But just because of that that would not be a reason to excuse you from service, particularly with the way that you answered, candidly, the question there.

And I understand and we're going to take breaks from time to time and you're going to be able to have some time. It's not going to be a situation where we're going to sequester you or put you in a hotel or anything like that, but that would not be a sufficient basis to excuse you.

THE JUROR: Okay. And also, my English is not very advanced. So I just want to --

THE COURT: If I could ask you, how long have you been in this country?

THE JUROR: Oh, about 25.

THE COURT: 25 years. And if I could ask, do you work?

THE JUROR: I used to, but now I'm at home because my husband is full time working and I have a young kid.

THE COURT: Where did you work?

THE JUROR: I used to work at the foreign currency. And I worked at the --

THE COURT: Foreign currency exchange?

THE JUROR: Yes. And I worked at the Fairfax County Tax Department too.

THE COURT: And in those capacities, was English the conversation or the language that was used as part of your work?

THE JUROR: Yes, but I know -- like, I can communicate and I can understand but not really advanced.

THE COURT: All right. Okay. Thank you for your candor.

THE JUROR: You're welcome, sir. I try to help.

MR. VANGELLOW: I have a different issue.

THE COURT: We'll let her step back. We're not going to have a discussion with her standing there.

MR. VANGELLOW: I understand.

THE COURT: If you can step back, ma'am.

(Juror excused.)

MR. VANGELLOW: So during the preliminaries, there was a gentleman sitting on the right side of the gallery. He's now in the middle section, last row, third from the left.

He's not a juror. I didn't know whether jury selection --

THE COURT: I noticed him. Did he have a piece --

MR. VANGELLOW: Piece of paper. I don't know if he's a reporter. I don't know whether it was closed.

THE COURT: He was in the courtroom when we started.

MR. VANGELLOW: Right. Yes, sir.

THE COURT: And I had Ms. Armentrout keep an eye on him because I saw the same thing that you saw. So what I'm going to do is I'm just going to make sure that he moves away and gets out of --

MR. VANGELLOW: Okay. I just wanted to bring it to the Court's attention.

THE COURT: Yeah, I saw the same thing that you saw. Okay. There's a gentleman in a white shirt and glasses and he's sitting in the back, if we can go ahead and move him over to the section to the right. All right.

(Open court.)

MS. BELLOWS: Your Honor, I don't think the correct person was looking.

THE COURT: Is the gentleman that was in the courtroom when the matter first started this morning, I believe you had on a white shirt and glasses and notepad. If you could please stand.

MR. BRODNAX: Your Honor, I think he left.

THE COURT: All right. Thank you.

MS. RHODES: I think the note indicated somebody -- somebody different. Do you have that?

THE COURT: That's who I was talking about. The gentleman in the back row with a suit on, apparently a pink tie and a blue mask. Is that gentleman still on the front row?

UNIDENTIFIED SPEAKER: Sure.

THE COURT: All right, sir. Are you a part of the venire or a part of the potential jurors?

UNIDENTIFIED SPEAKER: Sir, Your Honor, I am, but I did not get assigned a number. I may have missed --

THE COURT: Come approach. Counsel, do you have any problem with just me identifying his name and then I'll let you know.

MR. WINOGRAD: No objection.

(Side bar.)

THE COURT: Mr. Downs.

THE DEPUTY CLERK: He wasn't one of the ones to report in.

Did you call the recording?

THE JUROR: I actually came to this courtroom before 9:00. I didn't know that I needed to go to the third floor.

THE DEPUTY CLERK: He wasn't a part of the venire.

THE JUROR: Thank you so much.

THE DEPUTY CLERK: If you can check in at the

clerk's office to see when your next reporting date is.

THE JUROR: Okay.

(Open court.)

THE COURT: This gentleman went above and beyond. He wasn't supposed to report today and he did. So that's a little bit unusual.

So we're going to go back to the gentlemen that are still standing. Gentleman in the white shirt or grey shirt, can you provide your number, please?

THE JUROR: No. 2.

THE COURT: No. 2. Sir, you said English is not your first English language?

THE JUROR: No.

THE COURT: Are you having any difficulty understanding the questions that I've asked this morning or the conversations that I've had this morning?

THE JUROR: No.

THE COURT: Thank you, sir.

The gentleman in the darker polo.

THE JUROR: 58.

THE COURT: All right, sir. Did you have any difficulty understanding the conversations or what was going on in court here this morning?

THE JUROR: No.

THE COURT: Thank you, sir. Gentleman over here.

THE JUROR: 52.

THE COURT: Yes, sir. Have you had any difficulty understanding the conversations or what's going on in court here this morning?

THE JUROR: No. Basically I barely hear you, but, no, I don't have any problem understanding you.

THE COURT: Okay, sir. Thank you. Another person standing.

THE JUROR: No. 41.

THE COURT: Okay. No. 41. Ma'am, have you had any difficulty understanding what was happening here this morning?

THE JUROR: No.

THE COURT: Thank you, ma'am.

Next question: Do any of you have any difficulty reading, speaking --

THE DEPUTY CLERK: One more.

THE COURT: One more. Number, please.

THE JUROR: 66.

THE COURT: Okay. Have you had any difficulty understanding the conversations going on this morning?

THE JUROR: No.

THE COURT: Thank you, ma'am.

I think I've covered the second question, but I'm going to ask it again.

Do any of you have any difficulty reading, speaking,

or understanding English? I think I covered that with everyone?

Do any of the people that are here in the venire or the people who are making up the potential jury read, write, or speak Spanish, if so, raise your hand.

(Hands raised.)

THE COURT: We're going to go around the room again. If you could stand. Once again, provide your juror number and we'll go around the room.

THE JUROR: No. 2.

THE COURT: Okay. Sir, what is your level of proficiency, in other words, understanding Spanish?

THE JUROR: I understand Spanish pretty well. I do not write it that well, but I understand.

THE COURT: Very good, sir. Thank you. Next gentleman beside you. Number.

THE JUROR: 53.

THE COURT: Yes, sir.

THE JUROR: It's pretty limited. I haven't really used it since probably high school, but I did take four years in high school and in college.

THE COURT: Very good, sir. A couple of other people after you said --

THE JUROR: I speak it, I can read it. Not very well, though.

THE DEPUTY CLERK: What number?

THE JUROR: Oh, I'm sorry. 16.

THE COURT: Thank you, ma'am. Another gentleman who popped up.

THE JUROR: 58.

THE COURT: Yes, sir.

THE JUROR: I studied abroad in Barcelona and I spoke it back then, but it was six years ago.

THE COURT: Very good, sir. Thank you. Juror number, please.

THE JUROR: 56, Your Honor. Conversational and board level reading.

THE COURT: Very good, sir. Thank you. The Court appreciates everyone giving these answers and listening to the questions that are being asked and providing specific circumstances. So we really appreciate that. After you answered the question, you may have a seat.

THE JUROR: 18. Basic. I took classes in college.

THE COURT: Thank you, sir.

THE JUROR: I'm not fluent, but I can speak and write it, and I'm okay with reading.

THE COURT: Number, please.

THE JUROR: 26. Sorry.

THE COURT: Thank you.

THE JUROR: 48. Very basic. I took six years in

high school and college.

THE COURT: Very good. Thank you, ma'am.

THE JUROR: 63. Very basic. I can understand if people speak slowly, but I can speak only slowly myself.

THE COURT: Very good, ma'am. Thank you.

THE JUROR: No. 7. I took three years in middle and high school. I can pick up some words or phrases but not much past that.

THE COURT: Very good.

THE JUROR: No. 39. And I have an elementary level of Spanish.

THE COURT: Very good, sir. Thank you.

THE JUROR: No. 8. Basic level of reading, writing, and speaking.

THE COURT: Thank you.

THE JUROR: 22. I took four years of classes and then I use it very basically for preschoolers with speech therapy.

THE COURT: Thank you, ma'am.

THE JUROR: 17. And I -- my family is Mexican and I speak, read, write, understand Spanish probably to a professional level.

THE COURT: Okay. Thank you, ma'am.

THE JUROR: 57. I used to have professional proficiency about eight years ago, but I'm rusty. These days

I read at probably at intermediate level.

COURT REPORTER: Your Honor.

THE COURT: Can you speak up more into the mic.

THE JUROR: 57. I used to have professional proficiency. I had a job where I only spoke Spanish, but I'm pretty rusty these days. And probably read at intermediate and speak at a basic level.

THE COURT: Thank you.

THE JUROR: 66. And Spanish is my first --

THE COURT: Can you speak up, ma'am, into the mic?

THE JUROR: 66. And Spanish is my first language.

THE COURT: Okay. Thank you, ma'am.

This goes for everyone.

In this case you may hear testimony through Spanish language interpreters and you may receive evidence and audio recordings that have been transcribed in Spanish and translated into English by a court certified interpreter. You may also receive in evidence written materials that an interpreter had translated from Spanish into English. Would you have any difficulty deferring to the interpretation provided by an interpreter, even if you can understand the Spanish language testimony, recordings, and/or documents without the interpreter's assistance. If so, answer, "yes." Everyone?

(All jurors respond in the affirmative.)

THE COURT: Does anyone have any problem with that?

(All jurors responded in the negative.)

THE COURT: Thank you, ladies and gentlemen. Do any of you have any problems with your hearing or your eyesight that might make it difficult to hear or see the evidence presented in this case?

(Some jurors responded in the negative.)

THE COURT: We have a couple of hands.

Sir, if you could stand up and once again give your number and tell me --

THE JUROR: No. 19. I'm kind of hard of hearing. I can hear. I can get about 60 percent of it. If you got a mask on, it goes down from there.

THE COURT: Have you had any difficulty understanding me as we've gone through this process?

THE JUROR: Most of it I can hear.

THE COURT: During the course of the trial, people are going to be speaking from the witness box and it has volume that can be adjusted. I have a microphone here, but I think it's more personal if I stand up and have a conversation with the people. And so, you'll probably be able to hear me better once we get started. And you'll, obviously, be able to hear the lawyers and the witnesses with the audio equipment that we have.

With that accommodation, do you think that you would

be able to serve as a juror?

THE JUROR: I think that would help, yes, definitely.

THE COURT: All right, sir. Thank you.

THE JUROR: Thank you.

THE JUROR: Sitting from here I can't hear you.

THE COURT: You're fine.

THE JUROR: Sitting from here basically --

THE COURT: Number, please.

THE JUROR: Oh, I'm sorry. 52.

THE COURT: All right, sir. Go ahead.

THE JUROR: And when I'm sitting here, I can hear you, but I have to really focus.

THE COURT: The good news, sir, that if you are selected as a juror, you're going to get a prime spot right here. And everybody will be able to hear very, very well. So where you're sitting now will not be where you're sitting if you're called to serve on this jury.

THE JUROR: I have to focus too much. So I have to focus too much to see what he's saying basically.

THE COURT: Okay. We'll work with you, sir.

THE JUROR: All right. Thank you.

THE COURT: Thank you, sir.

THE JUROR: No. 14. I have some -- I have a moderate hearing problem. I understanding maybe 70 percent of

what you're saying, Judge.

THE COURT: Okay, sir. Let me do a little test. If I were to speak from here, would that help you?

THE JUROR: Very much.

THE COURT: All right, sir.

THE JUROR: 64, Your Honor. I do have a high frequency hearing loss, but with the microphone I understand you fine.

THE COURT: One of the lawyers in the case has a similar circumstance and he has been able to perform very adequately as we prepared this case for trial.

THE JUROR: I don't think that I'll have a problem. I'll have a monitor.

THE COURT: Thank you, sir.

THE JUROR: Thank you.

THE COURT: Ladies and gentlemen, you've had the opportunity to hear the names of some of the parties, if not all the parties, that are participating in this action. And I'm going to ask you a general question:

Do you know or recognize any of the parties or attorneys or witnesses in this case?

(All jurors responded in the negative.)

THE COURT: As we indicated the defendants are: Elmer Zelaya Martinez, Ronald Herrera Contreras, Henry Zelaya Martinez, Pablo Miguel Velasco Barrera, and Duglas Ramirez

Ferrera.

The defense counsels are Robert Jenkins, Manuel Leiva, Lana Manitta, Jesse Winograd, Greg Stambaugh, Charles Twist, David Kiyonaga, Paul Vangellow, Andrew Stewart, Pleasant Brodnax, Darwyn Easley, and Laura Rhodes.

The prosecutors are: Becky Bellows, Alexandria Blanchard, Cristina Stam, Jacqueline Bechara, and the paralegal is LaToya Horsford.

Do any of you recognize any of these people?

(All jurors responded in the negative.)

THE COURT: I'm going to ask the parties to read their prospective witness list. Ms. Bellows.

MS. BELLOWS: Sorry, Your Honor. Just one second. These are the government witnesses: Matthew Armstrong, Megan Atkins, Francisco Avila Avalos, Fredys Baires Abarca, Johnnie Benningfield, Raymond Betts, seated right here. Edgar Blanco Torres, Thomas Buckley, Morris Castro Coreas, Jesus Delgado, Dominick Dinisio, Claudia Dubravetz, Silvia Escobar Mendez, Richard Fennern, Paul Fisher, Carlos Fontanez, Michael Furr, Ricardo Guzman, Derek Hardy, Jason Huggins, and that's spelled H-U-G-G-I-N-S, David Hunt, Fernando Jaramillo, Richard Keys, Ryan Lamb, Michael Lamper, Paul Lee, Yonathan Melgar Martinez, Ryan Miller, Teodoro Perez Perez, Jocelyn Posthumus, Jaime Rosales Villegas, Hugo Salazar, Staci Sassano-Regan, Michael Sears, Genaro Sen Garcia, Karla Triminio, Fernando Uribe,

Josue Vigil Mejia, Anderson Villatoro Rivera, Jenna Walker.

THE COURT: Do any of you know any of those people or recognize any of those names?

(All jurors responded in the negative.)

THE COURT: Very good.

(A juror raised their hand.)

THE COURT: Give me your juror number.

THE JUROR: Number 31.

THE COURT: I need you to come up.

(Side bar.)

THE COURT: Sir, if you could state your juror number again.

THE JUROR: Juror No. 31.

THE COURT: And what name did you recognize?

THE JUROR: Paul Lee. I have a brother named Paul Lee. I'm not sure if it's the same --

THE COURT: What does your brother, Paul Lee, do?

THE JUROR: Software engineering.

THE COURT: Ms. Bellows.

MS. BELLOWS: Your Honor, I missed --

THE COURT: Software engineering. Is the Paul Lee involved in software engineering?

THE JUROR: He's Taiwanese Asian.

MS. BELLOWS: The Paul Lee involved in this case works for the FBI.

THE JUROR: Probably not him.

THE COURT: Paul Lee is a pretty typical name. But I appreciate you letting us know.

THE JUROR: Yeah. I don't exactly know what he does nowadays.

THE COURT: When is the last time you saw him?

THE JUROR: Just the other month, but I don't ask anything about what he does.

THE COURT: Okay. Thank you for your candor, sir.

THE JUROR: Thank you.

(Juror No. 31 excused.)

(Juror No. 3 present.)

THE COURT: All right, sir. What is your juror number?

THE JUROR: Juror No. 3.

THE COURT: Did you recognize a name?

THE JUROR: David Hunt. I'm not sure if it's the same David Hunt.

THE COURT: What is his relation to you, sir?

THE JUROR: There's a David Hunt that's my mother's best friend's husband.

THE COURT: What does he do for a living, if you know?

THE JUROR: He was a neurosurgeon.

MS. BELLOWS: Neurosurgeon?

THE JUROR: Yes. In New York.

THE COURT: New York.

MS. BELLOWS: Yup, definitely not.

THE JUROR: Okay. I just wanted to make sure.

THE COURT: Thank you for your candor, sir.

(Juror No. 3 excused.)

(Juror No. 27 present.)

THE COURT: Good morning, ma'am.

THE JUROR: Good morning.

THE COURT: Your juror number, please.

THE JUROR: 27.

THE COURT: Okay. Did you recognize a name?

THE JUROR: Yes.

THE COURT: What's the name?

THE JUROR: Stacy Sassano.

THE COURT: Stacy Sassano-Regan?

THE JUROR: Oh, I don't know if Regan is the last name, but I used to be an employer for Fairfax County Police.

THE COURT: Okay.

THE JUROR: So some of those names seem familiar, but --

THE COURT: Let me ask you a general question, assuming, for the sake of discussion, that you knew this Stacy Sassano, the fact that you knew her, would that in any way interfere with your ability to hear the evidence in the case?

THE JUROR: I think right now I feel a little uncomfortable with the case because I've worked with Fairfax for like 15 years. So some of the names seem quite familiar in relation to this case.

THE COURT: Okay. Are you currently working for Fairfax County?

THE JUROR: I left like two years ago.

THE COURT: But you said that you think you might have recognized some of the names.

THE JUROR: Some of the names, yeah, from previous cases.

THE COURT: And the fact that you recognize some of these names, if these people did indeed testify, you think that would interfere with your ability to objectively hear the evidence?

THE JUROR: I think so.

THE COURT: Thank you, ma'am.

THE DEPUTY CLERK: What was your number again?

THE JUROR: 27.

(Juror No. 27 excused.)

THE COURT: I'm going to excuse her. 27.

MR. LEIVA: Your Honor, there's an issue about the witness list for defense.

THE COURT: I'm not going to ask you to do that. What I'm going to say, and I'll make sure that you're

comfortable with that. I'm going to reiterate that none of the defendants have any responsibility to present any evidence at all and you cannot hold that against them. So I'm not going to ask them to provide a witness list. However, if during the course of the trial you find that someone who comes to the stand you do know, please let us know.

MR. LEIVA: That's fine.

THE COURT: Or something like that.

MR. BRODNAX: I have another matter.

Juror number -- Pleasant Brodnax on behalf of Mr. Ferrera.

Juror No. 30, has not recognized my name and I talked to her two or three times on the telephone. I represented her husband. The Court may know from the questionnaires she has a pending wrongful death case against the Alexandria jail. I represented her husband in front of Judge Ellis prior to subsequent counsel representing him and then committed suicide. I've talked with --

THE COURT: Let me get her to come up.

MR. BRODNAX: Yes.

(The Court speaks out into open court.)

THE COURT: 30. Juror No. 30, come up. 30. Juror 30, please come up. Come on up, ma'am.

(Juror No. 30 present.)

THE COURT: I'll take care of it. Come on up,

ma'am. You're Juror No. 30?

THE JUROR: I am No. 30.

THE COURT: Ma'am, one of the lawyers has indicated that he has recognized you from dealings that you have in your private life. You might not have picked up on that.

THE JUROR: Okay.

THE COURT: But the fact that you have some sort of tangential relationship with Mr. Brodnax.

THE JUROR: Oh, right.

THE COURT: Would that interfere with your ability to hear the case?

THE JUROR: I don't think so. I mean, there's a lot going on in my personal life in terms of my ex-husband committing suicide in the Bureau of Prisons. So --

THE COURT: Do you think that you can give the government and the defendants in this action a fair trial based -- and make your decision based on the evidence that was presented in this case?

THE JUROR: I will do my best.

THE COURT: All right. Thank you, ma'am.

THE JUROR: Thank you.

(Juror No. 30 excused.)

MR. BRODNAX: I just wanted to bring it to the attention of the Court.

THE COURT: All right.

MR. BRODNAX: I'm not asking any action.

THE COURT: At this point she said she can hear the evidence. Obviously, you have peremptory strikes that anyone can use. I don't think that those answers necessarily disqualify her from jury service. Thank you.

(Open court.)

THE COURT: Ladies and gentlemen of the jury, I'm not going to ask the defendants and their lawyers to present their witness list because, as a constitutional premise, the defendants have no obligation to present any evidence at all and you cannot hold that against them. So they may choose, during the course of the litigation, to not present any evidence, and you cannot hold that against them, so I'm not going to require them to present a potential witness list.

If at times you are called to serve as a juror in this case and you find that you do recognize someone who the defendants may choose to call, just simply let us know and we'll go forward from there.

Do you, a family member, or any close friend know or have any connection to any one of the individual defendants?

(All jurors responded in the negative.)

THE COURT: Do you, a family member, or any close friend, know or have any connection to the defendants' family members or close friends?

(All jurors responded in the negative.)

THE COURT: Other than the questionnaire you have completed and the information that I've provided you this morning, have you read or heard anything about this case before coming here today?

(All jurors responded in the negative.)

THE COURT: Have you heard or read anything about any of the individual defendants?

(All jurors responded in the negative.)

THE COURT: Do any of you know any of the other potential jurors in this case?

(All jurors responded in the negative.)

THE COURT: Good. Do you know the judge or any courtroom employee?

(All jurors responded in the negative.)

THE COURT: No one knows me. Hmm.

(Jury laughs.)

THE COURT: I introduced to you earlier the people who make up my team. The individuals who are seated up here in front.

Do any of you know or have any relationship with them?

(All jurors responded in the negative.)

THE COURT: Ladies and gentlemen, this is a tough case. A tough question that I need to ask you. And this case is set to last for several weeks. The lawyers have worked

very hard putting the case in a posture where it could be heard very efficiently. We will be finished before the 4th of July holiday. I am confident of that. We should probably be finished some time in June.

Now, I understand that we all have jobs, family commitments, personal commitments, and a variety of obligations that we need to attend to. And I want you to please take a moment of reflection and understand that jury duty is critical to the administration of justice and that the weeks you might serve on this case will pale in comparison to some of the other cases that we have in this courthouse that last months. So I want you to really take a serious look at this question before you answer it.

Are there any extraordinary circumstances preventing your jury service?

Now, when I say "extraordinary" I don't -- I am not talking about that I have kids or that I have a job that I need to do. I'm not talking about just circumstances that we face every single day. I'm talking about something extraordinary. In other words, a surgery that's scheduled for next week. Something like that would be considered extraordinary. I haven't provided that predicate for the questions.

Does anyone have any extraordinary circumstances? All right. Come on up.

(Side bar.)

THE JUROR: 13.

THE COURT: Your juror number.

THE JUROR: 13.

THE COURT: What is your extraordinary circumstance? And I want you to keep in mind that you filled out a questionnaire and the questionnaire specifically asked about serving for several weeks. So what is your extraordinary circumstance?

THE JUROR: I wrote you a letter and my mother-in-law just -- she's 97 -- she just fell two-and-a-half weeks ago, and she's not doing well. She's -- and I've been called to go up. There's two of us, two women, that can take care of her, and she's failing miserably right now. She had a fall and she had a brain bleed. She's on Coumadin. And so, she's not in good shape.

THE COURT: All right, ma'am. Thank you.

(Juror No. 13 excused.)

THE COURT: That does not earn her a strike for cause. We all have inconveniences. We all have things that we need to do so that doesn't exclude her.

Next person.

(Juror No. 49 present.)

THE COURT: Come on up, sir. Provide your juror number.

THE JUROR: No. 49.

THE COURT: Remember you filled out a questionnaire.

THE JUROR: Yes.

THE COURT: The specific questionnaire is talking about the extraordinary circumstances.

What has changed?

THE JUROR: Three weeks ago -- so after I had already submitted the questionnaire, I learned my mother has Stage 4 cancer. She is going -- it's in her uterus, kidneys and intestines and she's going for aggressive chemotherapy starting on Thursday.

THE COURT: Where does she live, sir?

THE JUROR: She lives in -- she's just outside of Seattle, Washington.

THE COURT: Okay, sir. Anything else you'd like to tell us?

THE JUROR: No, that's it.

THE COURT: I'm sorry to hear about your mother, sir.

THE JUROR: Thank you.

(Jury No. 49 excused.)

THE COURT: Thank you. That one isn't good enough for cause either. I will suggest that we might want to consider peremptory strikes on that gentleman. What I don't want to happen is for his mother to take a turn. We will have

four alternates. But I would not like to put us in a situation where we are to burn an alternate. So we have to take that into consideration.

Next. The line is growing as we talk.

Come on up, sir.

(Juror No. 21 present.)

THE COURT: Can you provide your juror number, sir?

THE JUROR: No. 21.

THE COURT: Sir, you filled out a questionnaire.

MR. LEIVA: Your Honor, can you ask him to speak up a little bit?

THE COURT: I would ask you to speak up, sir. If you're comfortable, you can remove your mask, if you're comfortable. All right, sir.

All right, sir, Juror No. 21. You might recall we sent out a questionnaire and in that questionnaire we specifically asked: Was there any extraordinary circumstances that would prevent you from serving and you swore under oath there were none. What has changed?

THE JUROR: It's not a change. I learned that I'm -- I could opt out of it by being over 73 and I'd like to do that. I've got a lot of obligations. I've retired 16 years ago. I'm not used to commuting from Manassas to Alexandria. And I'm worried that I'm not going to be able to hold up.

THE COURT: Okay, sir. Thank you, sir. Thank you,

sir.

THE JUROR: Do you want the letter? My daughter helped me write it.

(Juror No. 20 excused.)

THE COURT: Okay. I'll let everybody speak. Mr. Blanchard.

MR. BLANCHARD: Would Your Honor mind, perhaps, admonishing the venire to be a little more quiet. It's really hard to hear you.

THE COURT: Okay.

(Open court.)

THE COURT: Ladies and gentlemen of the venire, and I appreciate that this is a bit of a laborious process. We get a lot of background noise. So as we're going through this process, if you could keep your discussions amongst yourselves to a minimum, that would be helpful to us. Thank you. Next.

(Juror No. 36 present.)

THE COURT: Ma'am, what's your number?

THE JUROR: 36.

THE COURT: Okay.

THE JUROR: I have four young children and I home school three of them that are elementary age and so they would be without education during the time of the trial. I could take a break, but I don't -- I can't afford the cost of childcare for four children, which I imagine would be around

$200 a day.

THE COURT: Ma'am, in the questionnaire that we sent to you there was a specific question that asked whether you had any extraordinary circumstances that would prevent you from serving and you didn't answer in the --

THE JUROR: At that time I thought my husband could take time off work, but -- and he is off for the day with them, but he has had a change of management and they will not allow him to take weeks off work at this time.

THE COURT: Thank you, ma'am.

THE JUROR: Thank you.

(Jury No. 36 excused.)

THE COURT: Once again, the circumstance is really not a justification for a strike for cause.

Stop that -- stop him from leaving. He's part of the venire and he's just walking out.

Just so you know the man that walked out was a man who had trouble getting up and said "here." So I don't know what possessed him to just walk out.

MR. BLANCHARD: Your Honor, I saw one of the CSO's allow a woman to leave, I believe, to use the restroom. He may have seen that.

THE COURT: Okay. Let me talk to them a little bit.

(Open court.)

THE COURT: I appreciate this is taking a long time

and the process is a bit laborious. We need you all to stay in the courtroom during the entire process. If something happens and you have to tend to your personal needs, please let one of the court security officers know. Just don't get up and walk out. Okay. Thank you.

(Bench Conference.)

THE COURT: Next.

(Juror No. 66 present.)

THE COURT: Ma'am, if you could provide your number.

THE JUROR 66.

THE COURT: Ma'am, as you recall you filled out a questionnaire and one of the questions in the questionnaire talked about your ability to serve during the duration of this trial. What extraordinary circumstances has come up since then?

THE JUROR: My problem would be that I live in Vienna and I have to take an Uber like every time to come here and to go back for the trial. That's for a long time. I don't think it will be --

THE COURT: Okay.

THE JUROR: -- beneficial for me. That will be my problem.

THE COURT: Thank you, ma'am. You may step back.

(Juror No. 66 excused.)

THE COURT: Once again, not good enough for cause.

MR. WINOGRAD: Your Honor, before we go forward, I'm sorry, on the retired gentleman, did you not --

THE COURT: No. And keep in mind that when I'm exercising the ability to excuse people, keeping in mind that we have 30 and 18. And you can use them as best you can. And if we get to the point where we're allowing people because they've got children they need to take care of, they have something else they'd rather do, that's not going to cut it with the Court, generally.

MR. WINOGRAD: Understood, Your Honor. I just want to make sure I have it right.

THE COURT: Next.

(Juror No. 33 present.)

THE COURT: Ma'am, can you provide your number?

THE JUROR: 33.

THE COURT: Ma'am, you might recall that during the process we sent out a questionnaire and there was a specific question asking about your ability to serve for the time that this trial is going to last.

What has happened since then?

THE JUROR: I have two kidney stones in my right kidney so I have a doctor's appointment tomorrow to schedule the removal of them.

THE COURT: Now, I'm going to tell you something that the rest of the jurors don't know, because of the length

of this trial is going to take, I'm going to give everybody a break tomorrow. In other words, people won't need to come in tomorrow, that way you can inform your employers, take care of any personal matters and the like. So knowing that, does that in any way affect your --

THE JUROR: Oh, yes, definitely. So I'll have my appointment tomorrow and see what they say.

THE COURT: Okay. Thank you, ma'am.

THE JUROR: Thank you, sir.

(Juror No. 33 excused.)

(Juror No. 5 present.)

THE COURT: Ma'am, if you could provide your number.

THE JUROR: Number 5.

THE COURT: Number 5. And you remember you answered the questionnaire and the questionnaire specifically asked: Do you have any extraordinary circumstances that would prevent you from serving on this jury.

What has changed since then?

THE JUROR: No, but I just want to let you know that I'm traveling on July 2nd. So I can serve until July 1, if it is okay. Anything going beyond July 1 --

THE COURT: I am confident that this case will be over by July 1.

THE JUROR: Okay.

THE COURT: If I can ask, how long are you traveling

in July?

THE JUROR: I'm traveling from July 1st to August 6th.

THE COURT: Okay. I am confident, and I'll get on the lawyers about this, that this matter will be done by July 1st.

THE JUROR: Just to let you know.

THE COURT: Thank you, ma'am.

(Juror No. 5 excused.)

THE COURT: Next.

(Juror No. 57 present.)

THE COURT: Get your number, please, ma'am.

THE JUROR: 57.

THE COURT: Ma'am, do you recall that the Court sent out a questionnaire and in that questionnaire there was a specific question that was asked about your ability to serve for the duration of this trial. What has changed since then?

THE JUROR: Honestly, I should have put this down, but I'm finishing my Masters degree, and I have a class that lasts until the end of June. It starts at 5:30 at American University, and so I don't know that I'd be able to get to the class on time.

THE COURT: Let me tell you something that's going on -- the privileged information. It's not a necessary need to share this. It is my goal to have everyone complete their

case by 4 o'clock everyday, give or take 15 minutes.

THE JUROR: That would make a big difference if that's what's going to happen.

THE COURT: Thank you, ma'am.

THE JUROR: All right. Thank you.

(Jury No. 57 excused.)

(Juror No. 54 present.)

THE COURT: Good morning, ma'am.

THE JUROR: Good morning. I'm 54.

THE COURT: Thank you. Ma'am, you filled out a questionnaire and in the questionnaire there was a specific question asking about your ability to serve for the duration of this trial. What has changed since then?

THE JUROR: Yes. Pardon.

THE COURT: What has changed since then?

THE JUROR: I put "yes" and "no." The reason being is because I didn't know when my custody agreement was going to go through. And now I have them every other week. So every other week I wouldn't have childcare.

THE COURT: Okay. Anything else?

THE JUROR: That was all.

THE COURT: All right. Thank you, ma'am.

THE JUROR: Thank you for your time.

(Jury No. 54 excused.)

THE COURT: For the record, for the last two, it's

not enough for excusal in the Court's view. Next.

(Juror No. 55 present.)

THE COURT: Yes, ma'am. Can I get your number, please.

THE JUROR: 55.

THE COURT: 55.

THE JUROR: Yes.

THE COURT: Ma'am, you remember filling out a questionnaire in which the Court specifically asked whether there were any circumstances that would prevent you from serving for the duration of this trial.

What has changed since then?

THE JUROR: Yes, sir. So there are two reasons actually. I had an international travel. I just landed on Friday, May 6th, the morning of May 6th. And then the second is I have a vacation planned on July 2nd. So I have -- I have the tickets booked for that.

THE COURT: I am confident that this matter will be completed before July 2nd.

THE JUROR: Okay. Sounds good. Thank you, sir.

(Jury No. 55 excused.)

THE COURT: Again, not enough to be excused. And for the record, if I don't say anything, you can assume that I'm saying that that's enough for them not to be excused.

MS. BELLOWS: Your Honor, I didn't hear the first

part. What was the conflict in the beginning?

THE COURT: She booked travel plans on May 6th to go July 2nd.

(Juror No. 62 present.)

THE COURT: Good morning, ma'am. Can I get your juror number, please?

THE JUROR: 62.

THE COURT: 62. Ma'am, remember filling out the questionnaire in which the Court specifically asked about your ability to serve for the duration of this trial. What has changed since then?

THE JUROR: I lost my wallet this morning when I was getting ready to come here and I was away for the weekend so I may have lost it.

THE COURT: Okay. Well, what we have available to us is, in my view, the best courtroom security officer here, and that's Ms. Tinsley, you might have heard me introduce her earlier. What you can do, if you think you lost it here --

THE JUROR: No, no, I didn't.

THE COURT: Oh, okay. You lost it earlier?

THE JUROR: I lost it -- yeah.

THE COURT: If you are selected for jury duty, there's going to be a break in the action. We're not going to have court tomorrow, Tuesday. That will give you some time to work through the circumstances canceling credit cards and the

like, and we'll be more than happy to work with you if you need to take a phone call or whatever.

THE JUROR: Okay. That works.

THE COURT: Thank you, ma'am.

THE JUROR: Thank you.

(Juror No. 62 excused.)

(Juror No. 52 present.)

THE COURT: Good morning, ma'am. What is your juror number?

THE JUROR: 52.

THE COURT: Do you remember filling out the questionnaire where there was a specific question that I asked you: Was there anything that would prevent you from serving on this jury for the length of this trial?

What has changed since then?

THE JUROR: If this relates to your question, prior to this extraordinary circumstance you asked a question about if I had heard anything about the case. And I wasn't sure if this was applicable, but my husband did read the letter that I got and saw the case and looked it up and he read about some circumstances.

THE COURT: Did he talk to you about it in any great length?

THE JUROR: He told me what he read in a few sentences.

THE COURT: The Court is going to instruct you that any publicity or newspaper articles or anything that you heard about the case should not be considered by you in any respect. And I'm not going to hold it against your husband because that's what spouses do sometimes. I'm telling you that the only way that you can decide this case is based on the evidence that you hear in this courtroom. You can't be influenced by anything that your husband may have said about this case or anything like that. The bottom line is the case needs to be decided in this courtroom based upon the evidence that is presented.

THE JUROR: What he said was actually about a past case.

THE COURT: Yes. Will you be able to follow that instruction of the Court?

THE JUROR: Yes.

THE COURT: Okay.

THE JUROR: I just wanted to disclose it.

THE COURT: I appreciate it. Thank you, ma'am.

(Juror No. 52 excused.)

(Juror No. 16 present.)

THE COURT: Come on up, ma'am. Good morning, ma'am. Can you tell us your juror number?

THE JUROR: 16.

THE COURT: Ma'am, do you remember filling out a

questionnaire --

THE JUROR: I did but things changed.

THE COURT: Let me finish my question before you answer the question.

THE JUROR: Go ahead.

THE COURT: Are there any extraordinary circumstances that have occurred that prevent you from serving on this jury during this time?

THE JUROR: It's hard to say because we have a very small engineering firm. There's only four of us total. And I do the accounting and the -- the typing and all of that. And the secretary is leaving. So it would be really detrimental to my firm if I was not there.

THE COURT: Okay.

THE JUROR: So, I'm sorry. I know you said no work, but it's very important.

THE COURT: Thank you.

(Juror No. 16 excused.)

THE COURT: All right. Counsel, I believe that's the last one. The Court does not view any of them being just for cause -- excusing. Obviously, you can use your peremptory strikes if you choose to do so. Again, there are 30 and 18. I went back and checked, Ms. Bellows, you're absolutely right, 30 and 18. But it's 30 and 18 when it's a capital case. That's where I got that. It's 10 and 6. But when a capital

case comes out, there is 30 and 18. So everyone got extra. So do what you need to do.

All right.

MS. RHODES: While we're up here. Can I ask about one other thing. When we're sitting in the audience, for lack of a better term, can we text each other?

THE COURT: Yeah. Don't have them burping and chirping all the time.

MS. RHODES: Okay.

THE COURT: Thank you.

(Open court.)

THE COURT: Ladies and gentlemen, I mean no disrespect -- I'm sorry, Mr. Leiva.

MR. LEIVA: I'm having an issue, Your Honor, with my client's equipment.

MS. RHODES: Also, mine, Your Honor.

THE COURT: All right. Switch it out.

Ladies and gentlemen, as the interpreters are working with the gentlemen to fix the equipment, do not concern yourself with anything that's going on. At this point, you can feel free to talk amongst yourselves if you choose to.

(A pause in the proceedings.)

THE COURT: Can everyone hear now, so say raise your hand.

(All defendants raised hands.)

THE COURT: Very good. Thank you, ladies, for your work on that.

The Court instructs you that the law provides that the defendants are innocent, presumed innocent, even though they have been indicted and accused of a crime. This also means that the defendants cannot be presumed guilty because the police have investigated an alleged crime, arrested and the government has charged them. Mere suspicion of a crime is not sufficient to find a defendant guilty.

Accordingly, a defendant cannot be found guilty unless and until the government proves that defendant's guilt beyond a reasonable doubt.

Do any of you have any difficulty applying this presumption?

(All jurors responded in the negative.)

THE COURT: Have you or any member of your family had any problems, disputes with, or claims against any department of the United States Government, including the Department of Justice, which would interfere with your ability to sit in this case?

(All jurors responded in the negative.)

THE COURT: Have you or any member of your family been the subject of an investigation by any Department of the United States government or ever been a defendant in any suit

brought by the federal government?

(All jurors responded in the negative.)

THE COURT: Have you or any relatives or close friends ever had property seized by the United States government or any state or local government?

(All jurors responded in the negative.)

THE COURT: Are any of you, your family members, or friends employed by the Department of Justice, including the United States Attorney's Office?

(Multiple responses from the jury.)

THE COURT: Okay. We might have a couple of people. Sir, just tell me the nature of that relationship. First tell me your juror number.

THE JUROR: No. 3. A social acquaintance, close friend is at the DOJ, Department of Transportation, and has been there for five or --

THE COURT: Would that circumstance have any -- present you any difficulty hearing this case?

THE JUROR: No.

THE COURT: Thank you, sir.

THE JUROR: No. 36. My brother is an assistant U.S. Attorney.

THE COURT: What state?

THE JUROR: He's in Laredo, Texas.

THE COURT: Would that present any problems for you

hearing this case?

THE JUROR: No.

THE COURT: Thank you, ma'am.

THE JUROR: No. 49. Ex-wife, criminal tax -- appellate tax division, attorney.

THE COURT: Would that circumstance present you any problem with hearing this case?

THE JUROR: No.

THE COURT: Thank you, sir.

THE JUROR: I work for the Department of Corrections.

THE COURT: Number, please.

THE JUROR: Sorry. No. 26. I work for the Department of Corrections as a probation officer.

THE COURT: Okay. Would that fact or circumstance present any difficulty with you hearing this case?

THE JUROR: No, sir.

THE COURT: Thank you, ma'am.

THE JUROR: 58. My brother works for the DOJ for FOIA.

THE COURT: Would that situation present any difficulty with you hearing this case?

THE JUROR: I don't think so.

THE COURT: Thank you, sir.

THE JUROR: No. 54. I work for the Department of

Justice for U.S. Marshals.

THE COURT: Okay. Would that circumstance present any difficulties with you sitting in judgment in this case?

THE JUROR: No.

THE COURT: Do you recognize any of the individuals in the courtroom?

THE JUROR: I do not.

THE COURT: Thank you, ma'am.

This is for everybody:

Have you had any experiences with judges, lawyers, or the courts that would affect your ability to hear this case fairly and impartially?

(All jurors responded in the negative.)

THE COURT: Have any of you served as a member of a grand jury or a juror in a trial?

(Multiple responses from the jury.)

THE COURT: If you have, raise your hands. I'm going to ask a general question to each of you. A couple of questions to each of you.

Sir, you served as a juror?

THE JUROR: I served as a juror in Manassas, the city of Manassas. Something dealing with a traffic accident.

THE COURT: Okay. Since it was in Manassas, I'm assuming that it was in state court.

THE JUROR: Yes, state court.

THE COURT: When did you serve?

THE JUROR: About two years ago.

THE COURT: Without stating the verdict, would you please state whether or not the jury returned a verdict?

Did you all decide the case?

THE JUROR: Yes.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No, sir.

THE COURT: Thank you. Were you the foreperson of the jury?

THE JUROR: No.

THE COURT: Thank you, sir. Next.

THE JUROR: No. 18.

THE COURT: Yes, sir. Did you serve on a grand jury or a petit jury?

THE JUROR: Regular trial jury.

THE COURT: Okay. Was this a criminal case or a civil case?

THE JUROR: Two cases, both criminal.

THE COURT: Was this in state or federal court?

THE JUROR: State.

THE COURT: When did you serve?

THE JUROR: One was the late '90s, the other was 2005 or so.

THE COURT: Okay. Without stating the verdict, would you please state whether the jury returned a verdict?

THE JUROR: The first case, no, the second case, yes.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Were you the foreperson of the jury?

THE JUROR: No.

THE COURT: Very good, sir. Thank you.

THE JUROR: No. 41.

THE COURT: Was this a grand jury or a petit jury? In other words, did you hear the case or did you decide something related to the case?

THE JUROR: No, I was -- I served this jury.

THE COURT: Okay. Was it a criminal trial or a civil trial?

THE JUROR: It was a criminal.

THE COURT: Was it in state or federal court?

THE JUROR: It was federal court, here.

THE COURT: In Alexandria?

THE JUROR: Yes.

THE COURT: Okay. How long ago was that?

THE JUROR: It's about 20 years ago.

THE COURT: Okay. Without stating the verdict, would you please state whether or not the jury returned a verdict?

THE JUROR: We did.

THE COURT: Okay. Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Were you the foreperson of the jury?

THE JUROR: No.

THE COURT: Thank you, ma'am.

THE JUROR: No. 54.

THE COURT: Did you serve on a grand jury or a petit jury?

THE JUROR: Petit jury.

THE COURT: Did you serve in federal or state court?

THE JUROR: State.

THE COURT: When did you serve?

THE JUROR: About six weeks ago.

THE COURT: Without stating the verdict, would you please state whether or not the jury returned a verdict.

THE WITNESS: They did not.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No, sir.

THE COURT: Did you serve as the foreperson of that jury?

THE JUROR: No.

THE COURT: Thank you, ma'am.

THE JUROR: No. 62.

THE COURT: Okay. Was it a grand jury or a petit jury?

THE JUROR: Trial jury.

THE COURT: Okay. Was it a criminal case or a civil case?

THE JUROR: One was criminal, one was civil. They were both state.

THE COURT: They were both state?

THE JUROR: In Colorado.

THE COURT: When did you serve, ma'am?

THE JUROR: Probably 10 to 12 years ago.

THE COURT: Without stating the verdict, would you please state whether or not the jury returned a verdict.

THE JUROR: Yes.

THE COURT: Do you feel that your previous participation as a juror would in any way interfere or impair with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Were you the foreperson of the jury?

THE JUROR: I was in one case.

THE COURT: Okay. Thank you, ma'am.

THE JUROR: No. 63.

THE COURT: Was it a regular trial or a grand jury trial?

THE JUROR: Regular.

THE COURT: Was it in state court or federal court?

THE JUROR: State court.

THE COURT: When did you serve?

THE JUROR: I believe it was the late '90s.

THE COURT: Without stating the verdict, would you please state whether or not the jury returned a verdict?

THE JUROR: We did.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: Not at all.

THE COURT: Were you the foreperson of the jury?

THE JUROR: No.

THE COURT: Thank you, ma'am.

THE JUROR: No. 35.

THE COURT: Was this a regular trial or a grand jury?

THE JUROR: Both.

THE COURT: You served as a grand juror and as a juror in a regular trial?

THE JUROR: Yes.

THE COURT: Was this in federal or state court?

THE JUROR: State both.

THE COURT: One in federal and one in state?

THE JUROR: Yes.

THE COURT: Okay. When did you serve?

THE JUROR: Where?

THE COURT: When?

THE JUROR: Right here.

THE COURT: Okay.

THE JUROR: One in Manassas and one right here.

THE COURT: How long was that, sir?

THE JUROR: '80s and '90s.

THE COURT: Okay. Without stating the verdict, would you please state whether or not the jury returned a verdict?

THE JUROR: Verdict, yes.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: Not a problem.

THE COURT: Were you the foreperson of the jury?

THE JUROR: I was not.

THE COURT: Thank you, sir.

THE JUROR: No. 14.

THE COURT: Was this a regular jury or a grand jury?

THE JUROR: Regular.

THE COURT: Was it state court or federal court?

THE JUROR: State.

THE COURT: When did you serve?

THE JUROR: Approximately 1990.

THE COURT: Without stating the verdict, would you please state whether or not the jury returned a verdict?

THE JUROR: Returned a verdict, yes.

THE COURT: Do you feel that your previous participation as a juror would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Were you the foreperson of the jury?

THE JUROR: No.

THE COURT: Thank you, sir.

All right. This is a general question. Have you or any member of your family ever participated in a criminal case as a complainant, defendant, witness, or in some other capacity?

(Multiple responses from the jury.)

THE COURT: One person. Couple of people. All right. Number.

THE JUROR: 3.

THE COURT: Wait a minute.

THE JUROR: 3.

THE COURT: Okay. Was this proceeding in federal or state court?

THE JUROR: District of Columbia.

THE COURT: Without going into detail, can you describe the nature of the case and your involvement?

THE JUROR: I was a witness. I testified in front of a grand jury and saw two individuals leaving.

THE COURT: Okay. Thank you, sir.

THE JUROR: 64. My wife was a jury member. It was before I met her, so, I don't really have --

THE COURT: Was this proceeding in state or federal court?

THE JUROR: State court. I believe it was -- I believe it was a murder case.

THE COURT: Let me stop you there, sir.

Have you and your wife discussed that to any extent?

THE JUROR: Just that she was on a jury and --

THE COURT: Okay. That's fine. That's fine, sir. Thank you. Thank you.

THE JUROR: 36. I have been on trial for misdemeanor alcohol charges over a decade ago. In municipal and county courts.

THE COURT: All right. Thank you, ma'am.

THE JUROR: 63. My daughter and I witnessed a crime, but it didn't go to court, but we did give statements.

THE COURT: Okay. Thank you, ma'am. And I appreciate the young lady saying that, but I'm not really concerned about statements. So if any of you have any concerns based upon what you heard from her, you don't need to stand up. That's really not a reason, but I do appreciate her telling us that.

THE JUROR: 37. Yes, 37. Witness as a law enforcement officer.

THE COURT: Okay. Thank you, sir.

THE JUROR: No. 53. My father was a defendant in some criminal cases.

THE COURT: That's fine. Thank you, sir.

THE JUROR: 17. And my mom was -- my birth mother was convicted on federal charges in California.

THE COURT: Okay. And I'm assuming, ma'am, this won't interfere with your ability to hear this case.

THE JUROR: No.

THE COURT: Okay. All right.

This is another general question. I believe we're going to have consistent answers on this. And please listen closely to the questions I ask you.

Have you or any family member or close friend had any experience with a local, state, or federal agency that may influence your ability to evaluate the facts of this case impartially if you are selected to be a juror in this case?

(All jurors responded in the negative.)

THE COURT: Do any of you have any strong opinions about law enforcement, positive or negative, that would prevent you from rendering a fair verdict in a case involving the testimony of law enforcement officers?

(Multiple responses from the jury.)

THE COURT: All right, sir, come on up.

(Side bar.)

(Juror No. 58 present.)

THE COURT: Give me your juror number.

THE JUROR: 58.

THE COURT: What is your circumstance?

THE JUROR: So when I was in Harrisonburg there was, like, a lot of issues with police and so I got pulled over for

speeding. And then both cops approached my car and tapped my window with their gun and I was, like, very rattled at the time. I didn't report it because I was like scared and I was like a personal --

THE COURT: So you were down in James Madison.

THE JUROR: Yeah.

THE COURT: You had a situation or a circumstance with the police.

THE JUROR: Yeah.

THE COURT: Would that circumstance or situation in any way interfere with your ability to render a fair judgment in this case based upon the evidence you hear in this courtroom?

THE JUROR: I mean, obviously, I have like a bias towards like -- against police.

THE COURT: Okay.

THE JUROR: And, like, their judgment.

THE COURT: Would you necessarily disbelieve the testimony of a police officer?

THE JUROR: I don't know.

THE COURT: Okay. Thank you, sir. You may step back.

(Jury No. 58 excused.)

THE COURT: I'm going to hold off on making a determination on that one.

(Juror No. 33 present.)

THE JUROR: Hi.

THE COURT: Juror number.

THE JUROR: 33.

THE COURT: Okay. And what is your circumstance?

THE JUROR: My whole family is in law enforcement. Both state, local, and federal, but I did put it in the questionnaire.

THE COURT: Would you necessarily believe or disbelieve the testimony of a law enforcement officer based upon your circumstances?

THE JUROR: No. I just want to make sure I was okay.

THE COURT: No, ma'am. I want you to understand this is why we go through this process. We want people to be candid and you've been candid and you did good about coming up and telling us these things. So don't hesitate.

THE JUROR: Just exercise my right, okay.

(Juror No. 33 excused.)

THE COURT: I'll hold off on the first one. He's close. But I'll hold off. Okay.

(Open court.)

THE COURT: Ladies and gentlemen, you heard from a few of your colleagues in response to certain things. This is a follow-up question to those who did not come up.

If a witness who testifies in this case is or was a law enforcement officer, would you tend to believe that witness even more or less because of that witness's connection with the government?

(All jurors responded in the negative.)

THE COURT: Do any of you have any health issues that you have not previously described to the Court that might interfere with your ability to hear the testimony of the witnesses in this case?

(All jurors responded in the negative.)

THE COURT: Have you or anyone close to you previously been a victim of a crime? And when I'm talking "close" a sibling, a parent, a child, a spouse.

(Multiple responses from the jury.)

THE COURT: Would any past experiences you have been -- wait a minute, excuse me --

Other than those -- which question are we talking about?

THE JUROR: 63, victim of a crime.

THE COURT: Okay. Can you describe, generally, who that person was?

THE JUROR: I was the victim.

THE COURT: Okay. Stop right there.

Did your experience being the victim of a crime, does it in any way affect your ability to hear the facts and

circumstances of this case?

THE JUROR: No.

THE COURT: Okay. Thank you, ma'am. Sir.

THE JUROR: I was also a victim. And it does not affect my ability.

THE COURT: Okay. Let me ask a follow-up question, both of you and the young lady who spoke earlier.

Would that experience affect your duty, if chosen, to presume that all of these defendants are innocent until proven guilty beyond a reasonable doubt?

THE JUROR: No, it would not affect my ability. No. 18.

THE COURT: Thank you, sir. Ma'am?

THE JUROR: No.

THE COURT: Thank you, ma'am.

We've had a few people answer this question generally in passing before, but I'm going to follow up, other than those people who have already answered.

Have you or your close friends or relatives ever been convicted of any crime?

(All jurors responded in the negative.)

THE COURT: We heard about your situation, ma'am, you don't need to repeat it. Is everyone comfortable with the response that we've heard from this young lady before?

MR. WINOGRAD: Yes.

MS. BELLOWS: Yes, Your Honor.

THE COURT: Yes, ma'am.

THE JUROR: My uncle was convicted of stealing a trailer. I'm sorry, 46.

THE COURT: Do you feel that this experience would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Okay. Thank you, ma'am.

THE JUROR: Juror No. 20. It was a juvenile case. My best friend's son was convicted of assault.

THE COURT: Do you feel that this experience would in any way interfere or impair your ability to serve as a fair and impartial juror in this case?

THE JUROR: No, Your Honor.

THE COURT: Thank you, ma'am.

THE JUROR: 51, sir.

THE COURT: Yes.

THE JUROR: My little brother was convicted of vehicular manslaughter.

THE COURT: Do you feel that this experience would in any way impair or interfere with your ability to serve as a fair and impartial juror in this trial?

THE JUROR: No, Judge.

THE COURT: Thank you, ma'am.

THE JUROR: 57. My great uncle was convicted of tax fraud and I have a cousin who was convicted of attempted murder.

THE COURT: Okay. Do you feel this experience would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No, Your Honor.

THE COURT: Thank you, ma'am.

THE JUROR: No. 11. My now husband was convicted of robbery when he was 15.

THE COURT: Do you feel that this experience would in any way impair or interfere with your ability to serve as a fair and impartial juror in this case?

THE JUROR: No.

THE COURT: Thank you, ma'am.

THE JUROR: 53. I mentioned that my father was a defendant. He was convicted of driving under the influence.

THE COURT: Do you believe that that experience --

(Court reporter clarification.)

THE JUROR: Driving under the influence.

THE COURT: DUI.

THE JUROR: No, it would not affect my ability to be impartial in this case.

THE COURT: Thank you, sir. And last -- and, no, two more gentlemen. Yes, sir.

THE JUROR: Sister, DWI.

THE COURT: Can I get your number, please.

THE JUROR: Sister, DWI. No. 10.

THE COURT: Do you think that this would in any way interfere with your ability to be an impartial juror?

THE JUROR: No.

THE COURT: Thank you, sir. And the last gentleman over here.

THE JUROR: Juror No. 44. My cousin was convicted of shoplifting.

THE COURT: Does that experience in any way interfere with your ability to sit impartially in this case?

THE JUROR: No, Your Honor.

THE COURT: Thank you.

Is there anyone here who feels that if you were selected to sit as a juror in this case, you would be unwilling or unable to render a verdict based solely on the evidence presented at this trial and the law, which I will instruct you on at the conclusion of the trial?

(All jurors responded in the negative.)

THE COURT: Other than what you've already explained, do you or any member of your immediate family or close personal friend know anyone who may be associated in any capacity with this case, its investigation or its preparation for either the government or the defense?

(Multiple responses from the jury.)

THE COURT: Come on up. Come on up, sir.

(Juror No. 50 present.)

THE COURT: What is your juror number, sir?

THE JUROR: 50.

THE COURT: Okay.

THE JUROR: My brother is a state magistrate for the City of Alexandria.

THE COURT: Okay.

THE JUROR: So he may or may not be involved with this case.

THE COURT: Have you talked to him about this case that you know of?

THE JUROR: Only the dates. I said I have jury duty.

THE COURT: All right. That's fine.

I'm going to ask you another follow-up question. I'm going to ask everybody else this question too.

Have you had any interaction with MS-13?

THE JUROR: Only by seeing paintings on the walls.

THE COURT: Okay.

THE JUROR: And stuff in the newspapers.

THE COURT: Have you read anything about this case?

THE JUROR: Nothing on this case.

THE COURT: Okay. Thank you, sir.

(Jury No. 50 excused.)

THE COURT: Counsel, I'm letting you know that I'm sort of using my instincts when people say I want to say something because I don't want someone to say something that messes it up for everybody. I'm just using my best instinct as to when to bring people up.

This next question is going to be a little bit tricky. But I'm going to ask it in a way that makes it as sterile as possible. Okay. Thank you.

(Open court.)

THE COURT: Ladies and gentlemen, during the course of this trial you're going to hear a reference to an alleged gang by the name of MS-13. This question that I'm going to ask is to be considered general in question -- general in nature.

Have any of you had any negative interaction with a group that is called MS-13?

(All jurors responded in the negative.)

THE COURT: Have any of you had any interaction with any other street -- alleged street gang?

(All jurors responded in the negative.)

THE COURT: Is there anyone who feels that if you were selected to sit as a juror on this case you would be unwilling or unable to render a verdict based solely on the evidence presented at this trial and the law which I will

instruct you on at the conclusion of the trial?

(All jurors responded in the negative.)

THE COURT: You might have said, well, didn't he already ask me that question. I like to circle back sometimes to make sure we're clear of what our responsibilities and obligations are.

It is important that every juror hear all testimony. If you don't hear something a witness says, will all of you be comfortable in raising your hand and asking me to have the witness repeat that response?

(All jurors responded in the affirmative.)

THE COURT: Every juror has the right to know the law and the Court will read the instructions to you. In addition, you'll be given the written instructions of law during your deliberations. During deliberations, will you ask your foreperson to read the instructions on the law again if it will aid in the deliberations?

(All jurors responded in the affirmative.)

THE COURT: No juror is expected to give up an honest belief. In fact, you would be violating your oath or affirmation to convict in spite of your honest belief that there's reasonable doubt. Accordingly, it is not expected that you or any other juror will decide the case contrary to an honest belief. You're expected to find a defendant guilty only if his guilt is proven beyond a reasonable doubt.

Will you adhere to your responsibility in this regard?

(All jurors responded in the affirmative.)

THE COURT: Does anyone have any other matter that you feel you should call to the Court's attention that may have some bearing on your qualification as a juror or what you feel may prevent you from rendering a fair and impartial verdict based solely upon on the evidence and my instructions other than those things we previously discussed?

(All jurors responded in the negative.)

THE COURT: All right. Thank you, ladies and gentlemen, for answering the questions.

What we're going to do now is I'm going to give you a comfort break. You're going to be in the -- dealing with Ms. Tinsley and my other courtroom security officer. I'm going to give you a comfort break. Let me give you the first instruction that I will -- or actually the second instruction that I will give you during the course of this litigation. And that is not to discuss the case or any aspect of the case with anyone, including each other. There's a temptation, for lack of a better way of putting it, as you're walking to the bathroom saying, wow, that judge was asking a whole lot of questions or, wow, it's a pretty day, I wish I was outside. Those are the kinds of things that can get you in a situation that we don't want you to get into. So we're going to go

ahead and let you take your comfort break. It's best to talk about anything other than this case. Talk about how great Mother's Day was yesterday. Talk about how the Nationals are not going to win 70 games this year. Talk about those kinds of things and that will help you sort of stay within the confines of your obligations. So I'm going to go ahead and let you go out and then we'll do what we need to do. So let's go ahead and let them do what they need to do. We're going to be back no later than 11:10.

Why don't you go ahead and go out, too. Take them all out.

(Jury excused.)

THE COURT: You all may be seated. We're back on the record. Are all the jurors excused?

We're back on the record. Does anyone want to be heard on anything?

MS. BELLOWS: Yes, Your Honor. The government would move to strike No. 58. That's the young man the Court said he's going to defer. In response to his questionnaire, he said, "minimum sentencing is inherently biassed." And then today he said, and I'm not sure if this is a quote, but what I wrote down was that "he's biassed against the police." So for that reason we would move to strike No. 58.

THE COURT: Does anyone want to take the lead on the response to that?

MR. JENKINS: Yes, Your Honor.

Good morning, Your Honor. Again, Robert Jenkins on behalf of Mr. Elmer Martinez. Your Honor, of course, the Court is familiar with what the standard is. The standard isn't whether or not the person has said something that might lead him to be more favorable to one side or the other.

THE COURT: Hold it. Hold it. Sorry, Mr. Jenkins, one of the jurors tried to come back in.

(A pause in the proceedings.)

THE COURT: Ms. Tinsley, if you could right now, because we don't want the jurors to just sort of sashaying in, position yourself or have someone positioned in the back of the courtroom so that no one comes in.

Go ahead, Mr. Jenkins.

MR. JENKINS: Yes, Your Honor. The standard, again, Your Honor, is whether or not the person has expressed an opinion that gives the Court undue concern as to whether or not the individual has the ability or is willing to follow the Court's instructions. And I don't believe that this juror has demonstrated such.

First, with respect to his responses on the questionnaire, at some point in time I trust that the Court is going to instruct all of the jurors that sentencing is reserved to the purview of the Court and the Court alone. So his views on sentencing, Your Honor, are really irrelevant

because he has no role in that and the Court will so instruct him as such.

With respect to his views on how he views law enforcement, Your Honor, I think the critical question is, which was not followed up, is whether or not -- notwithstanding those views as the Court posed with respect to other subject matters -- notwithstanding those views: Are you still able to follow the Court's instructions and render a verdict accordingly. Each time the Court asked that question in a more general broad manner, this juror did not raise his hand and indicate that he was unable or unwilling to do so. So for that reason, Your Honor, I don't believe that just cause exists. Certainly, as the Court mentioned at side bar, if the government chooses to exercise one if his preemptory challenges so be it, but I don't believe that cause has been demonstrated.

THE COURT: Well, the standard that the Court is going to use for all people who are asked to be struck for causes is whether or not they can sit indifferent to the cause. At this point, I don't believe that he has professed or at least to say that he can sit indifferent to the cause.

Are the defendants going to raise any strikes for cause?

MR. JENKINS: Your Honor, I have not had a sufficient opportunity to confer with my co-counsel. If I

could have a moment to do so?

THE COURT: Hold it.

(Discussion held off the record.)

THE COURT: Why don't you all take a moment and consult. We'll turn on the white noise and you can get back to me on that issue.

MR. JENKINS: And, Your Honor, just for my benefit. I understand you're not going to strike.

THE COURT: I haven't made up my mind yet.

MR. JENKINS: I'm sorry.

THE COURT: I haven't made up my mind yet.

MR. JENKINS: Okay.

THE COURT: I want to apply the same standard across the board to everyone.

MR. JENKINS: Yes, Your Honor. Thank you.

MS. RHODES: On that same person, I noted that after the Court asked could you be -- would you be biassed towards the police, he hesitated and said "I don't know."

THE COURT: Let me remind you of something, Counsel, and I appreciate that we're at the very beginning, but, as I said, I'd like for us to speak with one voice, particularly on issues like this. And so, are you raising something different from what Mr. Jenkins is saying?

MS. RHODES: Well, I was just going to point out that he didn't say he couldn't -- he could not be fair.

MR. JENKINS: Okay.

THE COURT: All right. Thank you, Mr. Jenkins.

MR. JENKINS: Thank you, Your Honor.

THE COURT: All right. Why don't you all consult.

(Counsel confers.)

THE COURT: Mr. Jenkins, are you ready?

MR. JENKINS: Yes, Your Honor.

(Counsel confers.)

MR. JENKINS: Your Honor, there's only one that I believe that all defense counsel believed would qualify for cause and that's Juror No. 60.

Your Honor, in response to the questionnaire, question No. 44, inquiring about any potential bias with respect to the burden of proof standard, the prospective juror's response was, I imagine, depending on those factors of the case, that I might wonder why a defendant would decide not to testify. Perhaps this choice is explained to the jury at some point. You know --

THE COURT: I think she stated the law right there. I think as a lawyer, she did a pretty good job.

MR. JENKINS: I certainly understand that, Your Honor. It does raise at least a specter. If the judge is -- excuse me, if Your Honor, if you're going to apply the same standard across the board with respect to No. 58, I would conceive that this person has not said that they could not

follow the law and would be unwilling to follow the Court's instructions with respect to whether one or more of these defendants would choose to exercise their right to remain silent.

THE COURT: I appreciate that. Just so the record is clean with regard to the first juror that we talked about. Question No. 31 he said, "My brother works for the FBI, but not in a law enforcement section." And then the subset to that question, which was: "Has that employment left you with a negative, positive, or neutral impression of law enforcement? Please explain." He says, "Neutral. My brother and I don't talk about work." Which, I think, is pretty significant.

The Court also had an opportunity to observe the demeanor of the young man who testified. Applying the same standard across the board to both of these jurors, the Court finds that based upon the credibility of the determinations that it has made and the circumstances presented and the background information provided, that both of these individuals could indeed sit indifferent to the cause would be an appropriate instruction, and so, therefore, will not allow either one of those to be struck for cause.

MR. JENKINS: Thank you, Your Honor.

THE COURT: All right. Anything else on the strikes for cause?

MR. JENKINS: No, Your Honor.

THE COURT: Anything else from the government?

MS. BELLOWS: No, Your Honor.

THE COURT: What I would like to do is I forgot to factor in the reality that we have to use the bathroom too. And so, what I'm going to do is I'm going to tell them that we're going to come back at 11:25, that way the defendants can also have an opportunity to use the facilities. Then we'll go right into the voir dire process as far as the strikes are concerned.

There's been a request that you all be able to sort of consult in the deliberation room since we will not be using it. I'm going to grant that request. I ask you to be cognizant of the Court's time too and do these things as efficiently as possible.

MR. JENKINS: Yes, Your Honor. Several of the defense counsel who are engaged in this matter, Your Honor, have ample experience with that ability -- of being granted that ability and I trust that we will move efficiently.

THE COURT: Okay. Very good.

And if we are able to do things in the course that I'm hoping we'll be able to do them, what I'm going to do is allow us, depending on where we are, to take a lunch break so everyone can set up and be prepared for whatever they need to do going forward. Okay.

MR. JENKINS: Yes, Your Honor.

THE COURT: One question. Off the record.

(Discussion off the record.)

THE COURT: Okay. Let's look to bring you back at 11:25. Okay. Let the marshal service escort the gentlemen out and then we'll let you all go ahead.

(Defendants excused. )

THE COURT: Counsel, see you back about 11:25.

(Recess.)

(Court proceedings resumed at 11:30 a.m.)

THE COURT: Are we ready to bring the venire back in?

MS. MANITTA: We're missing quite a few defense counsel.

(All defense counsel resumes.)

MS. MANITTA: There they are, Your Honor.

THE COURT: Let the record reflect that all of the party defendants are reseated in the courtroom as are all counsel.

Are we ready to bring the jury back in?

(Jury present.)

THE COURT: Ladies and gentlemen of the venire, I'm going to do a quick status call. You don't need to stand. When I call your number, just say "present." All right. When I call your number, just say "present."

1, No. 1.

THE JUROR: Present.

THE COURT: 2.

THE JUROR: Present.

THE COURT: 3.

THE JUROR: Present.

THE COURT: 4.

THE JUROR: Present.

THE COURT: 5.

THE JUROR: Present.

THE COURT: 6.

THE JUROR: Present.

THE COURT: 7.

THE JUROR: Present.

THE COURT: 8.

THE JUROR: Present.

THE COURT: 9.

THE JUROR: Present.

THE COURT: 10.

THE JUROR: Present.

THE COURT: 11.

THE JUROR: Present.

THE COURT: 12.

THE JUROR: Present.

THE COURT: 13.

THE JUROR: Present.

THE COURT: 14.

THE JUROR: Present.

THE COURT: 15.

THE JUROR: Present.

THE COURT: 16.

THE JUROR: Present.

THE COURT: 17.

THE JUROR: Present.

THE COURT: 18.

THE JUROR: Present.

THE COURT: 19.

THE JUROR: Present.

THE COURT: 20.

THE JUROR: Present.

THE COURT: 21.

THE JUROR: Present.

THE COURT: 22.

THE JUROR: Present.

THE COURT: 23.

THE JUROR: Present.

THE COURT: 24.

THE JUROR: Present.

THE COURT: 25.

THE JUROR: Present.

THE COURT: 26.

THE JUROR: Present.

THE COURT: 27.

THE JUROR: Present.

THE COURT: 28.

THE JUROR: Present.

THE COURT: 29.

THE JUROR: Present.

THE COURT: 30.

THE JUROR: Present.

THE COURT: 31.

THE JUROR: Present.

THE COURT: 32.

THE JUROR: Present.

THE COURT: 33.

THE JUROR: Present.

THE COURT: 34.

THE JUROR: Present.

THE COURT: 35.

THE JUROR: Present.

THE COURT: 35.

THE JUROR: Present.

THE COURT: 36.

THE JUROR: Present.

THE COURT: 37.

THE JUROR: Present.

THE COURT: 38.

THE JUROR: Present.

THE COURT: 39.

THE JUROR: Present.

THE COURT: 40.

THE JUROR: Present.

THE COURT: 41.

THE JUROR: Present.

THE COURT: 42.

THE JUROR: Present.

THE COURT: 43.

THE JUROR: Present.

THE COURT: 44.

THE JUROR: Present.

THE COURT: 45.

THE JUROR: Present.

THE COURT: 46.

THE JUROR: Present.

THE COURT: 47.

THE JUROR: Present.

THE COURT: 48.

THE JUROR: Present.

THE COURT: 49.

THE JUROR: Present.

THE COURT: 50.

THE JUROR: Present.

THE COURT: 51.

THE JUROR: Present, Judge.

THE COURT: 52. Thank you.

THE JUROR: Present.

THE COURT: 53.

THE JUROR: Present.

THE COURT: 54.

THE JUROR: Present.

THE COURT: 55.

THE JUROR: Present.

THE COURT: 56.

THE JUROR: Present.

THE COURT: 57.

THE JUROR: Present.

THE COURT: 58.

THE JUROR: Present.

THE COURT: 60.

THE JUROR: Present.

THE COURT: 61.

THE JUROR: Present.

THE COURT: 62.

THE JUROR: Present.

THE COURT: 63.

THE JUROR: Present.

THE COURT: 64, 64.

THE JUROR: Present.

THE COURT: 65.

THE JUROR: Present.

THE COURT: 66.

THE JUROR: Present.

All members of the venire are present.

Ladies and gentlemen, I'm going to state this at this point because it happens from time to time during a trial. We have very good lawyers in this case and most of them I know personally. All of them I know professionally and they're all decent people. From time to time, though, you may run across one of them in the hallway or out and about. And what most lawyers do, and I know that when I was a young lawyer when I would see a person who was a part of a jury, I would run the other way because I didn't want there to be any suggestion that I was having any undo influence or undo or inappropriate contact with a juror.

These are all good people. It's okay to say good morning, it's okay to say good afternoon, it's okay for them to nod at you and for you to nod at them. There's nothing wrong with that. We're all decent human beings. I want to make everybody aware of that right now so that you don't feel uncomfortable and the lawyers don't feel uncomfortable if and

when they confront you in a private or personal setting. So just making sure you're aware of that.

The process that we're going to go through right now is the selection of the actual people who will sit on this jury. We hope that we're going to be able to finish that within the next 45 minutes to an hour. The incentive is that I entered an order having lunch brought in for the next day that we were in trial. And because we've been very efficient and productive today, I put in another order. We're actually going to provide lunch for you today. We will provide that lunch for you today. It's not my doing. It's the public taxpayers doing, but I get to take credit for it.

As a benefit to you for your patience as we work through this, and we're hoping that we're going to get through this process around 12:30, we're going to order the lunch brought in for you, and you'll be able to enjoy it once you're selected. So that's the incentive. So I'm sure that gives you a lot of enthusiasm about the possibility that you'll get the free lunch that we're going to offer today.

All right. Madam clerk.

THE DEPUTY CLERK: Yes, Your Honor.

Ladies and gentlemen, as I call your number, please come forward and have a seat in the jury box as directed by the marshal.

Juror No. 30.

Juror No. 50, Juror No. 35, Juror No. 1, Juror No. 61, Juror No. 62, Juror No. 64, Juror No. 31, Juror No. 38, Juror No. 43, Juror No. 19, Juror No. 8.

THE COURT: Ladies and gentlemen, as we go through this process do not concern yourself with what the lawyers may or may not be doing. This is a process that we need to go through as we select the appropriate people to serve as jurors in this matter. People who are seated in the gallery, you can feel free to speak quietly to each other if you choose to do so. Let's be efficient, Counsel.

(Discussion held off the record.)

(Board passed.)

THE DEPUTY CLERK: Would the following jurors please return to your seats in the courtroom:

Juror No. 62, Juror No. 30, Juror No. 50, Juror No. 1, Juror No. 64, Juror No. 31, Juror No. 8.

Would the following jurors come forward as directed by the court security officer:

Juror No. 51, Juror No. 4, Juror No. 66, Juror No. 42, Juror No. 58, Juror No. 11, Juror No. 44.

(Board passed.)

(Discussion off the record.)

THE DEPUTY CLERK: Would the following jurors please return to your seat in the courtroom:

Juror No. 58, Juror No. 66, Juror No. 42, and Juror

No. 44.

Would the following jurors please follow the direction of the court security officer:

Juror No. 9, Juror No. 15, Juror No. 6, Juror No. 18.

(Board passed.)

THE COURT: Thursday and Friday, we will not have court on those days. We'll come back on the Tuesday after Memorial Day. So you will have a 5-day break. So you'll have a long weekend. It's kind of handy in that it's a holiday weekend. You can do some traveling, plus it gives you a bit of a break. In addition to that, it allows you to sort of take care of things that may be associated with your work obligations if you have any during this case. So we will take some breaks.

In addition to that, we'll have some days that we start a little later than we usually do because most of the lawyers here, this is not the only case that we have. And so, we have to attend to those. So we'll start on those dates a little bit later.

Typically, we're going to run from 10 o'clock in the morning until 4 o'clock in the evening. That way those of you who have childcare responsibilities and the like can get down the road before you have to pay those usurious rates for being two minutes late for childcare.

I heard a story from a friend of mine who said that she got caught in traffic. She was 10 minutes late to pick up her child and they charged her $62 for being 10 minutes late. And I said, "How did they come up with $62?" And she said it was like $10.20 a minute for being late.

(Discussion off the record.)

THE DEPUTY CLERK: Would the following jurors please return to your seats in the courtroom:

Juror No. 9, Juror No. 6, Juror No. 15, Juror No. 18.

Juror No. 26, please come forward. Juror No. 46, Juror No. 47, Juror No. 52, Juror No. 52.

THE COURT: 52.

(Board passed.)

THE DEPUTY CLERK: Would the following jurors please return to your seat in the courtroom:

Juror No. 52 and Juror No. 26.

Juror No. 21, No. 21, please come forward. Juror No. 29.

(Board passed.)

THE DEPUTY CLERK: Juror No. 21 and Juror No. 29, please return to your seats in the courtroom.

Would the following jurors please come forward: Juror No. 57, Juror No. 41.

(Board passed.)

THE DEPUTY CLERK: Will Juror No. 57 and Juror No. 41, please return to your seats in the courtroom.

Juror No. 23 and Juror No. 20.

(Board passed.)

THE DEPUTY CLERK: Would Juror No. 23 please return to your seat in the courtroom.

Juror No. 53.

(Board passed.)

MR. WINOGRAD: Before you continue, may we approach briefly with a member of the government? Just a brief side bar.

(Side bar.)

MR. WINOGRAD: I apologize, Your Honor. There was some disagreement amongst the defense regarding what the procedure was for alternates and striking. I'd ask to clarify that.

THE COURT: Ms. Armentrout, can you explain that?

THE DEPUTY CLERK: So we talked before that we were going to select six names. The government would take one strike, the defense take one strike, and left with four alternates.

MR. WINOGRAD: There was some questionable recollection. I appreciate it.

THE COURT: Okay.

(Open court.)

THE DEPUTY CLERK: Would the following jurors come forward as directed by the court security officer:

Juror No. 10.

THE COURT: No. 10.

THE DEPUTY CLERK: Juror No. 34.

THE COURT: 34.

THE DEPUTY CLERK: Juror No. 5, Juror No. 17, Juror No. 39, Juror No. 36.

(Board passed.)

THE DEPUTY CLERK: Would Juror No. 17 and Juror No. 36 please take a seat in the courtroom?

THE COURT: Counsel, we're at the number.

Is there anything that needs to be taken up before the clerk swears the jury?

MS. BELLOWS: Not on behalf of the government, Your Honor.

MS. MANITTA: Not on behalf of the defense, Your Honor.

THE COURT: I would ask the clerk to please render the oath.

THE DEPUTY CLERK: Would the defendants please stand and face the jury.

Ladies and gentlemen of the jury, please stand and raise your right hand and respond after the oath.

(Jury panel sworn.)

THE DEPUTY CLERK: Please be seated.

THE COURT: For purposes of the record, do all counsel agree that the venire, as presented this morning, was approximately 50/50 gender. Do we all agree on that?

MS. BELLOWS: Yes, Your Honor.

THE COURT: Okay. My count with regard to the venire, there were five people who could be viewed as African American and two were seated. Do we agree with that?

MS. BELLOWS: Yes, Your Honor.

THE COURT: All right. In addition to that, my count suggests that within the jury we have ten females and six males. Do we agree with that?

MS. BELLOWS: Yes, Your Honor.

MS. MANITTA: Yes.

THE COURT: All right. We also have one person in the jury who I believe can identify as other. Do we agree with that, as far as race is concerned?

MS. BELLOWS: I would say at least two, Your Honor.

THE COURT: Okay. One or two.

MS. BELLOWS: No, actually, three.

THE COURT: Including the African Americans?

MS. BELLOWS: Two African Americans and one Hispanic.

THE COURT: That's what I said. Two African Americans and one other.

MS. BELLOWS: Oh, I'm sorry.

THE COURT: Okay. Just making sure the record is clean for purposes of any challenges that may come up.

Is everyone satisfied with the composition of the jury and the Court's reference as to the demographic composition of the jury?

MS. MANITTA: Yes, Your Honor.

MR. LEIVA: Yes, Your Honor.

THE COURT: Very good. All right. We've sworn the jury, so we can let the others go, Trish?

THE DEPUTY CLERK: Yes, Judge.

THE COURT: Ladies and gentlemen, you were not selected to participate in this jury. Let me assure you that your participation in the process was critical to the administration of justice and we thank you for being here this morning and this late afternoon. You will not be called upon to sit on this jury. But as I say, your participation was no less important than those who were chosen to sit on this jury. You're now free to go. Before you go, let me give you a couple of instructions. I would respectfully request that you not contact any of the people that have been selected to serve on the jury. It might be a temptation to do that. Please do not do that. You're free to discuss the case with anyone that you choose to, but I would ask you to consider the fact that you might not want to interfere with the process as we begin

to deliberate this case. Because certain little things could actually bring into question the ability of this Court to come to a final resolution on the case. So please keep your comments to a minimum. That's the Court's request, not a Court order.

Again, I thank you for being here on behalf of all the parties in the matter and the defendants. We appreciate your responsibility and we appreciate your attention to your responsibility in the administration of justice. You're now free to leave.

(Jury not selected excused.)

THE COURT: Thank you, ladies and gentlemen. You can have a seat.

Ladies and gentlemen, I'm going to try to -- and you will find that this is the way that I operate during the course of the trial, is I'm going to try, as best as I can, to give you some ideas as to how you can manage your time. It is not something that you can necessarily depend on, but the bottom line is it will help you to some degree manage your time.

Now that you've been sworn, I'm going to give you some preliminary instructions to guide you in your participation in trial. It would be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to the

facts -- the law as the Court will give it to you. You must follow that law whether you agree with it or not. Nothing the Court may say or do during the course of the trial is intended to indicate or should be taken by you as indicating what your verdict should be. The evidence from which you will find the facts that consist of the testimony of witnesses, documents and other things received into evidence, evidence received into the record as exhibits, and any facts the lawyers agree to or stipulate to or that the Court may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now: Statements, arguments, and questions by the lawyers are not evidence. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe the evidence that has been offered is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered. In other words, you should not consult dictionaries or reference materials, search the internet, websites, or blogs, or use any

other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire, you may not discuss the case with anyone, even with your fellow jurors. After you retire to deliberate, you may begin discussions discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you return a verdict and the case is at an end.

I know that many of you use cell phones, BlackBerrys, internet, and other tools of technology. You also must not talk to anyone at anytime about this case or use these tools to communicate electronically with anyone about this case. This includes your family and friends. Let me underscore that. If your spouse or loved one is like my spouse or loved one, what will happen when you get home is they will say: "What did you do today?" That opens up Pandora's box. Say, the judge told me you were going to ask me that question and he's instructed me not to answer the question. Because if your spouse or loved one is like my spouse, he or she will have an opinion and we're not concerned about their opinion. All right.

You may not communicate with anyone about the case on your cell phone, through e-mail, BlackBerry, iPhone, text

messaging, or on Twitter, or through any blog or website, including Facebook, Google, Myspace, LinkedIn, or YouTube. You may not use any similar technology or social media, even if I have not specifically mentioned it here. I expect you will inform me as soon as you become aware of another juror's potential violations of these instructions.

A juror who violates these instructions or restrictions jeopardizes the fairness of these proceedings and a mistrial could result, which would require the entire trial process to start over.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you want to take notes during the course of the trial, you may do so. However, it is difficult to take detailed notes and pay attention to what the witnesses are saying at the time. If you do take notes, be sure that your note taking does not interfere when you're listening to and considering all the evidence. Also, if you do not take notes -- if you do take notes, do not discuss them with anyone before you begin your deliberations. Do not take your notes with you at the end of the day. Be sure to leave them in the jury room along with Ms. Tinsley.

Again, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You're

to decide the case solely on the evidence presented to you here in the courtroom.

There are two kinds of evidence: Direct and circumstantial. Direct evidence is proof of a fact such as testimony of an eyewitness. Circumstantial evidence is proof of fact from which you may infer or conclude that other facts exist. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much any witness's testimony to accept or reject. I will give you some guidance to determine the credibility of witnesses, again, at the end of the trial.

As you know, this is a criminal case. There are three basic rules about a criminal case that you must keep in mind. First, the defendants are presumed innocent until proven guilty. The indictment brought by the government against the defendant is only an accusation, nothing more. It does not prove guilt or anything else. The defendants, therefore, start out with a clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendants have no burden to prove his innocence or to present the evidence or to testify. Since the defendant has a right to remain silent,

the law prohibits you from arriving at your verdict by concerning that the defendants may not have testified.

Third, the government must prove the defendant's guilt beyond a reasonable doubt.

I will give you further instructions on this point later, but bear in mind that this -- in this respect, a criminal case is different from a civil case.

Now, a few words about your conduct as jurors. You as jurors must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not consider any independent research about this case, any materials in this case, any individuals or others who may be involved in this case.

We're going to take a break at this point and when we come back, the lawyers will start their case. The trial will begin as follows: First, the government will make an opening statement, which is simply an outline to help you understand the evidence as it comes in.

Next, the defendants' attorneys may, but do not have to, make an opening statement. Opening statements are neither evidence nor arguments. The government will then present its witnesses, and counsel for the defendants may cross-examine them. Following the government's case, the defendants may, if they choose to do so, present witnesses whom the government

may cross-examine them. After all the evidence is in, the attorneys will present their closing arguments to summarize and interpret the evidence for you and the Court will instruct you on the law.

After that, you will retire to deliberate on your verdict. As I've indicated to you, the opening statements and the closing arguments of the lawyers are not evidence. They're only their perspective of what the evidence was or will be.

Ladies and gentlemen, I'm going to go ahead and give you your break. We've arranged to have some sandwiches brought in for you. You've paid for them indirectly through your taxes. And so, what we're going to do is we're going to take a break. We're going to give you until about a quarter to 2:00.

Ms. Tinsley, as I've indicated to you, is your liaison between you and the Court. So if you have any questions or circumstances, let her know. There was also a request earlier about people bringing in cell phones who are a part of the jury. I'm going to discourage you from doing that, but if you have to bring a cell phone, Ms. Tinsley is going to take that cell phone from you at the beginning of the day, and then you can access it later if there's an emergency that you need to address.

So if you want to bring your cell phones to the

court, we're going to ask Ms. Tinsley to hold those cell phones until, at least, the end of the day.

All right. We'll see you back in here about a quarter of 2:00. Along with the attorneys, we'll have some work that we'll probably need to do in the interim. Please keep in mind that when you're out the courtroom, we're not in here goofing off, we're working. So we apologize in advance for any inconvenience that may be associated for you having to wait for us.

Thank you, again, ladies and gentlemen, for your willingness to participate in this court trial.

(Jury excused.)

(Further proceedings were held, but not included herein.)

CERTIFICATE OF REPORTER

I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Jury Trial - VOIR DIRE in the case of the **UNITED STATES OF AMERICA versus RONALD HERRERA CONTRERAS, et al.**, Criminal Action No.: 1:18-cr-123, in said court on the 9th day of May, 2022.

I further certify that the foregoing 113 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this May 24, 2023.

Tonia M. Harris

______________________________
Tonia M. Harris, RPR
Official Court Reporter